# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAMES A. WIATT and ELIZABETH
RIEGER WIATT,

                Plaintiffs,

      v.

WINSTON & STRAWN LLP, JONATHAN
S. BRISTOL, STARR & COMPANY, LLC,
STARR INVESTMENT ADVISORS, LLC,
AURORA CASSIRER, ESQ., AS
RECEIVER FOR STARR & COMPANY,
LLC and STARR INVESTMENT
ADVISORS, LLC, KENNETH I. STARR,
ARLENE M. GRAFF, and DOES 1-10,

                Defendants.

Civil Action No. 2:10-cv-06608-JLL-ES

*Document electronically filed*

Motion Date:  April 4, 2011

**ORAL ARGUMENT REQUESTED**

---

## MEMORANDUM OF LAW IN SUPPORT OF JONATHAN BRISTOL'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

---

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey  07102-5400
(973) 643-7000
Attorneys for Defendant
Jonathan S. Bristol

On The Brief

Thomas J. Demski
Thomas A. Della Croce

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS .................................................................... 3

    The Starr/Wiatts Relationship ........................................................ 3

    The Starr/Bristol/Winston & Strawn Relationship .............................. 4

    The Wiatts/Bristol/Winston & Strawn Relationship............................ 4

    Starr's January and April 2010 Withdrawals from the Wiatts' Management
        Account ........................................................................ 5

    The SEC Investigations.................................................................. 7

MOTION TO DISMISS STANDARD......................................................... 8

LEGAL ARGUMENT......................................................................... 9

POINT I .......................................................................................... 9

        PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM FAILS
        BECAUSE THEY DID NOT RELY ON BRISTOL'S ALLEGED
        STATEMENTS, WHICH IN ANY EVENT COULD NOT HAVE
        CAUSED THEIR LOSS (COUNT I) ........................................ 9

          A.   Plaintiffs Did Not Reasonably Rely on Bristol's Alleged
             Representations, Nor Do They Allege That The
             Representations Caused Them Harm........................... 10

          B.   Bristol Did Not Owe Plaintiffs A Duty Of Care With
             Regard to the Starr Defendants' Management of Their
             Financial Affairs. ................................................ 11

POINT II ...................................................................................... 12

        PLAINTIFFS AND BRISTOL DID NOT HAVE A FIDUCIARY
        RELATIONSHIP REGARDING THE STARR DEFENDANTS'
        MANAGEMENT OF PLAINTIFFS' FINANCIAL AFFAIRS (COUNTS
        II AND XIV)................................................................ 12

          A.   Bristol and Plaintiffs Did Not Have an Attorney-Client
             Relationship Regarding the Starr Defendants' Management
             of Plaintiffs' Financial Affairs. ................................ 12

          B.   Bristol Had No Reason to Believe That Plaintiffs Would
             Rely on Him With Respect to His Attorney Trust Account. ....... 14

# TABLE OF CONTENTS

**Page(s)**

POINT III ................................................................................................... 16

PLAINTIFFS' CLAIM FOR LEGAL MALPRACTICE FAILS
BECAUSE THERE WAS NO ATTORNEY-CLIENT RELATIONSHIP
BETWEEN BRISTOL AND PLAINTIFFS WITH RESPECT TO THE
STARR DEFENDANTS' MANAGEMENT OF PLAINTIFFS'
FINANCIAL AFFAIRS AND BECAUSE PLAINTIFFS FAIL TO
SHOW CAUSATION OF THEIR LOSS (COUNT IV) ..................................... 16

    A.    Plaintiffs Fail To Allege An Attorney-Client Relationship ......... 16

    B.    Even If There Was an Attorney-Client Relationship
    Between Bristol and Plaintiffs With Respect to Their
    Dealings With the Starr Defendants, Plaintiffs Fail to
    Demonstrate Bristol Caused Their Loss. ...................................... 19

    C.    Plaintiffs' Malpractice Claim Based on the Allegation That
    Bristol Knew That the Starr Defendants Had
    Misappropriated Their Funds And Had Conspired in That
    Misappropriation Cannot Stand Because Plaintiffs
    Impermissibly Rely on Other Prior Pleadings. ........................... 20

POINT IV ................................................................................................... 20

PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST
ENRICHMENT BECAUSE THEY DO NOT ALLEGE BRISTOL WAS
ENRICHED (COUNT V) ............................................................................ 20

POINT V ..................................................................................................... 21

PLAINTIFFS FAIL TO STATE A CLAIM FOR CONVERSION
BECAUSE THEIR FUNDS WERE DEPOSITED TO BRISTOL'S
TRUST ACCOUNT PURSUANT TO THE STARR DEFENDANTS'
EXERCISE OF A VALID POWER OF ATTORNEY (COUNT VI) ................. 21

POINT VI .................................................................................................... 22

PLAINTIFFS' CIVIL CONSPIRACY CLAIM FAILS BECAUSE THE
UNDERLYING TORT CLAIMS FAIL AND BECAUSE PLAINTIFFS'
ALLEGATIONS DO NOT ESTABLISH A CONSPIRACY (COUNT
VII) ......................................................................................................... 22

    A.    Plaintiffs Have Failed To State A Claim For The
    Underlying Torts ........................................................................ 22

    B.    Plaintiffs Have Not Properly Alleged a Civil Conspiracy .......... 23

# TABLE OF CONTENTS

**Page(s)**

POINT VII ................................................................................................ 24

    PLAINTIFFS' FRAUD CLAIM SHOULD BE DISMISSED BECAUSE
    PLAINTIFFS DID NOT RELY ON BRISTOL'S ALLEGED
    STATEMENTS TO THEIR DETRIMENT AND BECAUSE BRISTOL
    DID NOT VIOLATE A DUTY TO DISCLOSE (COUNT VIII) ...................... 24

        A.    Plaintiffs Did Not Rely On Bristol's Statements to Their
             Detriment ................................................................................ 24

        B.    Bristol Did Not Violate a Duty to Disclose Material
             Information to Plaintiffs.......................................................... 25

POINT VIII.............................................................................................. 26

    PLAINTIFFS' CONSPIRACY TO DEFRAUD CLAIM FAILS (COUNT
    IX) ........................................................................................................ 26

POINT IX ................................................................................................. 27

    PLAINTIFFS' RICO CLAIM SHOULD BE DISMISSED BECAUSE IT
    FAILS TO ADEQUATELY PLEAD THE PREDICATE OFFENSES,
    THE EXISTENCE OF AN ENTERPRISE OR A PATTERN OF
    RACKETEERING (COUNT X)............................................................... 27

        A.    Plaintiffs Fail To Adequately Plead Wire Fraud Or Money
             Laundering .............................................................................. 27

        B.    Plaintiffs Have Failed to Properly Plead A RICO Enterprise...... 29

        C.    Plaintiffs Fail To Plead Sufficient Continuity To Establish
             A Pattern Of Racketeering Activity........................................... 29

POINT X ................................................................................................... 31

    PLAINTIFFS' CLAIM FOR RICO CONSPIRACY SHOULD BE
    DISMISSED BECAUSE THE UNDERLYING RICO SHOULD BE
    DISMISSED (COUNT XI)...................................................................... 31

POINT XI ................................................................................................. 32

    PLAINTIFFS' CLAIM OF TORTIOUS INTERFERENCE WITH
    CONTRACT FAILS BECAUSE THERE WAS NO CONTRACT AND
    BECAUSE BRISTOL HAD NO KNOWLEDGE OF PLAINTIFFS'
    RELATIONSHIP WITH UBS (COUNT XII).......................................... 32

## <u>TABLE OF CONTENTS</u>

**Page(s)**

POINT XII .................................................................................................................. 33

      PLAINTIFFS FAIL TO STATE A CLAIM FOR TORTIOUS
      INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
      BECAUSE PLAINTIFFS DO NOT ALLEGE THAT BRISTOL KNEW
      OF  PLAINTIFFS' RELATIONSHIP WITH UBS AND FAIL TO
      ALLEGE THAT BRISTOL KNOWINGLY INTERFERED WITH THE
      RELATIONSHIP (COUNT XII) ....................................................................... 33

CONCLUSION ........................................................................................................... 35

iv

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A-Valey Eng'rs, Inc. v. Board of Chosen Freeholders,*
106 F. Supp. 2d 711 (D.N.J. 2000) ................................................................28, 32

*AG Capital Funding Partners, L.P. v. State Street Bank and Trust Company,*
5 N.Y.3d 582 (N.Y. 2005) ....................................................................................11

*Agostini v. Sobol,*
304 A.D.2d 395 (1st Dep't 2003) .........................................................................26

*Allianz Underwriters Ins. Co. v. Landmark Ins. Co.,*
13 A.D.3d 172 (1st Dep't 2004) ...........................................................................15

*AMF Inc. v. Algo Distribs.,*
48 A.D.2d 352 (2d Dep't 1975) ............................................................................21

*Amusement Indus. v. Stern,*
No. 07 Civ. 11586, 2011 U.S. Dist. LEXIS 15887 (S.D.N.Y. Feb. 17, 2011) ......21

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ...........................................................................................8

*Baker v. R.T. Vanderbilt Co.,*
260 A.D.2d 750 (3d Dep't 1999) ..........................................................................27

*Baraka v. McGreevey,*
481 F.3d 187 (3d Cir. 2007) ...................................................................................8

*Baxt v. Liloia,*
155 N.J. 190 (N.J. 1998) .......................................................................................16

*Beecher v. Feldstein,*
8 A.D.3d 597 (2d Dep't 2004) ..............................................................................33

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................8

*Bouley v. Bouley,*
797 N.Y.S.2d 221 (4th Dep't 2005) ......................................................................15

*Burns Jackson Miller Summit & Spitzer v. Lindner,*
88 A.D.2d 50 (2d Dep't 1982) ..............................................................................34

*Cafaro v. HMC,*
No. 07-2793, 2008 U.S. Dist. LEXIS 71740 (D.N.J. Sept. 5, 2008) .....................26

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Callahan v. Gutowski,*
111 A.D.2d 464 (3d Dep't 1985) ......................................................................................26

*Catizone v. Wolff,*
71 F. Supp. 2d 365 (S.D.N.Y. 1999)...................................................................13, 15, 17

*City of Syracuse v. R.A.C. Holding, Inc.,*
258 A.D.2d 905 (4th Dep't 1999) ....................................................................................20

*Clark v. Daby,*
300 A.D.2d 732 (3d Dep't 2002) .....................................................................................20

*Clark v. Prudential Ins. Co. of Am.,*
Civ. No. 08-6197, 2009 WL 2959801 (D.N.J. Sept. 15, 2009) .........................................9

*DirecTV Latin Am., LLC v. Park 610, LLC,*
691 F. Supp. 2d 405 (S.D.N.Y. 2010)..............................................................................23

*Dist. 1199P Health & Plan v. Janssen, L.P.,*
No. 06-3044, 2008 U.S. Dist. LEXIS 103526 (D.N.J. Dec. 23, 2008)....................................32

*Elrich v. Froehlich,*
866 N.Y.S.2d 91 (N.Y. Sup. Ct. 2008) ............................................................................14

*Fresh Direct, LLC v. Blue Martini Software, Inc.,*
7 A.D.3d 487 (2d Dep't 2004) .........................................................................................10

*Ganon v. Continental Ins. Co.,*
920 F. Supp. 566 (D.N.J. 1996) .......................................................................................31

*Gilmore v. Berg,*
820 F. Supp. 179 (D.N.J 1993) ........................................................................................31

*Graubard Mollen Dannett & Horowitz v. Moskovitz,*
86 N.Y.2d 112 (N.Y. 1995) .............................................................................................12

*Greene v. Greene,*
56 N.Y.2d 86 (N.Y. 1982) ...............................................................................................12

*Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp.,*
50 N.Y. 2d 183 (N.Y. 1980) ............................................................................................34

*H.J., Inc. v. Northwestern Bell Tel. Co.,*
492 U.S. 229 (1989)..........................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Healey Alternative Inv. Partnership v. Royal Bank of Canada,*
  No. 10-1567, 2010 WL 5055804 (D.N.J. Dec. 2, 2010).........................................15

*Heard v. City of New York,*
  82 N.Y.2d 66 (N.Y. 1993) ...................................................................................10

*Heine v. Colton, Hartnick, Yamin & Sheresky,*
  786 F. Supp. 360 (S.D.N.Y. 1992) ......................................................................18

*Hindes v. Castle,*
  937 F.2d 868 (3d Cir. 1991)................................................................................30

*Home Mut. Ins. Co. v. Broadway Bank & Trust Co.,*
  53 N.Y.2d 568 (N.Y. 1981) ...............................................................................10

*HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.,*
  590 F. Supp. 2d 677 (D.N.J. 2008) ....................................................................30

*Hughes v. Consol-Pennsylvania Coal Co.,*
  945 F.2d 594 (3d Cir. 1991)................................................................................30

*Hutton v. Priddy's Auction Galleries, Inc.,*
  275 F. Supp. 2d 428 (S.D.N.Y. 2003).................................................................34

*I.G. Second Generation Partners, L.P. v. Reade,*
  17 A.D.3d 206 (1st Dep't 2005) .........................................................................21

*In re: Ins. Brokerage Antitrust Litig.,*
  618 F.3d 300 (3d Cir. 2010)................................................................................29

*Israel v. Wood Dolson Co.,*
  1 N.Y.2d 116 (N.Y. 1956) ..................................................................................32

*Kilkenny v. Greenberg Traurig, LLP,*
  No. 05 Civ. 6578, 2006 U.S. Dist. LEXIS 23399 (S.D.N.Y. Apr. 21, 2006) .........................23

*Kronfeld v. First Jersey Nat'l Bank,*
  638 F. Supp. 1454 (D.N.J. 1986) .......................................................................26

*Lama Holding Co. v. Smith Barney,*
  88 N.Y.2d 413 (N.Y. 1996) ...........................................................................24, 32

*Latin America Finance Group, Inc. v. Pareja,*
  No. 04 Civ. 10082, 2006 U.S. Dist. LEXIS 48964 (S.D.N.Y. July 19, 2006) ......12, 13, 17, 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Laub v. Faessel,*
    297 A.D.2d 28 (1st Dep't 2002) ...................................................................10, 24

*Lewis v. Rosenfeld,*
    138 F. Supp. 2d 466 (S.D.N.Y. 20010)...........................................................15, 23

*Lightning Lube, Inc. v. Witco, Corp.,*
    4 F.3d 1153 (3d Cir. 1993) ..................................................................................31

*Lum v. Bank of Am.,*
    361 F.3d 217 (3d Cir. 2004)...........................................................................27, 31

*Mendoza v Schlossman,*
    87 A.D.2d 606 (2d Dep't 1982) ..........................................................................16

*Mergler v. Crystal Properties Assoc., Ltd.,*
    179 A.D.2d 177 (1st Dep't 1992) ........................................................................16

*Meyercord v. Curry,*
    38 A.D.3d 315 (1st Dep't 2007) ..........................................................................25

*P. T. Bank Central Asia v. ABN AMRO Bank,*
    301 A.D.2d 373 (1st Dep't 2003) ........................................................................24

*Parrot v. Coopers & Lybrand, L.L.P.,*
    95 N.Y.2d 479 (N.Y. 2000) ................................................................................11

*People v. Ellis,*
    91 Misc. 2d 28 (Sup. Ct. N.Y. 1977) ..................................................................18

*Perkins v. Silverstein,*
    939 F.2d 463 (7th Cir. 1991) ............................................................................9, 20

*Priest v. Hennessy,*
    51 N.Y.2d 62 (N.Y. 1980) ..................................................................................16

*Reich Family LP v. McDermott, Will & Emery,*
    2003 N.Y. Misc. LEXIS 2020 (N.Y. Sup. Ct. Oct. 29, 2003) .............................15

*Rohrbacher v. BancOhio Nat'l Bank,*
    171 A.D.2d 533 (1st Dep't 1991) ........................................................................22

*Romano v. Romano,*
    2 A.D.3d 430 (2d Dep't 2003)..............................................................................27

iv

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Romero v. Sjoberg,*
    5 N.Y.2d 518 (N.Y. 1959) ...................................................................................22

*Rose v. Bartle,*
    871 F.2d 331 (3d Cir. 1989)..........................................................................9, 20

*Schwartz v. Greenfield, Stein & Weisinger,*
    396 N.Y.S.2d 582 (Sup.Ct. 1977)..............................................................12, 14

*Sedima v. Imrex Co.,*
    473 U.S. 479 (1985)...........................................................................................29

*Shapiro v. McNeill,*
    92 N.Y.2d 91 (N.Y. 1998) ....................................................................13, 14, 16

*Shared Communications Servs. of ESR, Inc. v. Goldman Schs & Co.,*
    23 A.D.3d 162 (1st Dep't 2005) .......................................................................34

*Sokol v Addison,*
    293 A.D.2d 600 (2d Dep't 2002) ......................................................................23

*Steier v. Screiber,*
    25 A.D.3d 519 (1st Dep't 2006) .......................................................................22

*Sumo Container Station, Inc. v. Evans, Orr, Pacelli, Norton & Laffan, P.C.,*
    278 A.D.2d 169 (1st Dep't 2000) .....................................................................19

*Talansky v. Schulman,*
    2 A.D.3d 355 (1st Dep't 2003) .........................................................................13

*Taveras v. Resorts Int'l Hotel, Inc.,*
    No. 07-4555, 2008 U.S. Dist. LEXIS 71670 (D.N.J. Sept. 19, 2008) ..............27

*Tinter v. Rapaport,*
    253 A.D.2d 588 (1st Dep't 1998) .....................................................................19

*Travelers Indemn. Co. of Illinois v CDL Hotels USA, Inc.,*
    322 F. Supp 2d 482 (S.D.N.Y. 2004)................................................................25

*Turner v. Finkelstein & Meirowitz*
    61 A.D.3d 849 (2d Dep't 2009)..................................................................13, 16

*United States v. Altman,*
    48 F.3d 96 (2d Cir. 1995)..................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*United States v. Bergrin,*
    707 F. Supp. 2d 503 (D.N.J. 2010) ..............................................................29

*United States v. Int'l Longshoremen's Assoc,*
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ...............................................8, 9, 20, 28

*United States v. Rodaro,*
    448 F.2d 64 (3d Cir. 1971)................................................................................9

*Vigilant Ins. Co. of America v. Hous. Auth. of the City of El Paso,*
    87 N.Y.2d 36 (N.Y. 1995) ...............................................................................21

*Ward v. City of New York,*
    15 A.D.3d 392 (2d Dep't 2005) .......................................................................23

*Warden v. McClelland,*
    288 F.3d 105 (3d Cir. 2002)............................................................................27

*Wei Cheng Chang v Pi,*
    288 A.D.2d 378 (2d Dep't 2001) .....................................................................16

*Zaubler v. Picone,*
    100 A.D.2d 620 (2d Dep't 1984) .....................................................................22

*Zavala v. Wal-Mart Stores, Inc.,*
    393 F. Supp. 2d 295 (D.N.J. 2005) .................................................................28

*Zhong v Capstone Bus. Credit, LLC,*
    No. 100429-2009, 2009 NY Slip Op 33198U (N.Y. Sup. Ct. Dec. 23, 2009) .......................26

*Zubritzky v. Provenzano,*
    No. 10-342, 2010 WL 5058313 (W.D. Pa. Dec. 6, 2010) .......................................31

**STATUES**

*18 U.S.C. § 1962, et seq.* ............................................................27, 29, 31, 32

*Fed. R. Civ. Pro.* 9(b)...............................................................................26, 27, 28

*Fed. R. Civ. Pro.* 10(c)..............................................................................1, 8, 9, 20

*Fed. R. Civ. Pro.* 12(b)(6) .........................................................................8, 35

**OTHER AUTHORITIES**

*Restatement (Second) of Torts* § 874 ...............................................................13

## PRELIMINARY STATEMENT

Plaintiffs James and Elizabeth Wiatt's long-standing and trusted financial manager and advisor, defendant Kenneth Starr, stole $2 million dollars of their funds.  However, Starr and his companies, defendants Starr & Company, LLC and Starr Investment Advisors, LLC, are insolvent; indeed, Aurora Cassirer, Esq. as the Receiver for Starr's companies is also named as a nominal defendant.[1]  With nowhere else to turn for recovery, plaintiffs are looking to their putative lawyers, defendants Winston & Strawn LLP and its former partner, Jonathan Bristol, Esq., because plaintiffs believe they are the only "deep pockets" left standing.

Plaintiffs' factual allegations are inadequate to sustain their claims against Bristol. Plaintiffs do not independently allege any facts that support their self-serving contention that Bristol knew that the Starr Defendants had abused the unfettered access the Wiatts granted them to their bank and investment accounts.[2]  Nor do plaintiffs independently allege any facts to support their legal conclusion, which they attempt to disguise as a factual allegation, that Bristol conspired with the Starr Defendants to steal plaintiffs' $2 million, or to steal the funds of other clients of the Starr Defendants.

Putting aside those unsupported factual and legal conclusions, plaintiffs offer only the following alleged "facts" relevant to their loss:[3]

---

[1] Starr, his companies, and defendant Arlene Graff, who was a principal of one of the companies, are collectively referred to as the Starr Defendants.

[2] Contrary to the cases interpreting *Fed. R. Civ. Pro.* 10(c), plaintiffs impermissibly base many of the factual and legal conclusions as to Bristol on the one count indictment of him for money laundering to which he has pled not guilty, rather than independent allegations in their own complaint.  *See* Motion to Dismiss Standard at 8-9, *infra*.

[3] Although the factual allegations in plaintiffs' complaint are taken as true for the purposes of this motion, Bristol denies many of those allegations, including all allegations of wrongdoing.

- Since August 2003, as clients of the Starr Defendants, the Wiatts granted the Starr Defendants complete access to plaintiffs' assets, including signatory authority over their bank and investment accounts;

- The Starr Defendants were Bristol's clients at the time he joined Winston & Strawn in November 2008;

- Using the authority and access provided by the Wiatts, the Starr Defendants withdrew $1 million from plaintiffs' accounts on two different occasions, January 4, 2010 and April 26, 2010, and deposited those funds by wire transfer into Bristol's attorney trust account;

- By virtue of the information contained in bank records, Bristol knew that these two deposits came from the Wiatts' funds;

- Almost immediately after each deposit, Bristol disbursed the funds held for the Starr Defendants' benefit in accordance with their instructions;

- James Wiatt first spoke to Bristol about the January transfer on or about May 12, 2010, and about both the January and April transfers on or about May 15, 2010; and

- Wiatt engaged Bristol and Winston & Strawn to represent him regarding some very specific and narrow legal matters, none of which related to plaintiffs' personal financial affairs, or their decision to entrust the management of their assets to the Starr Defendants.

These alleged facts are inadequate to support a claim that Bristol owed any legal duty to plaintiffs regarding Starr's misappropriation of their $2 million. Plaintiffs fail to allege that they retained Bristol and Winston & Strawn as their lawyers with respect to any transactions involving the Starr Defendants or their management of the Wiatts' personal finances. And they do not allege that Bristol was negligent regarding any of the matters for which James Wiatt had retained him. Consequently, plaintiffs' claims of legal malpractice, breach of fiduciary duty, and an accounting should be dismissed.

Further, plaintiffs' allegations reflect that, by the time James Wiatt brought his questions to Bristol regarding the Starr Defendants' two transfers of plaintiffs' funds, those funds were long gone. Thus, the Wiatts could not have reasonably relied on anything Bristol said to James

2

Wiatt that would have facilitated, or prevented, Starr's theft of those monies, and Bristol's statements therefore could not have caused plaintiffs' loss. Plaintiffs' misrepresentation-related claims should be dismissed.

Plaintiffs do not make any independent allegations of fact in support of their self-serving conclusion that Bristol knew that Starr was misappropriating client funds or that Bristol was engaged in a conspiracy with the Starr Defendants to steal client funds. This mandates dismissal of their conspiracy-related claims. Likewise, plaintiffs' failure to allege that Bristol shared in Starr's theft of their money requires that their claim for unjust enrichment be dismissed.

Plaintiffs have not stated a claim that Bristol interfered with any contract they had with UBS. Firstly, they did not have a contractual obligation to invest with UBS; their mere desire to invest funds with UBS did not create a contract to invest. Secondly, plaintiffs do not allege that Bristol possessed the requisite knowledge of their desire to invest funds with UBS. In fact, they admit to not discussing the UBS investment with Bristol until long after the Starr Defendants had taken the funds. Nor do they allege that the Starr Defendants advised Bristol of plaintiffs' desire to invest with UBS. Plaintiffs' claims of tortious interference with contract, and with their prospective advantage of an alleged business relationship with UBS, fail.

In sum, plaintiffs have failed to state any sustainable claim against Bristol. Bristol respectfully requests this Court to dismiss each of plaintiffs' claims against him.

## STATEMENT OF FACTS

### The Starr/Wiatts Relationship

The Wiatts allege they engaged the Starr Defendants to manage all aspects of their personal finances in August 2003, including: accounting; business management; investment management; investment advice; financial consulting; financial planning; and tax advice. (Compl. ¶23.) They gave the Starr Defendants total control over their bank and investment

accounts, including a joint checking account at City National Bank ("Management Account") by granting Starr and another Starr & Co, principal, Arlene Graff, signatory authority and power of attorney over the Management Account. (*Id.* ¶¶13, 25-26.) That authority was so extensive that James Wiatt's paychecks and all of the Wiatts' bills were sent to the Starr Defendants, who disbursed the Wiatts' funds to pay the Wiatts' personal bills out of the Management Account. (*Id.* ¶27.) That relationship also grew into a close personal friendship between Starr and James Wiatt. (*Id.* ¶29.)

**The Starr/Bristol/Winston & Strawn Relationship**

Plaintiffs allege that the Starr Defendants became clients of Bristol's in 2007 while Bristol was a partner at the New Jersey office of Thelen LLP. (*Id.* ¶¶31, 33.) They remained Bristol's clients after Bristol moved to Winston & Strawn in New York in November 2008. (*Id.* ¶¶34, 38.)

**The Wiatts/Bristol/Winston & Strawn Relationship**

Plaintiffs allege that in October 2009 James Wiatt retained Bristol and Winston & Strawn regarding his separation agreement from the William Morris Agency. (*Id.* ¶45.) Plaintiffs contend that during the ensuing seven months Wiatt sought legal advice from Bristol for similarly discrete employment and corporate matters. (*Id.* ¶¶49-58.) Plaintiffs do not allege that they engaged Bristol and Winston & Strawn regarding their personal financial affairs, or their decision to entrust the Starr Defendants with unfettered access to their money, other assets, and payment of their personal debts. Plaintiffs do not allege that they executed a written engagement agreement with Bristol and Winston & Strawn, nor do they allege they paid a retainer for their legal services. In short, plaintiffs do not allege that Bristol was retained for anything other than the discrete tasks set forth in their complaint. Plaintiffs tacitly acknowledge that the scope of

4

Bristol's and Winston & Strawn's representation was limited to each discrete task for which James Wiatt specifically requested legal assistance.

**Starr's January and April 2010 Withdrawals from the Wiatts' Management Account**

Plaintiffs' causes of action stem from two separate instances of the Starr Defendants' exercise of the complete access the Wiatts granted the Starr Defendants over their personal funds, once in January 2010 and once in April 2010. (*Id.* ¶¶62-63.) In each instance, the Starr Defendants withdrew $1 million from the Wiatts' Management Account and wire transferred the funds to an attorney trust account maintained by Bristol. (*Id.* ¶63.) As such, Bristol held those funds for the benefit of the Starr Defendants. Plaintiffs allege that in both instances the money was immediately disbursed by Bristol in accordance with the Starr Defendants' instructions. (*Id.* ¶66.) Plaintiffs do not allege that Bristol kept any of their funds.

Even if Bristol did know the source of the funds transferred by the Starr Defendants, (*Id.* ¶64), plaintiffs make no allegation that Bristol would have reason to know that plaintiffs would question those two particular instances of the Starr Defendants' exercise of authority over plaintiffs' account. Nonetheless, plaintiffs self-servingly allege that Bristol knew that both withdrawals by the Starr Defendants were made without plaintiffs' knowledge or consent, while acknowledging that the first time James Wiatt made any inquiry of Bristol regarding either transfer was not until May 2010. (*Id.* ¶¶65, 67, 74, 89). Plaintiffs offer no supporting allegations setting forth how Bristol would have known plaintiffs hadn't consented to this exercise of authority by the Starr Defendants.

Plaintiffs allege they first learned of the Starr Defendants' January 2010 withdrawal from their Management Account on March 10, 2010. (*Id.* 71.) They claim that the first time they discussed this transaction with Bristol was two months later, on or about May 12, 2010. (*Id.*

¶74.)  Plaintiffs do not allege that Bristol made any statements to plaintiffs about that transaction prior to that date.

Plaintiffs contend that James Wiatt first spoke with Bristol on May 15, 2010 regarding the Starr Defendants' April 26, 2010 withdrawal.[4]  (*Id.* ¶89.)  Plaintiffs do not allege that Bristol made any statement to them regarding this transaction prior to May 15, 2010.

Plaintiffs allege that Bristol concealed from them that he used the April 2010 transfer to fulfill a promise he allegedly made to Uma Thurman to repay her $1 million stolen by Starr.  (*Id.* ¶¶86-89.)  In so doing, plaintiffs rely solely on the criminal complaint against Starr.  (*Id.* ¶¶ 86-87.)  However, neither that complaint nor the plaintiffs' complaint alleges that Bristol knew that Starr had stolen money from Thurman.  Nor do they allege that Bristol was in any way obligated to repay those funds to Thurman.  While it may be true that Starr used the Wiatts' funds to repay money he had stolen from Thurman, plaintiffs do not allege any facts to support their self-serving conclusion that Bristol concealed that he used Starr's April 2010 transfer to his attorney trust account to reimburse another client of the Starr Defendants.  Indeed, the funds from plaintiffs' Management Account withdrawn by the Starr Defendants pursuant to the authority plaintiffs gave them, which were transferred to Bristol's trust account, did not belong to Bristol; Bristol had no right to use that money for any purpose other than as directed by the beneficiary of those funds -- the Starr Defendants.  In short, there are no allegations that there was anything within Bristol's knowledge for him to conceal from plaintiffs.

Plaintiffs assert a host of additional factual and legal conclusions regarding the January and April 2010 transactions without alleging any factual support.  For instance, they allege that

---

[4] Yet plaintiffs also allege that they did not learn of the April transfer until it was referenced in two pleadings against Starr, one of which was filed on May 26, 2010 (Compl., Ex. C), and the other of which was filed on May 27, 2010 (Compl., Ex. E.).

Bristol owed them a fiduciary duty regarding the Starr Defendants' exercise of authority over plaintiffs' personal funds and use of those funds, (*Id.* ¶¶65, 88), but offer no factual support that would give rise to that duty.  They do not allege they retained Bristol to act as their attorney with respect to the Starr Defendants' management of their financial affairs, their decision to grant the Starr Defendants unfettered access to, and signatory authority over, their personal funds, or the Starr Defendants' January and April 2010 withdrawals from their Management Account. Plaintiffs also do not allege that they were the beneficiaries of the funds in Bristol's attorney trust account, or that they questioned Bristol regarding the circumstances surrounding the Starr Defendants' transfers of their funds until the funds were long gone.  (*See Id.* ¶¶74, 89.)

Plaintiffs also summarily conclude that Bristol conspired with Starr to steal their money, and the money of other clients of the Starr Defendants, and that he used his trust account to facilitate those thefts. (*Id.* ¶¶ 60-61.)  Yet, plaintiffs do not offer a single factual allegation to support those legal conclusions.

**The SEC Investigations**

Plaintiffs allege that in mid-May, James Wiatt contacted Bristol regarding a message he received from an attorney at the SEC. (*Id.* ¶¶93-94, 100.)  Plaintiffs contend that Bristol informed Wiatt that the SEC was engaged in routine investigations in the wake of the Madoff case.  (*Id.* ¶100.)  Bristol also is said to have advised Wiatt that he couldn't represent Wiatt in the SEC investigation unless Wiatt agreed to waive a conflict of interest, because the Starr Defendants were Winston & Strawn clients. (*Id.* ¶101.)  Wiatt agreed to do so.  (*Id.* ¶103.) Plaintiffs acknowledge that Bristol's representation only entailed a few communications with the SEC to schedule an interview, which never took place because of Starr's arrest on May 27, 2010. (*Id.* ¶¶104-05, 107, 110.)  Plaintiffs contend that during the course of this brief representation, Bristol concealed information from Wiatt. (*Id.* ¶¶102, 108.)  Putting aside the unsupported legal

and factual conclusions encompassed by those allegations, they are of no moment as plaintiffs do not allege that the purported non-disclosures in late May 2010 caused them any harm, nor could they have caused any harm.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss under *Fed. R. Civ. Pro.* 12(b)(6), a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). The complaint must allege facts that, when considered true, raise the right to relief "above the speculative level." *Id.*

A court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007); *see also Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Moreover, plaintiffs may not rely on prior pleadings from other cases to provide the necessary factual allegations missing from their complaint. Federal Rule of Civil Procedure 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." "A 'written instrument' is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement." *United States v. Int'l Longshoremen's Assoc*, 518 F. Supp. 2d 422, 465 (E.D.N.Y. 2007) (*quoting Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F. Supp. 1108, 1115 (W.D.N.Y. 1996)). The Third Circuit generally applies *Rule* 10(c) only to "documentary evidence, specifically contracts, notes, and other writing[s] on

which [a party's] action or defense is based." *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir.

1989) (*quoting* 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1327, at 489).  The

court in *Int'l Longshoremen's Assoc.* relied on *Rose* to opine that a plaintiff cannot rely on other

pleadings attached to a complaint "for the purpose of supplementing the factual allegations in the

primary complaint." *Int'l Longshoremen's Assoc.*, 518 F. Supp. 2d at 465-66 (*citing Rose*, 871

F.2d at 339 n.3; *Perkins v. Silverstein*, 939 F.2d 463, 467 n.2 (7th Cir. 1991) (limiting *Rule* 10(c)

to documentary evidence or "written instrument[s]")).  An Indictment is not an evidentiary

document.  *United States v. Rodaro*, 448 F.2d 64, 66 (3d Cir. 1971); *see Third Circuit Pattern

Jury Instructions* ("an indictment is not evidence of anything").

 Plaintiffs' complaint is littered with factual and legal conclusions without facts necessary

to support those conclusions.  Once those unsupported conclusions are discarded, distilling the

complaint down to those factual allegations that satisfy plaintiffs' pleading requirements, the

complaint fails to state any claim against Bristol.

## LEGAL ARGUMENT

### POINT I

#### PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM FAILS BECAUSE THEY DID NOT RELY ON BRISTOL'S ALLEGED STATEMENTS, WHICH IN ANY EVENT COULD NOT HAVE CAUSED THEIR LOSS (COUNT I)

 To state a negligent misrepresentation claim under New York law,[5] a plaintiff must

allege, among other things, facts sufficient to demonstrate that the plaintiff and defendant had a

special relationship that imposed a duty on the defendants to use reasonable care to convey

accurate information to the plaintiff, and that the plaintiff reasonably relied on that information.

---

[5] The parties' alleged conduct primarily occurred in New York. Thus, New York law is applied
to plaintiffs' non-federal claims. *See Clark v. Prudential Ins. Co. of Am.*, Civ. No. 08-6197,
2009 WL 2959801, *5-7 (D.N.J. Sept. 15, 2009) (setting forth the "most significant relationship
test").

*Fresh Direct, LLC v. Blue Martini Software, Inc.*, 7 A.D.3d 487, 489 (2d Dep't 2004).  Plaintiffs

fail to satisfy these legal requirements, mandating dismissal of this claim.

**A.      Plaintiffs Did Not Reasonably Rely on Bristol's Alleged Representations, Nor Do
          They Allege That The Representations Caused Them Harm.**

 To sustain a negligent misrepresentation claim, a plaintiff must allege that he or she

justifiably relied on the misrepresentation, resulting in the plaintiff's harm.  *Heard v. City of New*

*York*, 82 N.Y.2d 66, 74 (N.Y. 1993).  Plaintiffs contend that they relied on alleged

misrepresentations by defendants and were thereby induced to continue to maintain plaintiffs'

accounts with the Starr Defendants.  (Compl. ¶137.)

 Plaintiffs have it wrong.  The issue is not whether alleged representations induced

plaintiffs to keep their accounts after the Starr Defendants misappropriated their funds, but

whether such representations caused them to lose $2 million.

 The only alleged misrepresentations by Bristol are those that occurred no earlier than

May 12, 2010, more than four months after the January 2010 withdrawal by the Starr Defendants

from the Wiatts' Management Account, and a few weeks after the April 2010 withdrawal.  (*Id.*

¶¶74, 85, 89, 100.)  Consequently, plaintiffs could not have justifiably relied on anything Bristol

said that could have prevented, or caused, either of the Starr Defendants' $1 million transfers

from the Wiatts' Management Account.  Plaintiffs' negligent misrepresentation claim should

therefore be dismissed.  *See Laub v. Faessel*, 297 A.D.2d 28, 31 (1st Dep't 2002) ("[P]laintiff's

claims must fail because he has not alleged or produced any evidence that those

misrepresentations directly and proximately caused his investment losses."  There must be "some

reasonable connection between the act or omission of the defendant and the damage which the

plaintiff has suffered") (internal quotation marks omitted); *Home Mut. Ins. Co. v. Broadway*

*Bank & Trust Co.*, 53 N.Y.2d 568, 578 (N.Y. 1981) (finding no showing of negligent

misrepresentation where plaintiffs neither acted, nor refrained from acting, in reliance on defendant's representations).

**B.    Bristol Did Not Owe Plaintiffs A Duty Of Care With Regard to the Starr Defendants' Management of Their Financial Affairs.**

Even if plaintiffs could show justifiable reliance and causation, a claim for negligent misrepresentation must also survive a Court's assessment of the parties' relationship. "Where the relationship of the parties fails to reveal actual privity or a relationship that otherwise closely resembles privity, no cause of action exists." *AG Capital Funding Partners, L.P. v. State Street Bank and Trust Company*, 5 N.Y.3d 582, 595 (N.Y. 2005); *see also Parrot v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483 (N.Y. 2000) ("We have reiterated time and again that before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity . . . or a relationship so close as to approach that of privity") (internal quotation marks omitted).

Plaintiffs fail to allege any facts that, if true, would suggest a relationship between Bristol and plaintiffs that would give rise to a duty of care as to their use of the Starr Defendants as their financial manager. For instance, plaintiffs do not allege they retained Bristol to act as their attorney with respect to the Starr Defendants' management of their financial affairs, their decision to grant the Starr Defendants unfettered access to, and signatory authority over, their personal funds, or the Starr Defendants' January and April 2010 withdrawals from their Management Account. Rather, plaintiffs only allege that, over a seven month period, James Wiatt retained Bristol and Winston & Strawn regarding his separation agreement from the William Morris Agency, and similarly discrete employment and corporate matters. (Compl. ¶¶45, 49-58.) Thus, with respect to the Starr Defendants' management of the Wiatts' financial affairs, including their two $1 million withdrawals from the Wiatts' Management Account,

Bristol did not have a relationship with the plaintiffs that gave rise to the duty of care necessary for plaintiffs to state a claim for negligent misrepresentation. In fact, the complaint reflects that Bristol had no relationship with plaintiffs regarding their dealings with the Starr Defendants. This claim should therefore be dismissed.

### POINT II

**PLAINTIFFS AND BRISTOL DID NOT HAVE A FIDUCIARY RELATIONSHIP REGARDING THE STARR DEFENDANTS' MANAGEMENT OF PLAINTIFFS' FINANCIAL AFFAIRS (COUNTS II AND XIV)**

Fiduciary relationships arise in two ways: (i) when there is a relationships that presumes the existence of a fiduciary duty as a matter of law, such as an attorney-client relationship, *Greene v. Greene*, 56 N.Y.2d 86, 92 (N.Y. 1982); and (ii) when a lawyer has reason to believe a non-client would rely on him, *Schwartz v. Greenfield, Stein & Weisinger*, 396 N.Y.S.2d 582, 584 (Sup.Ct. 1977). The complaint fails to demonstrate either relationship.

**A.      Bristol and Plaintiffs Did Not Have an Attorney-Client Relationship Regarding the Starr Defendants' Management of Plaintiffs' Financial Affairs.**

Of course, an attorney owes his or her client a fiduciary duty. *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 118 (N.Y. 1995). James Wiatt alleges he retained Bristol and Winston & Strawn for a few discrete employment and corporate assignments, (Compl. ¶¶45 46, 49-58); however, Wiatt does not allege he retained Bristol or Winston & Strawn for any other matters, including the Wiatts' personal financial affairs. Plaintiffs therefore tacitly acknowledge that the scope of Bristol's and Winston & Strawn's representation was limited to each discrete matter for which James Wiatt specifically requested legal assistance. *See Latin America Finance Group, Inc. v. Pareja*, No. 04 Civ. 10082, 2006 U.S. Dist. LEXIS 48964, *29 (S.D.N.Y. July 19, 2006) (even if plaintiffs were able to demonstrate that defendant was serving as their attorney in some capacity, they are required to show that he had a duty with

12

respect to the matter giving rise to the cause of action); *Turner v. Finkelstein & Meirowitz*, 61 A.D.3d 849, 850 (2d Dep't 2009) (the scope of an attorney-client relationship is limited by the specific terms of the parties' engagement agreement).

The Starr Defendants' management of the Wiatts' financial affairs, and the Starr Defendants' exercise of the authority granted them by the Wiatts to make the January and April 2010 withdrawals, were outside the scope of the alleged attorney-client relationship between the Wiatts and Bristol.  There is no factual support whatsoever for plaintiffs' claim that Bristol and Winston & Strawn were "required to use their utmost ability to manage Plaintiff's money . . . ." (Compl. ¶140.)  Thus, plaintiffs cannot base their claim for breach of fiduciary duty on an attorney-client relationship with Bristol.  *Catizone v. Wolff*, 71 F. Supp. 2d 365, 372 (S.D.N.Y. 1999) (because defendant was not serving as plaintiff's attorney in the current matter, plaintiff could not base his breach of fiduciary duty claim on the existence of an attorney-client relationship in another matter); *Latin America Finance Group, Inc.*, 2006 U.S. Dist. LEXIS 48964 at *33-34; *see also Restatement (Second) of Torts* § 874, Comment a ("a person in a fiduciary relation to another is under the duty to act for the benefit of the other as to matters within the scope of the relation").

Additionally, in New York, "[i]t is settled law that an escrow agent owes his or her beneficiary a fiduciary duty."  *Talansky v. Schulman*, 2 A.D.3d 355, 359 (1st Dep't 2003). Plaintiffs allude to this duty in the complaint by alleging "Defendants owed Plaintiffs fiduciary obligations" based on "their ability to control Plaintiffs' money in their attorney trust account." (Compl. ¶140.)  However, there was no escrow agreement between Bristol and plaintiffs, and no basis for a finding of a fiduciary relationship simply because the Starr Defendants deposited plaintiffs' monies into Bristol's attorney trust account.  *Shapiro v. McNeill*, 92 N.Y.2d 91, 96

(N.Y. 1998) (since there was no escrow agreement between plaintiff and defendant, there was no basis to hold defendant liable to plaintiff for a third party's subsequent misappropriation of plaintiff's funds); *see also Elrich v. Froehlich*, 866 N.Y.S.2d 91, *3 (N.Y. Sup. Ct. 2008) (*quoting Shapiro v. Snow Becker Krauss P.C.*, 208 A.D.2d 461 (1st Dep't 1994)) (dismissing a claim for breach of fiduciary duty, stating that simply because a wire "was made payable to Defendant's escrow account did not transform Defendant into an escrow agent with a fiduciary duty to inquire . . . as to any conditions attached to the payment of the check").

The *Shapiro* case illustrates that an attorney does not owe a duty of care to a third party when the attorney's client deposits a third-party's money into the attorney's escrow account. *Shapiro*, 92 N.Y.2d at 98-99. The plaintiff in *Shaprio* was induced by an outside party to make checks payable to the attorney's client for investment in a mortgage venture. *Id.* at 94. The client deposited the checks into the attorney's trust account and explained to the attorney that he sought to use the attorney's trust account to facilitate the transfer of funds on other matters. *Id.* at 95. The Court of Appeals rejected the plaintiff's contention that the attorney had a common law duty of care to inquire before disbursing the funds from his attorney trust account, and found that the attorney did not owe plaintiff fiduciary duties. *Id.* at 98-99. Applying *Shapiro*, plaintiffs' claim for breach of fiduciary duty against Bristol fails.

## B. Bristol Had No Reason to Believe That Plaintiffs Would Rely on Him With Respect to His Attorney Trust Account.

In New York, even in the absence of an express attorney-client relationship, a lawyer may owe a fiduciary obligation to persons with whom he deals. *Schwartz*, 396 N.Y.S.2d at 584. A fiduciary duty arises when a lawyer deals with persons who, although not strictly his clients, have reason to rely on him. *Id.* A claim for breach of fiduciary duty, however, fails where a

14

defendant has no reason to believe that the plaintiff would rely on him as an attorney. *Catizone*, 71 F. Supp. 2d at 372.

New York Courts have "applied the criteria for a negligent misrepresentation claim in determining whether an attorney owes a fiduciary duty to a non-client." *Reich Family LP v. McDermott, Will & Emery*, 2003 N.Y. Misc. LEXIS 2020, *7 (N.Y. Sup. Ct. Oct. 29, 2003). Namely, courts must look at: (i) an awareness by the attorney that the statement is to be used for a particular purpose; (ii) plaintiff's reliance on the attorney's statement; and (iii) conduct by the attorney linking the attorney to the relying party and evincing their understanding of that reliance. *Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 480 (S.D.N.Y. 20010); *Allianz Underwriters Ins. Co. v. Landmark Ins. Co.*, 13 A.D.3d 172, 175 (1st Dep't 2004). "Applying these criteria, courts have held that an attorney owes fiduciary duties to a party other than his client only under the rarest of circumstances." *Lewis*, 138 F. Supp. 2d at 480. As demonstrated in Point I.A, *supra*, plaintiffs cannot show reliance on anything Bristol said to them because, by the time plaintiffs first discussed with him the Starr Defendants' January and April 2010 withdrawal of plaintiffs' funds, those funds were long gone; therefore, nothing Bristol said could have changed, or prevented, that fact.

By virtue of the foregoing, not only should plaintiffs' claim for breach of fiduciary duty be dismissed, but their claim for an accounting should likewise be dismissed because a fiduciary relationship is a prerequisite to entitlement to an accounting. *See Bouley v. Bouley*, 797 N.Y.S.2d 221, 223 (4th Dep't 2005); *Healey Alternative Inv. Partnership v. Royal Bank of Canada*, No. 10-1567, 2010 WL 5055804, at *7-8 (D.N.J. Dec. 2, 2010) (dismissing action for an accounting because plaintiffs had not sufficiently alleged, among other things, a fiduciary relationship).

## POINT III

**PLAINTIFFS' CLAIM FOR LEGAL MALPRACTICE FAILS BECAUSE THERE WAS NO ATTORNEY-CLIENT RELATIONSHIP BETWEEN BRISTOL AND PLAINTIFFS WITH RESPECT TO THE STARR DEFENDANTS' MANAGEMENT OF PLAINTIFFS' FINANCIAL AFFAIRS AND BECAUSE PLAINTIFFS FAIL TO SHOW CAUSATION OF THEIR LOSS (COUNT IV)**

As a threshold matter, an attorney's violation of a rule of ethics does not give rise to an action for legal malpractice. *Shapiro*, 92 N.Y.2d at 97; *Mergler v. Crystal Properties Assoc., Ltd.*, 179 A.D.2d 177, 183 (1st Dep't 1992) ("the Code of Professional Responsibility was promulgated to establish an ethical standard and to vindicate society's rights with respect to the conduct of licensed attorneys, not to delineate substantive rules for the adjudication of private rights"). Thus, plaintiffs' allegation that Bristol violated the New Jersey Rules of Professional Conduct, (Compl. ¶157), or the comparable New York Rules, are insufficient to allege a claim for legal malpractice. *Baxt v. Liloia*, 155 N.J. 190, 199-201 (N.J. 1998).

That aside, a requisite element of a cause of action for legal malpractice is the existence of an attorney-client relationship. *Wei Cheng Chang v Pi*, 288 A.D.2d 378, 380 (2d Dep't 2001). Additionally, plaintiffs must show, among other things, that the attorney was negligent, and that the negligence caused plaintiffs' loss. *Mendoza v Schlossman*, 87 A.D.2d 606, 607 (2d Dep't 1982). Here, plaintiffs' claim fails because they do not allege facts satisfying any of these elements.

### A.    Plaintiffs Fail To Allege An Attorney-Client Relationship.

An "attorney-client relationship . . . arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice." *Priest v. Hennessy*, 51 N.Y.2d 62, 68-69 (N.Y. 1980). Further, when a client retains an attorney for a specific matter, the attorney does not represent the client with respect to all other matters. *Turner v. Finkelstein & Meirowitz*,

61 A.D.3d 849, 850 (2d Dep't 2009) (the scope of an attorney-client relationship is limited by
the specific terms of the parties' engagement agreement).

James Wiatt alleges that he engaged Bristol and Winston & Strawn to provide him with
legal services regarding Wiatt's separation from the William Morris Agency.  (Compl. ¶45.)
Plaintiffs also contend that Bristol thereafter advised Wiatt on the responsibilities of board
members for public and private companies, revised an indemnification agreement, prepared
memoranda relating to employment and corporate law issues, and prepared documents relating to
board membership and consultancy agreements.  (*Id.* ¶¶49, 51-54.)  The fact that Bristol and
Winston & Strawn may have represented Wiatt on discrete corporate and employment issues,
however, does not demonstrate that they represented plaintiffs with respect to their financial
affairs.  *See Latin America Finance Group, Inc.*, 2006 U.S. Dist. LEXIS 48964 at *29 (even if
plaintiffs were able to demonstrate that defendant was serving as their attorney in some capacity,
they are required to show that he had a duty with respect to the matter giving rise to the cause of
action).

To determine whether an attorney-client relationship exists with respect to a particular
matter, courts consider, among other things: (i) "whether a fee arrangement was entered into or a
fee paid;" (ii) "whether a written contract or retainer agreement exists indicating that the attorney
accepted representation;" (iii) "whether the attorney actually represented the individual in an
aspect of the matter" and; (iv) "whether the purported client believed that the attorney was
representing him and whether this belief was reasonable."  *Catizone*, 71 F. Supp. 2d at 368; *Latin
America Finance Group, Inc.*, 2006 U.S. Dist. LEXIS 48964 at * 21-22.

Applying these factors, plaintiffs fail to allege Bristol represented them with regard to
their financial affairs.  They do not allege there was a fee agreement with Bristol and Winston &

17

Strawn or that any fee was paid, nor do they allege a written contract or any form of oral retainer agreement demonstrating that Bristol entered into an attorney-client relationship with plaintiffs with respect to their financial affairs. At most, James Wiatt alludes to an e-mail exchange with Bristol, but even that was only for legal services and advice regarding his separation agreement with the William Morris Agency. (Compl. ¶45.) Plaintiffs do not allege that Bristol gave them legal advice regarding their financial affairs or their relationship with the Starr Defendants.[6] Moreover, with regard to the matters for which plaintiffs do allege they retained Bristol and Winston & Strawn, they do not allege Bristol's legal advice was negligent.

Finally, plaintiffs fail to demonstrate a reasonable belief that Bristol and Winston & Strawn were representing plaintiffs with respect to their dealings with the Starr Defendants. *Heine v. Colton, Hartnick, Yamin & Sheresky*, 786 F. Supp. 360, 367 (S.D.N.Y. 1992). Again, the fact that an individual has previously been represented by an attorney does not mean that the "attorney represents that person for any or all subsequent, unrelated . . . matters." *People v. Ellis*, 91 Misc. 2d 28, 34 (Sup. Ct. N.Y. 1977). Where there is no credible allegation that Bristol affirmatively led plaintiffs to believe Bristol and Winston & Strawn were acting as their attorneys with respect to their financial affairs, it was not reasonable for plaintiffs to believe that relationship existed. *Latin America Finance Group, Inc.*, 2006 U.S. Dist. LEXIS 48964 at * 21-22 (plaintiffs must point to contemporaneous statements that suggests either party believed that they were attorney and client. Moreover, even if plaintiffs are able to demonstrate that

---

[6] Plaintiffs allege that "in one instance" in or around March 2010, James Wiatt mentioned to Bristol that he was unhappy with one of the Starr Defendants' investments. "Bristol told Jim Wiatt that he would try to get his money back for him and to identify any other investments for which he wanted to have his money returned." (Compl. ¶55.) However, this appears to be a non-legal discussion, and plaintiffs do not allege it constituted legal advice as to plaintiffs' financial affairs.

defendants were serving as their lawyer on certain matters, they must demonstrate a request made of defendant concerning the matter at issue).

**B.     Even If There Was an Attorney-Client Relationship Between Bristol and Plaintiffs With Respect to Their Dealings With the Starr Defendants, Plaintiffs Fail to Demonstrate Bristol Caused Their Loss.**

Even if plaintiffs adequately demonstrated the existence of an attorney-client relationship, their claim for legal malpractice still fails because they cannot allege that Bristol was the "but for" cause of their loss. *Sumo Container Station, Inc. v. Evans, Orr, Pacelli, Norton & Laffan, P.C.*, 278 A.D.2d 169, 171 (1st Dep't 2000)(*citing Rapp v. Lauer*, 229 A.D.2d 383, 394 (2d Dep't 1996)) (plaintiffs must show "they would not have sustained the claimed damages 'but for' defendant attorneys' alleged misconduct").

Plaintiffs claim that Bristol and Winston & Strawn were negligent by failing to give plaintiffs any explanation of what happened to plaintiffs' funds. (Compl. ¶158.)  However, plaintiffs cannot allege that, "but for" Bristol's failure to explain what happened to plaintiffs' funds, plaintiffs would have avoided loss. *Tinter v. Rapaport*, 253 A.D.2d 588, 590 (1st Dep't 1998).  Plaintiffs are unable to show that Bristol was the "but for" cause of their loss, because the funds had long since been transferred by the Starr Defendants from the Wiatts' Management Account pursuant to the authority the Wiatts granted them.  This precludes their recovery in malpractice and the cause of action should be dismissed. *Id.* For the same reason, Bristol's statements to James Wiatt in May 2010 regarding the SEC investigation of the Starr Defendants, (Compl. ¶¶100-102, 108, 157), were not the "but for" cause of any loss at the hands of the Starr Defendants.

**C.    Plaintiffs' Malpractice Claim Based on the Allegation That Bristol Knew That the Starr Defendants Had Misappropriated Their Funds And Had Conspired in That Misappropriation Cannot Stand Because Plaintiffs Impermissibly Rely on Other Prior Pleadings.**

As part of their malpractice claim against Bristol and Winston & Strawn, plaintiffs proffer an allegation that concludes without any factual basis that Bristol conspired with the Starr Defendants to steal their funds and hid that alleged "fact" from plaintiffs.  (*Id.* ¶157.)  Nowhere in their complaint, however, do plaintiffs allege a single fact supporting that legal conclusion.

Plaintiffs instead base these factual and legal conclusions solely on the Indictment against Bristol and the SEC's amended complaint, which plaintiffs annex as Exhibits A and G, receptively, to their complaint.  As set forth in the Motion to Dismiss Standard, *supra*, plaintiffs' reliance on allegations in those pleadings is impermissible; they cannot be used to supplement the wholly lacking factual allegations in their complaint.  *See International Longshormen's Assoc.*, 518 F. Supp. 2d. at 465-66 (*citing Rose*, 871 F.2d at 339 n.3; *Perkins*, 939 F.2d at 467 n.2 (limiting *Fed. R. Civ. Pro.* 10(c) to documentary evidence).  Thus, plaintiffs' malpractice claim based on their unsupported conclusions should be dismissed.

## POINT IV

## PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT BECAUSE THEY DO NOT ALLEGE BRISTOL WAS ENRICHED (COUNT V)

To state a claim of unjust enrichment under New York law, plaintiffs must of course show that Bristol was enriched.  *Clark v. Daby*, 300 A.D.2d 732, 732 (3d Dep't 2002).  When a plaintiff fails to allege that a defendant received a benefit at the expense of the plaintiff, a cause of action for unjust enrichment should be dismissed.  *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 906 (4th Dep't 1999).

Here, plaintiffs fail to allege that Bristol retained any of the $2 million withdrawn by the Starr Defendants from their Management Account. Plaintiffs assert that the Starr Defendants wire transferred the funds they obtained from the Wiatts' Management Account to Bristol's trust account and that the monies were immediately wired back out of the account in accordance with the Starr Defendants' instructions. The first $1 million was wired to the Starr Defendants and the second $1 million was used to repay one of Starr Defendants' clients. (Compl. ¶¶63, 66, 82, 87.)

Thus, plaintiffs fail to allege that Bristol retained any benefit at their expense. Plaintiffs also fail to allege any benefit to Bristol resulting from their money being placed in his trust account. This claim therefore should be dismissed. *I.G. Second Generation Partners, L.P. v. Reade*, 17 A.D.3d 206, 208-09 (1st Dep't 2005); *Amusement Indus. v. Stern*, No. 07 Civ. 11586, 2011 U.S. Dist. LEXIS 15887, *59 (S.D.N.Y. Feb. 17, 2011) (plaintiffs failed to state a claim for unjust enrichment where plaintiffs fail to allege how defendants benefited from money placed in escrow).

## POINT V

### PLAINTIFFS FAIL TO STATE A CLAIM FOR CONVERSION BECAUSE THEIR FUNDS WERE DEPOSITED TO BRISTOL'S TRUST ACCOUNT PURSUANT TO THE STARR DEFENDANTS' EXERCISE OF A VALID POWER OF ATTORNEY (COUNT VI)

To state a claim of conversion, plaintiffs "must demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing" and that the "defendant exercised an unauthorized dominion over the [property] . . . to the exclusion of the plaintiff's rights." *AMF Inc. v. Algo Distribs.*, 48 A.D.2d 352, 356-57 (2d Dep't 1975); *Vigilant Ins. Co. of America v. Hous. Auth. of the City of El Paso*, 87 N.Y.2d 36, 44 (N.Y. 1995).

Plaintiffs fail to state claim for conversion because their allegations do not demonstrate that Bristol exercised unauthorized control over their funds. Plaintiffs acknowledge that they provided the Starr Defendants with signatory authority and power of attorney over the Management Account. (Compl. ¶26.) A power of attorney authorizes one party to act in place of another as attorney-in-fact. *Zaubler v. Picone*, 100 A.D.2d 620, 621 (2d Dep't 1984). One holding power of attorney is empowered to take any and all acts "as fully as the principal might or could do." *Romero v. Sjoberg*, 5 N.Y.2d 518, 523 (N.Y. 1959).

Because the Starr Defendants transferred funds from the Wiatts' Management Account to Bristol's trust account pursuant to their power of attorney, and only subsequently misappropriated the funds upon their disbursement in accordance with the Starr Defendants' instructions, plaintiffs cannot allege Bristol exercised unauthorized dominion over plaintiffs' funds. *Rohrbacher v. BancOhio Nat'l Bank*, 171 A.D.2d 533 (1st Dep't 1991) (an action of conversion is precluded against a bank where deposit is made pursuant to a power of attorney and the attorney-in-fact later diverts the funds); *see also McCabe Hanger Mfg. Co. v. Chelsea Exchange Bank*, 183 App. Div. 441, 442 (1st Dep't. 1918). Moreover, because Bristol held those funds in his attorney trust account for the benefit of the Starr Defendants, he had no ownership interest or control over the use of those funds. That power was vested solely in the Starr Defendants. Plaintiffs' conversion claim fails as a matter of law.

<u>**POINT VI**</u>

**PLAINTIFFS' CIVIL CONSPIRACY CLAIM FAILS BECAUSE THE <u>UNDERLYING TORT CLAIMS FAIL AND BECAUSE PLAINTIFFS' ALLEGATIONS DO NOT ESTABLISH A CONSPIRACY (COUNT VII)</u>**

**A.   <u>Plaintiffs Have Failed To State A Claim For The Underlying Torts.</u>**

Plaintiffs' civil conspiracy claim fails because New York does not recognize conspiracy to commit a tort as an independent cause of action. *Steier v. Screiber*, 25 A.D.3d 519, 522 (1st

Dep't 2006); *Lewis*, 138 F. Supp. 2d at 479; *Ward v. City of New York*, 15 A.D.3d 392, 393 (2d

Dep't 2005). Rather, such a claim only is derivative of another underlying tort. *Ward*, 15

A.D.3d at 393; *see also Sokol v Addison*, 293 A.D.2d 600, 601 (2d Dep't 2002). Thus, when the

underlying tort claims are dismissed, a civil conspiracy claim "cannot stand alone." *Sokol*, 293

A.D.2d at 601. As demonstrated in this motion, each of plaintiffs' tort claims fail; accordingly,

the civil conspiracy claim should be dismissed as well.

**B.**      **Plaintiffs Have Not Properly Alleged a Civil Conspiracy.**

Even if some of plaintiffs' tort claims survive dismissal, plaintiffs fail to state a claim for

civil conspiracy. In addition to an underlying tort, a civil conspiracy claim requires, *inter alia*,

allegations of a corrupt agreement between two or more persons, an overt act in furtherance of

the agreement, and the defendant's intentional participation in the furtherance of a plan or

purpose. *Lewis*, 138 F. Supp. 2d at 479. A civil conspiracy claim fails where the plaintiff only

offers mere conclusory assertions to support that claim. *Kilkenny v. Greenberg Traurig, LLP*,

No. 05 Civ. 6578, 2006 U.S. Dist. LEXIS 23399, *16 (S.D.N.Y. Apr. 21, 2006); *DirecTV Latin

Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 425 (S.D.N.Y. 2010) (on a motion to dismiss,

holding that conclusory assertions that there was a conspiracy are insufficient to support a

conspiracy claim) (internal citations omitted).

Plaintiffs do not allege anything more than the conclusory assertion that Bristol conspired

to divert plaintiffs' money. They merely recite the elements of conspiracy and not a single thing

more. (Compl. ¶¶60, 176.) They do not even assert that there was a corrupt agreement between

Bristol and the Starr Defendants to steal the plaintiffs' money, without which there could be no

conspiracy. To the extent plaintiffs rely on the Indictment of Bristol and SEC amended

complaint against Bristol to support their otherwise unsupported conclusion, they are not

permitted to do so.  (*See* Motion to Dismiss Standard, *supra*.)  Their failure to allege independent

facts to support their conclusion that Bristol engaged in a conspiracy is fatal to this claim.

## POINT VII

### PLAINTIFFS' FRAUD CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS DID NOT RELY ON BRISTOL'S ALLEGED STATEMENTS TO THEIR DETRIMENT AND BECAUSE BRISTOL DID NOT VIOLATE A DUTY TO DISCLOSE (COUNT VIII)

To state a claim for fraud, plaintiffs must establish: (i) Bristol made a representation as to

a material fact; (ii) the representation was false and known by Bristol to be false; (iii) Bristol

intended to deceive plaintiffs; (iv) they believed and justifiably relied upon the statement and

were thereby induced to engage in a certain course of conduct; and (v) as a result of such reliance

they sustained pecuniary loss.  *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421 (N.Y.

1996).  With regard to omissions, a claim of "fraudulent concealment requires, in addition to the

. . . elements [for fraudulent misrepresentation], an allegation that defendant had a duty to

disclose material information and that it failed to do so."  *P. T. Bank Central Asia v. ABN AMRO*

*Bank*, 301 A.D.2d 373, 376 (1st Dep't 2003).

**A.**   **Plaintiffs Did Not Rely On Bristol's Statements to Their Detriment.**

"[P]laintiff must show both that defendant's misrepresentation induced plaintiff to engage

in the transaction in question . . . and that the misrepresentations directly caused the loss about

which plaintiff complains."  *Laub*, 297 A.D.2d at 31.  As set forth in Point I.A, *supra*, plaintiffs

do not allege that Bristol made any statements to them relevant to this action prior to May 2010.

Thus, Bristol's statements came after plaintiffs' alleged loss occurred -- when the Starr

Defendants' exercised their authority over the Wiatts' assets by transferring $1 million from their

Management Account in January 2010, and again in April 2010.  Consequently, plaintiffs could

not have taken any action or refrained from taking action to their detriment based on Bristol's

alleged May 2010 statements. Their fraud claim based on Bristol's alleged statements therefore fails. *See Meyercord v. Curry*, 38 A.D.3d 315, 315 (1st Dep't 2007) (fraud claim dismissed where defendant demonstrated plaintiff could not establish detrimental reliance because plaintiff could not have changed his position or suffered a loss based on the alleged misrepresentations).

**B.    Bristol Did Not Violate a Duty to Disclose Material Information to Plaintiffs.**

"When dealing with a claim of fraud based on material omissions, it is settled that a duty to disclose arises only when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *Travelers Indem. Co. of Illinois v CDL Hotels USA, Inc.*, 322 F. Supp 2d 482, 499 (S.D.N.Y. 2004) (*quoting United States v. Szur*, 289 F.3d 200, 211 (2d Cir. 2002)). As demonstrated in Points I.B, II, and III.A, *supra*, Bristol did not have a relationship, fiduciary or otherwise, with plaintiffs as to the Starr Defendants' management of their financial affairs, their decision to grant the Starr Defendants unfettered authority over their personal funds, or the Starr Defendants' January and April 2010 withdrawals from their Management Account. Thus, plaintiffs cannot sustain a claim that Bristol concealed material information from them with respect to the Starr Defendants' transfers of the Wiatts' funds. (Compl. ¶¶180-82.)

As an aside, to the extent this claim assumes that Bristol knew of the alleged nature of the Starr Defendants' transfer of plaintiffs funds, plaintiffs fail to allege independently any facts to support that assumption. As set forth in the Motion to Dismiss Standard, *supra*, plaintiffs are not permitted to rely on the allegations in the pleadings improperly attached to their complaint to support their otherwise unsupported conclusion that Bristol knew that the Starr Defendants were misappropriating $2 million of plaintiffs' funds.

## POINT VIII

## PLAINTIFFS' CONSPIRACY TO DEFRAUD CLAIM FAILS (COUNT IX)

There is no private right of action for a claim of conspiracy to defraud in New York; it is punishable only as a felony. *Zhong v Capstone Bus. Credit, LLC*, No. 100429-2009, 2009 NY Slip Op 33198U, *11 (N.Y. Sup. Ct. Dec. 23, 2009). However, even if plaintiffs intended to assert a claim of conspiracy to commit fraud, that claim would fail.

To state a claim for conspiracy to commit fraud, plaintiffs must demonstrate facts showing a sufficient connection between the actions of defendants and the fraud alleged, such as a common scheme or plan. *See Agostini v. Sobol*, 304 A.D.2d 395, 395 (1st Dep't 2003); *see also Callahan v. Gutowski*, 111 A.D.2d 464, 465 (3d Dep't 1985). This claim is subject to the heightened pleading requirements of *Fed. R. Civ. Pro.* 9(b). *Kronfeld v. First Jersey Nat'l Bank*, 638 F. Supp. 1454, 1468 (D.N.J. 1986). Plaintiffs cannot state a claim for conspiracy by making conclusory allegations; plaintiffs must allege specific facts regarding the conspiracy. *Cafaro v. HMC*, No. 07-2793, 2008 U.S. Dist. LEXIS 71740, *24 (D.N.J. Sept. 5, 2008).

Plaintiffs assert that "Defendants entered into an agreement with a common design to defraud Plaintiffs" and that "Defendants willfully and knowingly agreed and conspired with other Defendants." (Compl. ¶¶187-88.) Plaintiffs, however, fail to allege any facts supporting those legal conclusions. They also fail to satisfy the *Rule* 9(b) pleading requirements regarding the existence of a common scheme or plan between Bristol and the Starr Defendants. As set forth in the Motion to Dismiss Standard, *supra*, plaintiffs are not permitted to cure their failures by relying on the Indictment of Bristol and SEC amended complaint against Bristol. Plaintiffs therefore fail to state a claim for conspiracy to commit fraud.

In addition, conspiracy to commit fraud is a derivative claim requiring a viable underlying claim of fraud for recovery; thus, a claim for conspiracy to commit fraud is only

available if plaintiffs state a claim for fraud. *Baker v. R.T. Vanderbilt Co.*, 260 A.D.2d 750, 753

(3d Dep't 1999). As demonstrated in Point VII, *supra*, plaintiffs' fraud claim is deficient.

Accordingly, plaintiffs' claim for conspiracy to commit fraud should similarly be dismissed.

*Romano v. Romano*, 2 A.D.3d 430, 432 (2d Dep't 2003).

### POINT IX

**PLAINTIFFS' RICO CLAIM SHOULD BE DISMISSED BECAUSE IT
FAILS TO ADEQUATELY PLEAD THE PREDICATE OFFENSES, THE
EXISTENCE OF AN ENTERPRISE OR A PATTERN OF
RACKETEERING (COUNT X)**

To state a claim under RICO, 18.U.S.C. § 1962(c), plaintiffs must allege, with

particularity, that each defendant: (i) conducted or participated in the conduct (ii) of an

enterprise (iii) through a pattern (iv) of racketeering activity. *Lum v. Bank of Am.*, 361 F.3d 217,

223 (3d Cir. 2004). Here, plaintiffs' conclusory allegations concerning Bristol's two alleged

statements -- made to plaintiffs well after the transfers were made -- are wholly insufficient to

implicate him as a knowing participant in a RICO conspiracy.

**A.**    **Plaintiffs Fail To Adequately Plead Wire Fraud Or Money Laundering.**

Where acts of wire fraud constitute the alleged predicate racketeering acts underlying a

RICO claim, those acts must be pleaded with the particularity required by *Fed. R. Civ. Pro.* 9(b).

*Lum*, 361 F.3d at 223; *Warden v. McClelland*, 288 F.3d 105, 114 (3d Cir. 2002). A wire fraud

claim must set forth: (1) the existence of a scheme to defraud; (2) the defendant's knowledge or

intentional participation in the scheme; and (3) the use of interstate mails or wires to further the

fraudulent scheme. *Taveras v. Resorts Int'l Hotel, Inc.*, No. 07-4555, 2008 U.S. Dist. LEXIS

71670, *22-23 (D.N.J. Sept. 19, 2008) (*citing Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310,

321(E.D.N.Y. 2001)).

Applying these standards, plaintiffs' allegations of wire fraud and money laundering fail on several levels.  First, as pointed out previously in connection with plaintiffs' civil conspiracy and conspiracy to defraud claims (Points VI and VIII, *supra*.), plaintiffs offer nothing by way of facts, as opposed to conclusory assertions, to support their contention that Bristol had entered into any type of illicit agreement with the other defendants or that he was a knowing participant in the alleged scheme.  In the absence of specific allegations to that effect, plaintiffs collectivized allegations against all defendants, which merely parrot the elements of wire fraud and money laundering, are insufficient and warrant a dismissal of plaintiffs' RICO claim against Bristol.  *A-Valey Eng'rs, Inc. v. Board of Chosen Freeholders*, 106 F. Supp. 2d 711, 716 (D.N.J. 2000) (dismissing plaintiff's RICO claim for failure to satisfy *Rule* 9(b) and holding that "[p]leadings containing collectivized allegations against defendants do not satisfy *Rule* 9(b) … acts of fraud must be pled specifically with respect to each defendant, thereby notifying each defendant of the nature of its alleged participation in the fraud.")(internal quotation marks omitted); *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 315-316 (D.N.J. 2005) (a money laundering claim must do more than "recite the elements of …money laundering provisions").

Moreover, as discussed previously, it is impossible to see how the two after-the-fact statements allegedly made by Bristol to plaintiffs can be said to be in "furtherance" of the fraud. *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 479-80 (E.D.N.Y. 2007).  The alleged statements were made well after the transfers had been made and were not relied upon by plaintiffs in taking or forbearing any action.  Other courts have held that a mailing or wire communication cannot be said to be in furtherance of a fraud when the scheme has already reached fruition. *United States v. Altman*, 48 F.3d 96, 103 (2d Cir. 1995).  The same holds true

28

here.  Bristol's two alleged statements to plaintiffs in May cannot form the basis for wire fraud claims against him arising out of withdrawals and transfers that had already been made.

**B.**      **Plaintiffs Have Failed to Properly Plead A RICO Enterprise.**

Claims under § 1962(c) also require a plaintiff to properly plead an "enterprise" that was used to further the alleged scheme.  Plaintiffs' RICO claims also fail in this regard.

Among other things, plaintiffs fail to allege either the enterprise's structural elements or its shared common purpose.  *United States v. Bergrin*, 707 F. Supp. 2d 503, 515 (D.N.J. 2010) (RICO count of indictment dismissed for failure to plead enterprise structure, including leaders' responsibilities, each associates' role and unity of purpose); *In re: Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 369-70 (3d Cir. 2010) (requiring a shared purpose and sufficiently long relationship among those associated with the enterprise to pursue that purpose).

Plaintiffs do not specify the respective roles of the various members of the alleged enterprise, nor do they indicate the nature of their alleged common purpose or goals.  Instead, they collectively lump the defendants together with conclusory assertions of their association and that each defendant purportedly "conducted and participated" in the affairs of the enterprise. (Compl. ¶¶195-97.)  These legal conclusions and mere parroting of elements are insufficient to sustain a RICO claim.

**C.**      **Plaintiffs Fail To Plead Sufficient Continuity To Establish A Pattern Of Racketeering Activity.**

In order to establish a RICO violation, plaintiffs must allege, among other things, a "pattern of racketeering activity."  *Sedima v. Imrex Co.,* 473 U.S. 479, 496 (1985).  The racketeering activity must be both related, in that the acts have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by

distinguishing characteristics…", and that it amounts to, or constitutes a threat of, continuing racketeering activity. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989).

Continuity can be either open or closed-ended; that is, either a closed period of repeated conduct or past conduct that by its nature projects into the future with a threat of repetition. *Id.* at 241. Closed-ended continuity requires an allegation of "a series of related predicates extending over a substantial period of time." *Id.* at 242. Open-ended continuity requires plaintiffs to allege a threat of racketeering activity that continues beyond the period covered by the complaint. *Id.* at 241-43. Plaintiffs do not even attempt to allege open-ended continuity in the complaint.

In considering whether a plaintiff's allegations are sufficient to establish closed-ended continuity, courts examine a number of factors, of which duration is the most important. *Hindes v. Castle*, 937 F.2d 868, 873-74 (3d Cir. 1991). Here, the allegedly deceptive or fraudulent activity occurred between January and April 2010. (Compl. ¶63.) The scheme allegedly began in January, when the Starr defendants wired out the first $1 million out of the Management Account, and ended with Starr's arrest in May.

This four to five month period is not a sufficiently "substantial period of time" to establish close-ended continuity. *See Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 611 (3d Cir. 1991) (*citing H.J., Inc.*, 492 U.S. at 242) ("We note that cases finding substantial period…dealt with fraudulent conduct lasting years, sometimes over a decade. Such findings of substantial time periods are consistent with Congress' intent to combat 'long term criminal conduct'"). Indeed, courts in this Circuit have consistently held that closed-ended continuity requires predicate acts that are at least 12 months in duration. *HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc.*, 590 F. Supp. 2d 677, 687 (D.N.J. 2008) (closed-ended continuity

may be established "through allegations of repeated predicate acts extending over a 'substantial' (at least twelve-month) period") (*quoting Tabas v. Tabas,* 47 F.3d 1280, 1293 (3d Cir. 1995)); *Ganon v. Continental Ins. Co.,* 920 F. Supp. 566, 585 (D.N.J. 1996) ("[A] scheme lasting for twelve months is not long enough to establish a closed period pattern of racketeering activity"); *see also Zubritzky v. Provenzano,* No. 10-342, 2010 WL 5058313, at *3 (W.D. Pa. Dec. 6, 2010). Thus, plaintiffs fail to allege the continuity required for a pattern of racketeering and their RICO claim must therefore fail.

## POINT X

### PLAINTIFFS' CLAIM FOR RICO CONSPIRACY SHOULD BE DISMISSED BECAUSE THE UNDERLYING RICO SHOULD BE DISMISSED (COUNT XI)

Since the substantive RICO claim fails, the § 1962(d) RICO conspiracy claim must fail as well. Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of RICO. A plaintiff whose allegations fail to make out a claim under § 1962(a), (b), or (c) cannot maintain a claim under § 1962(d). *Lum,* 361 F.3d at 227 n.5 ; *Lightning Lube, Inc. v. Witco, Corp.,* 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient"); *Gilmore v. Berg,* 820 F. Supp. 179, 184 (D.N.J 1993).

Here, even taking the allegations as true, the RICO conspiracy claim must fail because plaintiffs' RICO claim under § 1962(c) is deficient for the reasons stated previously and a § 1962(d) claim cannot be maintained absent a viable substantive RICO claim. *See Lum,* 361 F.3d at 227 n.5 (affirming district court's dismissal of plaintiffs' RICO conspiracy claim where plaintiffs had failed to plead their § 1962(c) claim with particularity); *Lightning Lube, Inc.,* 4 F.3d at 1191 (affirming dismissal of RICO conspiracy count because the substantive RICO

claims were deficient).  Consequently, since plaintiffs have failed to assert a cognizable,

substantive RICO claim, their conspiracy claim under § 1962(d) must likewise be dismissed.

Furthermore, plaintiffs' RICO conspiracy claim is subject to dismissal because it does not

contain any supportive factual allegations sufficient to describe the general composition of the

conspiracy, as well as the broad objectives and the defendant's role in the conspiracy.  *Dist.*

*1199P Health & Plan v. Janssen, L.P.*, No. 06-3044, 2008 U.S. Dist. LEXIS 103526, *60-61

(D.N.J. Dec. 23, 2008).  To properly plead a conspiracy claim, a plaintiff must also allege that all

defendants "knew that their acts were part of a pattern of racketeering activity."  *Id.* at *60.

Here, plaintiffs fail to set forth the general composition of the conspiracy or the actions Bristol

allegedly took in furtherance of it.  Accordingly, plaintiff's RICO conspiracy claim should be

dismissed.  *A-Valey Eng'rs, Inc.*, 106 F. Supp. 2d at 718 (dismissing plaintiff's RICO conspiracy

claim because the amended complaint failed to describe the general composition or each

defendant's role in the conspiracy).

## POINT XI

### PLAINTIFFS' CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACT FAILS BECAUSE THERE WAS NO CONTRACT AND BECAUSE BRISTOL HAD NO KNOWLEDGE OF PLAINTIFFS' RELATIONSHIP WITH UBS (COUNT XII)

To state a claim for tortious interference with contract, a plaintiff must allege facts

showing: (i) the existence of a valid contract between plaintiff and a third party; (ii) defendant's

knowledge of that contract; (iii) defendant's intentional procuring of the breach of that contract;

and (iv) resultant damages.  *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120 (N.Y. 1956); *Lama*

*Holding Co.*, 88 N.Y.2d at 424.

Plaintiffs' claim fails because they do not allege the existence of a contract with UBS.

Although plaintiffs self-servingly contend that they "had an agreement with an investment

advisor at UBS for an investment of $2,000,000," (Compl. ¶208), the complaint makes clear that James Wiatt merely desired to invest funds with UBS; the complaint does not set forth an enforceable contact between Wiatt and UBS. (*Id.* ¶75.) In fact, plaintiffs do not allege they were required to make that investment, or that they were subject to a breach of contract claim for failure to make that investment. Plaintiffs' claim therefore fails.

Even if James Wiatt did have a contract with UBS, plaintiffs fail to allege facts showing that Bristol had knowledge of the contract. Indeed, plaintiffs did not discuss the UBS investment until May 2010, long after the Starr Defendants were supposed to have transferred funds to UBS on the Wiatts' behalf. (*Id.* ¶74.)

Even if Bristol had knowledge regarding plaintiffs' "agreement" with UBS, they fail to demonstrate that Bristol intentionally induced or procured any breach through wrongful means. *Beecher v. Feldstein*, 8 A.D.3d 597, 598 (2d Dep't 2004) (granting motion to dismiss where pleadings alleged that the defendant's actions merely were incidental to the breach). Here, plaintiffs fail to allege any conduct by Bristol relating to the Starr Defendants' failure to transfer funds to UBS.

## POINT XII

**PLAINTIFFS FAIL TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS BECAUSE PLAINTIFFS DO NOT ALLEGE THAT BRISTOL KNEW OF PLAINTIFFS' RELATIONSHIP WITH UBS AND FAIL TO ALLEGE THAT BRISTOL KNOWINGLY INTERFERED WITH THE RELATIONSHIP (COUNT XII)**

Plaintiffs' claim for tortious interference with prospective business relations must allege that: (i) a business relationship existed between the plaintiff and a third party; (ii) defendant knew of that business relationship and intentionally interfered with it; (iii) defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (iv)

injury resulted to the relationship. *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 433 (S.D.N.Y. 2003). "[E]ven in its most liberal formulation, the relationships must be specified, as must the defendant['s] knowledge and the interference." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 88 A.D.2d 50, 72 (2d Dep't 1982). The claim should be dismissed where the allegations are totally conclusory. *Id.*

Plaintiffs allege that Bristol tortiously interfered with their business relationship with UBS by failing to comply with a written request for a $2 million investment. (Compl. ¶216.) Plaintiffs, however, fail to allege that Bristol had any knowledge of plaintiffs' relationship with UBS and fail to allege that Bristol acted knowingly to interfere with this relationship. Without the requisite knowledge of plaintiffs' relationship with UBS, Bristol could not have acted with the required intent to cause damage to that relationship. *See Hutton*, 275 F. Supp. 2d at 435.

Plaintiffs also fail to allege that Bristol was motivated to "inflict injury" and that Bristol employed "unlawful means" to do so. *Shared Communications Servs. of ESR, Inc. v. Goldman Schs & Co.*, 23 A.D.3d 162, 163 (1st Dep't 2005). In fact, plaintiffs do not allege that Bristol took any action at all with regard to plaintiffs' relationship with UBS. Thus, they cannot establish that Bristol used unlawful means to harm plaintiffs' relationship. *Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp.*, 50 N.Y. 2d 183, 191 (N.Y. 1980) (unlawful or wrongful means includes "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure"). Plaintiffs fail to allege any facts to support this claim.

## CONCLUSION

For the foregoing reasons, Bristol respectfully requests that the Court dismiss the all claims against him in the complaint pursuant to *Fed. R. Civ. Pro.* 12(b)(6).

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey  07102-5400
Attorneys for Defendant
Jonathan S. Bristol


By:  /s/  Thomas J. Demski___

Dated:  March 7, 2011