**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES A. WIATT and ELIZABETH RIEGER WIATT, | Civil Action No.: 10-6608 (JLL) |
| Plaintiffs, | |
| v. | |
| WINSTON & STRAWN, LLP, et al., | **OPINION** |
| Defendants. | |

**LINARES,** District Judge.

This case arises out of allegations that Plaintiffs' former financial advisor, Kenneth Starr, and attorney, Jonathon Bristol, together, conspired to steal $2 million of their funds by unlawfully transferring such funds to Bristol's attorney's trust account. Defendants Winston & Strawn, LLP and Jonathan Bristol have filed motions to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to both motions. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendants' motions are granted in part and denied in part. Plaintiffs are granted leave to file an Amended Complaint, on or before August 22, 2011, which cures the pleading deficiencies discussed herein.

1

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff James Wiatt, a California resident, is a former talent agency executive who now does consulting work for a leading global web services company. (Compl., ¶ 21). Plaintiff Elizabeth Wiatt, also a California resident, is a businesswoman and entrepreneur. (Id.).

### The Starr Defendants

From August 2003 through late May 2010, the Wiatts engaged the services of Kenneth Starr, Starr & Co., Starr & Co. principal Arlene Graff, and Starr Investment Advisors to manage all aspects of their personal finances. (Compl., ¶¶ 2, 9-13, 23).[2] Services performed by the Starr Defendants for the Wiatts included accounting, business management, investment management, investment advice, financial consulting, financial planning and tax advice. (Compl., ¶ 23). The Starr Defendants also assisted the Wiatts in selecting other professionals, such as bankers, realtors and lawyers. (Id.). For the performance of these services, the Wiatts paid the Starr Defendants substantial professional service fees on a monthly basis. (Compl., ¶ 24).

Throughout the course of their business relationship, Starr, a New York resident and former financial advisor, investment manager and accountant to the "stars," also cultivated a close personal friendship with James Wiatt. (Compl., ¶¶ 2, 29). In light of this relationship, and in order to perform the financial services on behalf of Plaintiffs, Starr and Graff had signatory authority over the Wiatts' bank and/or investment accounts, trusts and corporate entities. (Compl., ¶ 25).

---

[1] The following relevant facts are accepted as true solely for purposes of the instant motion. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

[2] The Complaint refers to such defendants collectively as the "Starr Defendants." (Compl., ¶ 15).

<u>The Winston & Strawn Defendants</u>

Defendant Jonathan Bristol, a New Jersey resident, was, at all times relevant to this litigation, a capital partner at the law firm of Winston & Strawn, an Illinois limited liability partnership. (Compl., ¶¶ 16, 17).  The Complaint refers to Bristol and Winston & Strawn collectively as the "Winston & Strawn Defendants."

Bristol had provided legal representation to Starr and his companies since at least 2007, at which time he served as a partner at the law firm of Thelen, LLP. (Compl., ¶¶ 31, 32).  In 2008, Bristol left the firm of Thelen, LLP and was hired as a capital partner at Winston & Strawn, LLP. (Compl., ¶ 34).  While at Winston, Bristol performed substantial work on behalf of the Starr Defendants, generating over $1 million in legal fees for Winston & Strawn in 2009 alone. (Compl., ¶ 38).  For instance, on March 17, 2010, Winston received a $100,000 payment for services purportedly rendered by Bristol on behalf of Starr.  (Compl., ¶ 39).  This money did not come directly from Starr, however; it came from Bristol's attorney trust account. (<u>Id.</u>). The Complaint alleges that Bristol was aware that such funds belonged to defrauded clients of Starr. (<u>Id</u>)

In addition to representing the Starr Defendants, Winston & Strawn and Bristol also represented the Wiatts. (Compl., ¶¶ 41, 49). Starr had referred James Wiatt to Bristol in 2009 in connection with his departure from his employment at the William Morris Agency. (Compl., ¶ 42).  Based on such recommendation, James Wiatt engaged the Winston & Strawn Defendants – by way of e-mail exchange with Bristol on Bristol's Winston & Strawn e-mail account – to provide him with legal services and advice regarding his separation agreement with the William Morris Agency. (Compl., ¶ 45).  Bristol and Winston & Strawn continued to provide legal services to James Wiatt on a variety of matters through late May 2010, including but not limited to coordinating an interview

3

with the SEC that was, unbeknownst to the Wiatts, related to wire transfers from the Wiatts' account into Bristol's attorney trust account.  (Compl., ¶¶ 46, 58).  During this time, Bristol communicated with the Wiatts through his Winston e-mail account, in writing on Winston & Strawn letterhead and/or by telephone.  (Compl., ¶ 47).  Bristol (on behalf of Winston & Strawn) was also copied on correspondence concerning certain contractual disputes in which James Wiatt was involved. (Compl., ¶ 51).  Bristol also prepared at least two legal memoranda for James Wiatt (both of which were written on Winston letterhead, designated as "Attorney-Client Privileged" and saved on Winston's network) relating to complex legal employment and corporate issues in or around January 2010.  (Compl., ¶ 52).

Throughout the course of Bristol's representation of the Wiatts, Bristol communicated directly with the Starr Defendants to obtain relevant documents which they maintained on behalf of the Wiatts, such as the separation agreement and investment records. (Compl., ¶¶ 56, 57).  At no point prior to or during such representation, did Starr disclose to the Wiatts that the Winston & Strawn Defendants also represented most, if not all, of the Starr Defendants or Starr in his individual capacity. (Compl., ¶ 44).

<u>The Alleged Theft of Funds</u>

The Complaint alleges that, at some point in 2010, while Bristol was providing legal representation to the Wiatts, he conspired with the Starr Defendants to steal $2 million from the Wiatts for Starr's personal use. (Compl., ¶ 60).  In furtherance of this conspiracy, the following two transfers were made: (1)  Graff executed a wire transfer of $1,000,000 from the Wiatts' Management Account to Bristol's attorney trust account on or about January 4, 2010 (hereinafter the "January

4

transfer"), and (2) Starr executed a wire transfer of $1,000,000 from the Wiatts' Management Account to Bristol's attorney trust account on or about April 26, 2010 (hereinafter the "April transfer"). (Compl., ¶¶ 63, 68, ).  Once received by Bristol, the funds were immediately wired back out of the attorney trust account and into Starr & Co. and/or other third-parties believed to be Starr clients. (Compl., ¶ 66).

Although the bank records received by Bristol show that the funds came from the Wiatts' bank account, the Wiatts did not authorize such transfers and had no knowledge of such transfers until approximately March 2010 – at which time they received the monthly financial report reflecting the January transaction. (Compl., ¶¶ 65, 67, 69). When questioned about this particular transaction, Graff, Starr and Bristol each informed the Wiatts that such funds had been "bundled" as an "investment" in "UBS." (Compl., ¶¶ 70-74).  Such representations by Graff, Starr and Bristol were false inasmuch as none of the Wiatts' funds had been transferred to anyone at UBS in January 2010. (Compl., ¶ 75).

On April 26, 2010, Starr executed the second wire transfer of $1,000,000 from the Wiatts' Management Account.  The April transfer was made on the same date on which James Wiatt signed a letter authorizing the transfer of $2,000,000 of his funds to UBS. (Compl., ¶¶ 80, 82).  $1,000,000 of the Wiatts' funds was eventually transferred by Starr to UBS on April 26, 2010, but by this point in time, $2,000,000 had been taken out of their bank account.  (Compl., ¶¶ 82-84). James Wiatt was subsequently informed, by UBS, that it had only received $1,000,000 of the $2,000,000 investment; when questioned, Starr explained that he was spreading out the investment into two separate transactions. (Compl., ¶ 84).

In May 2010, the Wiatts learned (by reading civil and criminal complaints filed against Starr

5

and his related entities) that Defendants had actually used the proceeds of the April transfer to pay another Starr client, believed to be a celebrity. (Compl., ¶¶ 85-87). The Complaint alleges that Bristol, who, by this time had an ongoing attorney-client relationship with the Wiatts, knowingly used the money obtained from the Wiatts' April transfer to reimburse Starr's celebrity client. (Compl., ¶¶ 88). When questioned by James Wiatt in mid-May 2010, Bristol misrepresented that the wire transfers to his attorney trust account were made to facilitate the bundling of investments with UBS. (Compl., ¶ 89). To date, the $2,000,000 transferred from the Wiatts' Management Account to Bristol's attorney trust account has not been accounted for or returned. (Compl., ¶ 92).

<u>SEC Investigation</u>

In or around mid-May 2010, James Wiatt was contacted by an attorney for the SEC. (Compl., ¶ 93). Wiatt contacted Starr for his advice. (Compl., ¶ 96). Starr reassured Wiatt that there was "nothing to worry about," recommended that Wiatt contact Bristol for guidance, but failed to acknowledge that: (a) he was a target in the investigation, (b) he had been interviewed by the SEC in March 2010 and/or (c) that Bristol was representing him in connection with the SEC investigation. (Compl., ¶¶ 96-98).

James Wiatt subsequently contacted Bristol who explained that it was his understanding that the SEC investigation was a "routine investigation" "in the wake of the Madoff case." (Compl., ¶ 100). Wiatt asked Bristol whether he should be worried about entrusting his finances with Starr; Bristol told him "there was nothing . . . to worry about." (Id.). Bristol then advised Wiatt that his law firm, Winston & Strawn, was representing the Starr entities with regard to other matters and that he would need Wiatt to waive any potential conflicts that might exist if he wanted Bristol to

6

represent him. (Compl., ¶ 101).  Bristol did not, however, disclose that he and his attorney trust account were targets of the SEC investigation or that he was already representing Starr in connection with said investigation. (Compl., ¶ 102).

Bristol began representing Wiatt in connection with the SEC investigation after Wiatt agreed to waive any conflicts. (Compl., ¶ 103).  In this regard, over the course of several weeks in mid-May 2010, Bristol communicated with the SEC, via e-mail and telephone calls, on behalf of James Wiatt; Bristol and Wiatt also communicated with each other, via e-mail and telephone calls, concerning said investigation. (Compl., ¶¶ 105-108).  Throughout the course of Bristol's representation of James Wiatt in connection with the SEC investigation, Bristol learned that he and his law firm were also involved in the investigation (in connection with the transfer of funds from Bristol's attorney trust account).  (Compl., ¶ 108).  Bristol never conveyed this information to Wiatt; instead, he continued to represent Wiatt, not only with respect to the SEC investigation, but also in connection with his separation agreement from William Morris as it pertained to prospective employment opportunities. (Compl., ¶¶ 108, 109).

<u>Starr's Arrest</u>

On or about May 26, 2010, a criminal complaint by the United States Internal Revenue Services was filed against Starr in the United States District Court for the Southern District of New York based on allegations that Starr had engaged in a fraudulent scheme in connection with the business, accounting, and advisory services he provided to clients, including the Wiatts. (Compl., ¶ 111).  Starr was arrested on the following day. (Compl., ¶¶ 90, 112).  An indictment was returned against Starr on June 10, 2010. (Compl., ¶ 113). The SEC also filed a complaint against Starr and

several of his entities, arising out of the same fraudulent scheme, on May 27, 2010. (Compl., ¶ 114).

James Wiatt is described as an unnamed "Client," "Victim" or "Investor" in each of the pleadings.

(Compl., ¶ 115). Bristol is described as an unnamed "attorney" in both pleadings. (Compl., ¶ 116).

The January and April transfers at issue in this litigation are both referenced in the Starr complaints

and Indictment. (Compl., ¶ 117). On September 10, 2010, Starr pled guilty to certain counts of the

Indictment, including but not limited to, the wire fraud count relating specifically to the January

transfer. (Compl., ¶ 119). The SEC's action is still pending. (Compl., ¶ 121).


### Bristol's Termination and Indictment

Bristol was subsequently terminated by Winston & Strawn. (Compl., ¶ 122). On June 4,

2010, Winston & Strawn filed a Notice of Withdrawal in the SEC action stating that, "[p]ursuant to

the Court's request at the June 1, 2010 hearing in this matter, Winston & Strawn, LLP hereby

confirms that no attorney from Winston & Strawn LLP is representing any party in this case."

(Compl., ¶ 125).

On December 14, 2010, a Grand Jury charged Bristol with one count of money laundering

in connection with his representation of Starr and the Starr entities and use of his attorney trust

account to launder over $20 million. (Compl., ¶ 126). The January and April transfers are referenced

in the criminal Indictment. (Compl., ¶ 127).

On December 16, 2010, the SEC amended its complaint against Starr to allege claims against

Bristol for aiding and abetting Starr's securities violations. (Compl., ¶ 128). On the same day,

Bristol surrendered to law enforcement officials. (Compl., ¶ 130).

Plaintiffs' Claims

In light of the foregoing, Plaintiffs filed the Complaint in this matter on December 20, 2010 against the following defendants: Winston & Strawn LLP, Jonathan Bristol, Starr & Company LLC, Starr Investment Advisors, LLC, Aurora Cassirer, Esq. (as Receiver for Starr & Company LLC and Starr Investment Advisors, LLC), Kenneth I. Starr and Arlene Graff.  Plaintiffs assert the following claims for relief: (1) negligent misrepresentation, (2) breach of fiduciary duty, (3) negligent supervision, (4) legal malpractice, (5) unjust enrichment, (6) conversion, (7) civil conspiracy, (8) fraud, (9) conspiracy to defraud, (10) RICO violations, (11) tortious interference with a contract, (12) tortious interference with a prospective business relations, and (13) accounting.  This Court's jurisdiction over this matter is premised on 28 U.S.C. § 1331.

Currently before the Court are motions to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Winston & Strawn and Jonathan Bristol, respectively.

**LEGAL STANDARD**

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions

[;][t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). With this framework in mind, the Court turns now to Defendants' motions.

## DISCUSSION

As a preliminary matter, the Court must determine which law applies to Plaintiffs' state law claims.

### 1.      Choice of Law

Generally speaking, since this Court exercises its diversity jurisdiction over this action, the law to be applied is that of the forum state – New Jersey. Am. Cyanamid Co. v. Fermenta Animal Health, 54 F.3d 177, 180 (3d Cir.1995). Defendants, instead, urge the Court to apply New York law to some or all of Plaintiffs' non-federal claims. For instance, Defendant Bristol argues that New York law applies because "[t]he parties alleged conduct primarily occurred in New York." (Bristol br. at 9). Bristol provides no further analysis in support of the position that New York law should apply to all of Plaintiffs' state law claims. Winston argues that the distinction is immaterial for most of Plaintiffs' state law claims inasmuch as there is no conflict between New York and New Jersey law as to the claims asserted, with the exception of Plaintiffs' negligent misrepresentation and tortious interference claims. As to those two claims, Winston maintains that New York law should apply because: (1) Starr Defendants were New Yorkers, (2) the alleged thefts originated in, were

meant to benefit the Starr Defendants in and were the subject of criminal and/or SEC charges in New York, and (3) Winston & Strawn has a New York office, of which Bristol was a partner.  (Winston Br. at 13 n. 9).  Plaintiffs, on the other hand, argue that New Jersey law should apply to all state law claims because: (1) there is no conflict, (2) the tortious and negligent acts at issue in this case center on a New Jersey bank account, (3) Defendants Bristol and Graff reside in New Jersey, (4) Defendant Winston & Strawn has an office in New Jersey, and (5) the damage occurred in New Jersey.  (Pl. Opp'n Br. at 15 n. 3).

This Court must apply New Jersey's choice of law rules to determine what law should apply to state law claims.  See Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007).  New Jersey's choice of law analysis is a two step process.  First, a court must determine if an actual conflict in law exists among the states.  See P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132 (2008); Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006). Once it has been determined that a conflict exists, the court must determine which state has the "most significant relationship" to the claim at issue. Camp Jaycee, 197 N.J. at 136.  This test is applied "on an issue-by-issue basis" and "is qualitative, not quantitative." Id. at 143.

Because the parties do not dispute that there is no conflict of law between New York and New Jersey for purposes of all state law claims asserted (with the exception of Plaintiffs' negligent misrepresentation and tortious interference claims) the Court will apply New Jersey law to all such claims.  As to the negligent misrepresentation and tortious interference claims, the Court will determine which state's laws should apply to such claims in the context of assessing same.

2.    **Negligent Misrepresentation**

A.    **Vicarious Liability**

Plaintiffs have attempted to assert a claim for negligent misrepresentation as against Defendant Bristol and Winston & Strawn.  Plaintiffs' claim as against Winston & Strawn is clearly premised on the common law doctrines of vicarious liability and respondeat superior.  See Compl., ¶ 17 ("At all relevant times, Bristol was a 'Capital Partner' at Winston & Strawn who generated business and performed services for clients in his capacity as a Capital Partner of Winston & Strawn in both New Jersey and New York.").  The parties agree that, pursuant to such doctrines, employers may be held liable for the torts of their employees committed within the scope of their employment.  See, e.g., Carter v. Reynolds, 175 N.J. 402, 408-09; Barnhard v. Barnhard, 578 N.Y.S.2d 615, 616 (2d Dep't 1992).  Defendant Winston & Strawn moves to dismiss this claim (and all claims premised on vicarious liability) on the basis that Plaintiffs have failed to allege sufficient facts supporting a claim that Bristol maintained and allowed Starr permissive use of his attorney trust account in Winston & Strawn's ordinary course of business, or with Winston's authority, or within the scope of Bristol's responsibilities as a Winston & Strawn partner.  (Winston Br. at 15).  The Court will assess Winston's argument in this regard in connection with each particular tort claim asserted (to the extent it is premised on vicarious liability).  For purposes of Plaintiffs' negligent misrepresentation claim, suffice it to say, at this juncture, that Plaintiffs' claim as against Winston & Strawn rises or falls with their claim against Bristol.

B.    **Analysis**

Based on the facts alleged in the Complaint, New Jersey or New York law could, arguably, apply to Plaintiffs' state law claims.  Defendant Winston & Strawn suggests that a conflict of law

exists between New Jersey and New York as to this claim and that New York law should, therefore, apply.

The Court must determine whether an actual conflict exists.  See, e.g., Lebegern, 471 F.3d at 430.  To state a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege that "defendant negligently provided false information and that plaintiff incurred damages proximately caused by its reliance on that information." Highlands Ins. Co. v. Hobbs Group, LLC, 373 F.3d 347, 351 (3d Cir. 2004) (citing Karu v. Feldman, 119 N.J.135 (1990)).  To state a claim for negligent misrepresentation under New York law, a plaintiff must allege: "(1) carelessness in imparting words; (2) upon which others were expected to rely; (3) and upon which they did act or failed to act; (4) to their damage." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003) (citing White v. Guarente, 43 N.Y.2d 356 (1977)).  In addition, "the action requires that . . . the declarant must express the words directly, with knowledge or notice that they will be acted upon, to one to whom the declarant is bound by some relation or duty of care." Id. ("In New York, 'not all representations made by a seller of goods . . . will give rise to a duty to speak with care.' ") (quoting Kimmell v. Schaefer, 89 N.Y.2d 257 (1996)).

At least one court in this district has found that "[b]ecause New York law explicitly requires a plaintiff to allege a 'special relationship,' there is an actual conflict between New York and New Jersey law." Goodman v. Goldman, Sachs & Co., No. 10-1247, 2010 WL 5186180, at *5 (D.N.J. Dec. 14, 2010); see generally Palladin Partners v. Gaon, No. 05-3305, 2006 WL 2460650, at *18 (D.N.J. Aug. 22, 2006) ("New Jersey rather than New York law governs Plaintiffs' common law claims [and][u]nder New Jersey law, a plaintiff need not prove a special relationship but may prevail on a negligent misrepresentation claim by showing that the defendant negligently made an incorrect

13

statement, upon which the plaintiff justifiably relied."). Even assuming, arguendo, that such a conflict exists, Defendants have failed to provide a sufficiently thorough analysis in support of the position that New York has the "most significant relationship" to this particular claim. See generally Camp Jaycee, 197 N.J. at 136. In any event, because the Court finds that Plaintiffs' negligent misrepresentation claim is deficient, as currently pled, under either state's laws, the Court will dismiss such claim without prejudice and without making a final determination as to which state's laws will ultimately govern such claim.

As explained above, in order to state a claim for negligent misrepresentation under either New York or New Jersey law, a plaintiff must allege that Defendants negligently provided false information (or omitted such information) and that Plaintiffs' loss was proximately caused by their reliance on that information. See, e.g., Highlands Ins., 373 F.3d at 347-51; Dallas Aerospace, 352 F.3d at 788. Having closely reviewed the allegations set forth in Plaintiffs' Complaint, the Court finds that Plaintiffs have failed to allege any specific misrepresentation or omission made by Bristol prior to the January/April 2010 transfers which proximately caused Plaintiffs' financial loss. The earliest alleged misrepresentation and/or omission made by Bristol took place in or around May 12, 2010. (Compl., ¶ 74). The Court agrees with Defendants that such communication cannot form the basis of Plaintiffs' negligent misrepresentation claim inasmuch as both transfers had already taken place by that point; thus, Plaintiffs' alleged reliance on such communication could not have proximately caused their financial loss.

To the extent Plaintiffs wish to rely on the theory that Bristol failed to tell the Wiatts that Starr had used – or intended to use – Bristol's attorney trust account to make unauthorized transfers of Starr's client investment funds, Plaintiffs' Complaint currently fails to contain any facts to support

14

the allegation that Bristol knew this information prior to April 2010.[3]  To the extent Plaintiffs wish, instead, to rely on the theory that had Bristol disclosed the "true nature of Starr's unauthorized transfers and [Winston's] role in facilitating those transfers," presumably during his May 12, 2010 conversation with James Wiatt, then "the Wiatts would have demanded the return of their funds immediately, and recovered those funds, as did Uma Thurman and Neil Simon" (Pl. Opp'n Br. at 47), such theory of causation is not sufficiently pled in Plaintiffs' Complaint.[4]  Absent such factual content, Plaintiffs have failed to allege a facially plausible negligent misrepresentation claim as against either Bristol or Winston & Strawn.  See generally Iqbal, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Defendants' motion to dismiss this claim is therefore granted.  Plaintiffs' negligent misrepresentation claim, as against Bristol and Winston & Strawn, is dismissed without prejudice.

---

[3] Plaintiffs' conclusory allegation that "Bristol knew [that certain funds contained in his attorney trust account] belonged to defrauded clients of Starr" as early as March 17, 2010 (Compl., ¶ 39) is insufficient to meet the Rule 8(a) pleading standard. See generally Iqbal, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiffs have failed to plead sufficient facts in support of this statement that would allow this Court to draw the reasonable inference that the Bristol possessed such knowledge. See id.  As discussed more fully below, to the extent Plaintiffs wish to rely on facts scattered throughout their Complaint (or in documents attached to their Complaint) to bolster the viability of this claim, Plaintiffs are hereby directed to amend this claim in such a manner that will provide Defendants (and the Court) with adequate notice as to the specific facts upon which this claim is based.

[4] A complaint cannot be amended by way of a brief in opposition to a motion to dismiss. See, e.g., Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir.1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

### 3.     Breach of Fiduciary Duty

Plaintiffs' Complaint alleges that "[t]hrough their positions as Plaintiffs' entrusted attorneys, and because of their ability to control Plaintiffs' money in their attorney trust account, Defendants owed Plaintiffs fiduciary obligations of trust, loyalty, good faith and due care, and were required to use their utmost ability to manage Plaintiffs' money and communicate any conflicts or malfeasance in a fair, just, honest and equitable manner." (Compl., ¶ 140).  Defendants Bristol and Winston & Strawn both move to dismiss this claim on the basis that: (1) this claim is redundant of Plaintiffs' legal malpractice claim, and (2) Plaintiffs have otherwise failed to state a claim for breach of fiduciary duty because Bristol and the Wiatts did not have an attorney-client relationship concerning the Starr Defendants' management of their financial affairs.

### A.     Vicarious Liability

Plaintiffs' fiduciary duty claim as against Winston & Strawn is premised on vicarious liability.  "To establish a master's liability for the acts of his servant, a plaintiff must prove (1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment."  Carter, 175 N.J. at 408-09.  Winston & Strawn moves to dismiss this claim, generally, on the basis that it is "not vicariously liable for Bristol's alleged fiduciary duty breaches." (Winston Br. at 34 n. 24).  Winston offers no further argument in support of this position as to this particular claim.  Having closely reviewed the allegations set forth in Plaintiffs' Complaint, the Court finds that Plaintiffs have sufficiently alleged, at this juncture, that Bristol was acting within the scope of his employment as partner at the law firm of Winston & Strawn when advising the

Wiatts as to legal matters involving employment-related issues,[5] corporate issues[6] and, as explained more fully below, certain financial matters.[7]   Accordingly, the Court declines to dismiss this claim as to Winston & Strawn on this basis alone.

### B.    Analysis

In order to state a claim for breach of fiduciary duty under New Jersey law, Plaintiffs must allege: (1) a fiduciary relationship comprised of "two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship," and (2) a "violation of that trust." F.G. v. MacDonell, 150 N.J. 550, 563-65 (1997).  Defendants do not necessarily dispute that a fiduciary relationship existed between Bristol and the Wiatts. Defendant Bristol, nevertheless, maintains that the scope of any fiduciary relationship between himself and the Wiatts was limited to professional advice concerning the SEC investigation and did not extend "limitlessly to oversight of the Wiatts' finances." (Bristol Br. at 34).  In response, Plaintiffs argue that "[t]he Wiatts have alleged that they trusted and relied upon Bristol and Winston & Strawn to advise them and to protect their interests with regard to myriad matters, including ones generally implicating the Wiatts' finances and ones relating specifically to the Wiatts' investments with Starr." (Pl. Opp'n Br. at 27).

The Court has closely reviewed the allegations set forth in the Complaint and finds that although such allegations suggest that Bristol was originally retained by the Wiatts in connection with discrete employment-related matters (Compl., ¶¶ 42, 45, 51, 52), the Complaint also alleges that

---

[5] (Compl., ¶¶ 42, 45).

[6] (Compl., ¶¶ 49-52).

[7] (Compl., ¶¶ 55, 74).

17

Bristol extended the scope of his professional relationship with the Wiatts by providing advice concerning their financial investments with Starr.  For instance, the Complaint alleges that "in one instance in or around March 2010, Jim Wiatt had indicated to Bristol that he was dissatisfied with one of his investments that Starr had arranged with Starr's close friend and business associate Keith Barish.  In response, Bristol told Jim Wiatt that he would try to get his money back for him and to identify any other investments for which he wanted to have his money returned." (Compl., ¶ 55).  The Complaint also alleges that once the Wiatts became aware of the January 2010 transfer (in March 2010), they questioned Bristol about it (noting that the money had been transferred into his attorney trust account) and that Bristol informed James Wiatt (on or around May 12, 2010) that "the $1,000,000 was being 'bundled' for an investment at UBS." (Compl., ¶ 74).  The Complaint also alleges that Bristol made similar representations concerning the April transfer as a "bundling of investments" on May 15, 2010. (Compl., ¶ 89).

Based on such allegations, Plaintiffs have adequately alleged the existence of a fiduciary relationship between the Wiatts and Bristol which extended to matters concerning management of their Starr investments.   Plaintiffs have also alleged a breach of that trust by alleging, among other things, Bristol's representations concerning the January and April transfers as investments in UBS despite the fact that the Wiatts' funds had been transferred into his attorney trust account and that none of such funds were transferred by him to anyone at UBS in January 2010. (Compl., ¶¶ 63-66, 75, ).  See generally MacDonell, 150 N.J. at 563-65.  In light of the foregoing, the Court finds that Plaintiffs have adequately stated a claim for breach of fiduciary duty under New Jersey law.  See, e.g., MacDonell, 150 N.J. at 563 ("The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or  superior position.").   To the extent

Defendants, nevertheless, urge the Court to dismiss this claim as redundant of Plaintiffs' legal malpractice claim, the Court declines to do so on such a basis at this stage of the litigation. Defendants' motion to dismiss this claim is, therefore, denied.

### 4.   Negligent Supervision

Plaintiffs' Complaint alleges that: (1) Plaintiffs entered into an attorney-client relationship with Bristol, a capital partner at Winston & Strawn, in October 2009, (2) Winston had a duty to supervise and control its attorneys in the context of their representation of their clients, and (3) Winston negligently and carelessly failed to maintain such control. (Compl., ¶¶ 148-52).  In particular, Plaintiffs allege that Winston "negligently and carelessly failed to supervise one of its partners so as to permit Bristol to represent clients, i.e., the Wiatts and the Starr Defendants, with conflicting interests, to participate in a conspiracy to divert funds belonging to a firm client for the benefit of another client, to mislead the Wiatts about the true nature of the wire transfers, to mislead the Wiatts about the SEC investigation, and to misrepresent to the SEC that Plaintiffs knowingly waived any conflict of interest in Winston & Strawn's representation of them and the Starr Defendants, who were targets of the SEC investigation." (Compl., ¶ 153).

Defendant Winston & Strawn, the sole defendant against which this claim is asserted, moves to dismiss this claim on the basis that the Complaint fails to allege that Winston & Strawn knew or should have known about Bristol's propensity for the alleged tortious acts prior to the their occurrence. (Winston Br. at 35).  Plaintiffs, on the other hand,  maintain that, at this stage of the litigation, it is sufficient to allege that "the Wiatts have pled the existence of a relationship between Bristol and [Winston] and that but for [Winston's] lack of supervision of Bristol on matters so

important to attorney-client relationships . . . the Wiatts would not have been damaged." (Pl. Opp'n Br. at 58).  Plaintiffs cite to no legal authority for this proposition.

In order to state a common law negligent supervision claim as against Winston, Plaintiffs must allege that Bristol, as Winston's employee, committed an intentional tort, whether in or outside the scope of his employment, against one of Winston's customers (or a member of the public) and that Winston knew or should have known that Bristol "might engage in injurious conduct toward third persons." Di Cosala v. Kay, 91 N.J. 159, 173 (1982).  Having reviewed the allegations set forth in Plaintiffs' Complaint, the Court finds that Plaintiffs have failed to allege, with sufficient factual support, any plausible basis on which the Court can infer that Winston knew or had reason to know of Bristol's "unfitness, incompetence or dangerous attributes" and "could reasonably have foreseen that such qualities created a risk of harm to other persons." Di Cosala, 91 N.J. at 173.  Absent such factual content, Plaintiffs have failed to allege a plausible claim of negligent supervision as against Winston & Strawn. See, e.g., Delaney v. Am. Express Co., No. 06-5134, 2007 WL 1420766, at *6 (D.N.J. May 11, 2007) (dismissing negligent hiring, training and/or supervision claim where plaintiff failed to allege that "Defendants knew or should have known that these individuals were dangerous or incompetent.").  Winston's motion to dismiss this claim is therefore granted.  Plaintiffs' negligent supervision claim is dismissed without prejudice.

**4.     Legal Malpractice**

Plaintiffs' Complaint alleges that Bristol and Winston & Strawn agreed to represent James Wiatt, had an attorney-client relationship with him, and breached their duty to exercise reasonable care in the context of such representation by: (1) representing clients (i.e., Plaintiffs and the Starr

Defendants) with conflicting interests, (2) participating in a conspiracy to divert, misappropriate or misapply funds belonging to a firm client for the benefit of another client, (3) failing to safeguard funds belonging to a client, (4) misleading the Wiatts about the true nature of the wire transfers, (5) misleading the Wiatts about the SEC investigation, and (6) misrepresenting to the SEC that Plaintiffs knowingly waived any conflict of interest in Winston's representation of them and the Starr Defendants, in violation of New Jersey Rules of Professional Conduct 1.1, 1.3, 1.4, 1.7, 1.15 and 8.4. (Compl., ¶ 157).

"The requisite elements of a cause of action for legal malpractice are: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996) (quoting Lovett v. Estate of Lovett, 250 N.J. Super. 79, 87 (Ch. Div. 1991)).

Defendant Bristol moves to dismiss this claim on the basis that there was no attorney-client relationship between himself and the Wiatts with respect to the Starr Defendants' management of the Wiatts' financial affairs. (Bristol Br. at 16). Winston & Strawn moves to dismiss this claim on the basis that the Wiatts have failed to demonstrate the existence of an attorney-client relationship with Winston & Strawn. (Winston Br. at 30). Even assuming such an attorney-client relationship existed, both Defendants claim that Plaintiffs' legal practice claim would, in any event, fail based upon Plaintiffs' failure to properly allege necessary elements of the claim.

### A.     Existence of Attorney-Client Relationship

A formal retainer agreement is not necessary to establish an attorney-client relationship under New Jersey law. See, e.g., Herbert v. Haytaian, 292 N.J. Super. 426, 436 (App. Div. 1996) ("The creation of an attorney-client relationship does not rest on whether the client ultimately decides not

to retain the lawyer or whether the lawyer submits a bill. When, as here, the prospective client requests the lawyer to undertake the representation, the lawyer agrees to do so and preliminary conversations are held between the attorney and client regarding the case, then an attorney-client relationship is created."); United States v. Costanzo, 625 F.2d 465, 468 (3d Cir. 1980) ("The attorney-client relationship is not dependent on the payment of a fee nor upon execution of a formal contract.").

Bristol does not dispute that he had an attorney-client relationship with the Wiatts; rather, he merely disputes that the misconduct alleged (leading to their financial loss) fell within the scope of such relationship. As stated above, in connection with Plaintiffs' breach of fiduciary duty claim, although the allegations set forth in the Complaint suggest that Bristol was originally retained by the Wiatts in connection with discrete employment-related matters (Compl., ¶¶ 42, 45, 51, 52), the Complaint also alleges that, during the course of their attorney-client relationship, Bristol extended the scope of his professional relationship with the Wiatts by providing advice concerning their financial investments with Starr. See Compl., ¶¶ 55, 74. Whether or not Plaintiffs will ultimately prove as much remains to be seen. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As previously discussed, for purposes of this motion, the Court finds that Plaintiffs have alleged sufficient facts to nudge their claim – that the alleged misconduct by Bristol fell within the scope of their attorney-client relationship – "across the line from conceivable to plausible." Twombly, 550 U.S. at 547.

Winston & Strawn disputes the existence of any type of attorney-client relationship,

whatsoever, between itself and the Wiatts.  Based on the following reasons, the Court also finds that Plaintiffs have alleged sufficient facts – at the pleading stage – to suggest that Plaintiffs had an attorney-client relationship with the firm of Winston & Strawn.  For instance, the Complaint alleges that James Wiatt engaged the services of Bristol and Winston & Strawn by way of e-mail exchange with Bristol on Bristol's Winston & Strawn e-mail account to provide him with legal services and advice regarding his separation agreement with the William Morris Agency in October 2009.  (Compl., ¶ 45).  The Complaint further alleges that Bristol and Winston & Strawn continued to provide James Wiatt with legal services on a variety of matters through late May 2010.  (Compl., ¶¶ 46, 58).  During this time, it is alleged that Bristol communicated with Wiatt through his Winston e-mail account, in writing on Winston & Strawn letterhead and/or by telephone at his Winston & Strawn office.  (Compl., ¶ 47).   The Complaint also alleges that Bristol prepared at least two legal memoranda for Wiatt (both of which were written on Winston letterhead, designated as "Attorney-Client Privileged" and saved on Winston's network) relating to complex legal employment and corporate issues in or around January 2010.  (Compl., ¶ 52).  Based on the foregoing, the Court finds that Plaintiffs have alleged sufficient facts to nudge their claim – that they had an attorney-client relationship with the law firm of Winston & Strawn from October 2009 through May 2010 – "across the line from conceivable to plausible."  Twombly, 550 U.S. at 547; see also Herbert, 292 N.J. Super. at 436 (noting that a formal retainer agreement is not necessary to establish an attorney-client relationship under New Jersey law).

Again, however, the Court reiterates that it makes no findings as to whether or not the Wiatts, in fact, had an attorney-client relationship with Bristol or Winston & Strawn, or the scope of any such relationship(s).  See generally Scheuer, 416 U.S. at 236.  The Court simply finds that Plaintiffs

have alleged a theory (concerning the existence of such attorney-client relationships) that is plausible on its face. See generally Iqbal, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Defendants' motions to dismiss Plaintiffs' legal malpractice claim on this basis are, therefore, denied.

     **B.**    **Causation**

     Defendants also seek dismissal of this claim based on Plaintiffs' failure to properly allege proximate causation. Plaintiffs allege that Bristol and Winston & Strawn committed legal malpractice by, inter alia, simultaneously representing Plaintiffs and Starr and failing to give the Wiatts any explanation of what happened to Plaintiffs' funds that were diverted to Bristol's attorney trust account. (Compl., ¶ 158). Plaintiffs further allege that, as a direct and proximate result of such actions, the Wiatts were caused to be injured due to the diversion of their funds through said attorney trust account. (Compl., ¶ 160).

     In order to properly allege causation, for purposes of their legal malpractice claim, Plaintiffs must allege negligent conduct by Defendants which was "a substantial factor" contributing to their financial loss. Conklin, 145 N.J. at 419-420. Although New Jersey's "substantial factor test accounts for the fact that there can be any number of intervening causes between the initial wrongful act and the final injurious consequence and does not require an unsevered connecting link between the negligent conduct and the ultimate harm," having closely reviewed the allegations set forth in Plaintiffs' Complaint, the Court agrees that Plaintiffs have failed to allege sufficient facts linking the specific wrongful acts alleged with their ultimate injury. Conklin, 145 N.J. at 419-20.

     For instance, Plaintiffs allege that Bristol's decision to represent them as well as the Starr

Defendants presented a conflict of interest and that, as a result of such malpractice, "the Wiatts were caused to be injured due to the diversion of their funds . . . ." (Compl., ¶¶ 157, 160).  The Court is aware that Plaintiffs' claims are based on numerous facts and that repetition of such facts, in the context of each particular claim, would be time-consuming.  That being said, in order to properly state a claim, in a manner which complies with Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs must plead sufficient facts – as to each claim – which allow the court to draw the reasonable inference that the defendant is liable for each wrongful act alleged.  Plaintiffs have failed to plead sufficient facts to allow this Court to draw the reasonable inference that Bristol's decision to represent Plaintiffs and Starr, simultaneously, was a substantial factor that led to the diversion of their funds by Starr.  The other wrongful acts alleged (Compl., ¶ 157) also suffer from the same flaw – namely, failure to properly allege, with sufficient factual support, how each particular act by Bristol proximately caused their financial loss.  This is particularly important given that several of the wrongful acts alleged occurred after the January and April 2010 transfers took place.[8]  See Compl., ¶¶ 93, 100-105.  To the extent Plaintiffs wish to rely on a theory of causation which is comprised of facts scattered throughout Plaintiffs' Complaint, Plaintiffs must re-plead this claim in a manner which allows the Court, more readily, to draw the reasonable inference that Bristol's alleged acts of malpractice proximately caused their financial loss.  See generally Iqbal, 129 S.Ct. at 1949.

Defendants' motions to dismiss this claim are, therefore, granted.  Plaintiffs' legal

---

[8] Such alleged acts include: (1) misleading the Wiatts about the true nature of the wire transfers, (2) misleading the Wiatts about the SEC investigation, (3) misrepresenting to the SEC that Plaintiffs knowingly waived any conflict of interest in Winston's representation of them and the Starr Defendants, and (4) failing to give the Wiatts any explanation of what happened to Plaintiffs' funds that were diverted to Bristol's attorney trust account. (Compl., ¶¶ 157, 158).

malpractice claim is dismissed without prejudice.

### 5.    Unjust Enrichment

Plaintiffs' Complaint alleges that Bristol and Winston & Strawn have been unjustly enriched by virtue of their misappropriation of the Wiatts' $2 million (to which they had no legal or equitable rights).  Defendants move to dismiss this claim on the basis that Plaintiffs fail to allege that Bristol and/or Winston & Strawn retained any of the money withdrawn by Starr.

To state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519 (1994).  Based on the reasons that follow, the Court agrees that Plaintiffs' unjust enrichment claim, as currently pled, must be dismissed for two reasons.

First, Plaintiffs fail to allege that either Bristol or Winston & Strawn received a benefit by virtue of their misappropriation of the $2 million.  To the contrary, the Complaint alleges that the Starr Defendants executed the wire transfers and, "once received by Bristol into the Attorney Trust Account, the moneys stolen through the January Transfer and the April Transfer were then transferred from the attorney trust account and then further converted for the Starr Defendants' own use and purposes." (Compl., ¶¶ 63, 66, 82, 87).

Second, the conduct underlying Plaintiffs' unjust enrichment claim (Compl., ¶¶ 164, 165), as alleged in Count V of the Complaint, sounds in tort.  New Jersey does not recognize unjust

enrichment as an independent tort cause of action. <u>See</u> <u>Castro v. NYT Television</u>, 851 A.2d 88, 98 (App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion."); <u>Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.</u>, 171 F.3d 912, 936 (3d Cir. 1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)."). Plaintiffs have not alleged that they performed or otherwise conferred a benefit on Bristol or Winston & Strawn under a quasi-contractual relationship with the expectation of remuneration. Rather, Plaintiffs assert a variety of tort claims for which they clearly did not anticipate or expect remuneration.

Defendants' motions to dismiss this claim are granted. <u>See, e.g.</u>, <u>Nelson v. Xacta 3000 Inc.</u>, No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) (dismissing unjust enrichment claim after finding that "New Jersey law does not recognize unjust enrichment as an independent tort cause of action"); <u>Warma Witter Kreisler, Inc. v. Samsung Elecs.</u>, <u>Am., Inc.</u>, No. 08-5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (dismissing unjust enrichment claim and noting that "Plaintiff does not claim that it failed to receive the printer for which it conferred a benefit on the Defendant; rather, Plaintiff's theory of recovery is based on the assertion that it was misled by Samsung as to the fitness of the printer and that as a result of Samsung's tortious conduct, Plaintiff is allowed to recover damages. Such allegations sound in tort."); <u>Blystra v. Fiber Tech Group, Inc.</u>, 407 F. Supp. 2d 636, 644 n. 11 (D.N.J. 2005) (construing plaintiff's unjust enrichment claim "as subsumed by their other tort claims, and not as an independent cause of action" where it was based on a tort theory).   To the extent the pleading deficiencies in this claim can be cured by way of amendment, Plaintiffs' unjust

27

enrichment claim is dismissed without prejudice.

6.     **Conversion**

Plaintiffs allege that by virtue of the transfer of funds by the Starr Defendants into Bristol's attorney trust account, Bristol and/or Winston exercised an act of unauthorized dominion over Plaintiffs' monies in a manner which denied Plaintiffs' unequivocal right to such money. (Compl., ¶¶ 170-172). Plaintiffs' conversion claim appears to be asserted against Winston under a theory of vicarious liability.

Under New Jersey law, "the tort of conversion is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." Advanced Enter. Recycling, Inc. v. Bercaw, 376 N.J. Super. 153 (App. Div. 2005).[9] Generally, "[t]he elements of good faith, intent or negligence do not play a part in an action for damages in conversion." McGlynn v. Schultz, 90 N.J. Super. 505, 526 (Ch. Div. 1966) ("It does not matter that the conversion was for the benefit of the corporation and that the individual defendants did not personally benefit."). Bristol moves to dismiss this claim based upon Plaintiffs' failure to allege that Bristol exercised unauthorized control over their funds. In particular, Bristol maintains that because such funds were transferred by the Starr Defendants, who had signatory authority and power of attorney over the Wiatts' Management Account, and that Bristol merely "held those funds in his attorney trust account for the benefit of the Starr Defendants," he had no ownership interest or control over these funds. (Bristol Br. at 22). Defendant

---

[9] See generally  Mueller v. Tech. Devices Corp., 8 N.J. 201, 207 (1951) (describing the tort of conversion as "the exercise of any act of dominion in denial of another's title to the chattels, or inconsistent with such title.").

Winston & Strawn moves to dismiss this claim on the basis that it cannot be held vicariously liable for Bristol's alleged conversion because the Complaint fails to allege any factual allegations suggesting that Winston & Strawn authorized Bristol to maintain the attorney trust account at issue.

Although the Court has found, in the context of assessing other claims, that Plaintiffs must amend their Complaint to include facts to support the assertion that Bristol knew that Starr had used, intended to use, or did use Bristol's attorney trust account to make unauthorized transfers of Starr's client investment funds (including but not limited to the Wiatts' funds), the Court finds that Plaintiffs' factual allegations concerning the January and April transfers  suffice to state a claim of conversion under New Jersey law.  In particular, Plaintiffs allege that: (1) Plaintiffs owned the $2 million contained in a checking account at City National Bank in Beverly Hills, California (Compl., ¶¶ 26, 62), (2) such funds were transferred into an attorney trust account owned and maintained by Bristol at TD Bank in Chatham, New Jersey by way of two wire transfers in January and April 2010 (Compl., ¶¶ 61, 62), (3) the Wiatts did not authorize such transfers of their funds into Bristol's attorney trust account (Compl., ¶ 65), and (4) Plaintiffs, to date, have never recovered such funds (Compl., ¶ 92).  In light of the foregoing, the Court finds that Plaintiffs have stated a plausible claim of conversion as against Bristol. See, e.g., Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 210 F. Supp. 2d 552, 563 (D.N.J. 2002) ("BVHE's allegation that Video Pipeline assumed and exercised control and custody over physical copies of their trailers and converted them for its own benefit adequately states a claim for conversion.").  The issue of whether the transfer of such funds was, in fact, authorized by the Wiatts (by virtue of Starr's power of attorney) or whether Bristol ultimately exercised any dominion and/or control over such funds – even if ultimately relevant or dispositive – are not issues that are properly before the Court on a motion to dismiss.

Plaintiffs' conversion claim survives as against Bristol, by virtue of, among other things, the fact that Bristol owned the bank account to which the Wiatts' funds were transferred.   By contrast, because Plaintiffs' Complaint contains no facts in support of the notion that the attorney trust account maintained by Bristol (in Chatham, New Jersey) was associated in any way with the law firm of Winston & Strawn, Plaintiffs have failed to state a claim of conversion as against Winston & Strawn under the doctrine of respondeat superior.  See generally Carter, 175 N.J. at 408-09.

Bristol's motion to dismiss this claim is denied.  Winston's motion to dismiss this claim is granted.  Plaintiffs' conversion claim is dismissed, without prejudice, as to Winston & Strawn.

### 7.    Civil Conspiracy

Count VII of Plaintiffs' Complaint alleges that, "[i]n committing the wrongful acts alleged above, Defendants have pursued a common course of conduct, acted in concert with and have conspired, and agreed with one another in furtherance of their common plan, scheme and design to injure Plaintiffs, and have taken at least one act in furtherance thereof." (Compl., ¶ 175).

Under New Jersey law, civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993); see also Banco Popular N.A. v. Gandi, 184 N.J. 161, 177  (2005).  The "gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.' " Morgan, 268 N.J. Super. at 364 (quotations omitted).  Thus, civil conspiracy is a dependent claim which must be alleged alongside

30

a substantive claim. <u>See, e.g.</u>, <u>Eli Lilly and Co. v. Roussel Corp.</u>, 23 F.Supp. 2d 460, 497 (D.N.J. 1998).   Moreover, a plaintiff cannot state a claim for civil conspiracy by making "conclusory allegations of concerted action," without including allegations of fact regarding defendants' joint action. <u>Abbot v. Latshaw</u>, 164 F.3d 141, 148 (3d Cir.1998).

Bristol moves to dismiss the civil conspiracy claim on the basis that (1) dismissal of all underlying tort claims requires dismissal of Plaintiffs' civil conspiracy claim, and (2) Plaintiffs fail to allege sufficient facts to support the assertion that there was a corrupt agreement between Bristol and the Starr Defendants to steal the Plaintiffs' money.   Winston & Strawn also moves to dismiss the civil conspiracy claim on the basis that Plaintiffs have failed to plead the existence of any "agreement" between any of the parties from which the remaining conspiracy elements flow.

To satisfy the requirements of Rule 8(a), Plaintiffs' Complaint must allege "at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn." <u>Durham v. City and County of Erie</u>, 171 Fed. Appx 412, 415 (3d Cir. 2006).  This requirement is met "where the complaint sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible." <u>Lynn v. Christner</u>, 184 Fed. Appx. 180, 185 (3d Cir. 2006).   Having closely reviewed Plaintiffs' Complaint, the Court agrees that it fails to contain sufficient facts to support the theory that Defendants entered into an agreement to commit any of the unlawful acts alleged as against the Wiatts.

For instance, in opposing Defendants' motions, Plaintiffs make specific reference to paragraphs 175 and 188 of their Complaint.   Both paragraphs contain merely a recitation of the elements of their conspiracy-related claims without reference to any supporting facts which would allow the Court to draw the reasonable inference that Defendants engaged in the underlying unlawful

31

acts alleged by virtue of an agreement.  See generally Iqbal, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Absent such factual content, Plaintiffs have failed to state a claim for civil conspiracy.  See, e.g., Feliz v. Kintock Group, 297 Fed. Appx. 131, 136 (3d Cir. 2008) ("Feliz's civil conspiracy claim is also deficient because absent from his complaint are allegations of at least some facts which could permit a reasonable inference of a conspiracy to be drawn.").  Such claims are, therefore, dismissed without prejudice.  To the extent Plaintiffs wish to rely on facts scattered throughout their Complaint (or in documents attached to their Complaint) to cure the pleading deficiencies in this claim (or any of their claims), Plaintiffs are hereby directed to amend this claim in such a manner that will provide Defendants (and the Court) with adequate notice as to the specific facts upon which this claim is based.  Until such time, the Court finds it premature to consider Defendants' argument regarding the impropriety of Plaintiffs' reliance on pleadings (or other documents) from other criminal or civil actions to bolster the viability of the claims asserted in this matter.

**8.    Fraud**

Count VIII of Plaintiffs' Complaint alleges that Defendants "willfully and intentionally defrauded Plaintiffs and made or caused to be made false, fraudulent and material misrepresentations and omissions to Plaintiffs concerning wire transfers and investments." (Compl., ¶ 180). In particular, Plaintiffs allege that "[t]he January and April Wire Transfers were fraudulently obtained from Plaintiffs without their approval or knowledge.  In addition, these wire transfers were intentionally disguised as investments made on Plaintiffs' behalf." (Compl., ¶ 181).

In New Jersey, to state a claim for fraudulent misrepresentation or omission, a plaintiff must

establish: "(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." <u>Gennari v. Weichart Co. Realtors</u>, 148 N.J. 582, 610 (1997).

In addition, Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standards is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007); <u>see</u> <u>also</u> <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." <u>Frederico</u>, 507 F.3d at 200. Plaintiff must also allege who made the purported misrepresentations and what specific misrepresentations were made. <u>See, e.g.,</u> <u>Frederico v. Home Depot</u>, No. 05-5579, 2006 WL 624901, at *2 (D.N.J. March 10, 2006).

Both Bristol and Winston move to dismiss this claim on the basis that Plaintiffs have failed to allege, among other things, detrimental reliance. In particular, both Defendants claim because Bristol's alleged May 2010 statement(s) were made after Plaintiffs' alleged loss occurred (by virtue of the January and April transfers), Plaintiffs could not have taken any action or refrained from taking action to their detriment based upon Bristol's May 2010 statement(s). To the extent this claim is based upon Bristol's material omission in failing to disclose the January and/or April transfers, Defendants seek dismissal of this claim on the basis that Plaintiffs have failed to allege that Bristol

had a duty to disclose such information.

The Court finds that the deficiencies already addressed by the Court in connection with Plaintiffs' negligent misrepresentation claim also require dismissal of Plaintiffs' common law fraud claim. As previously stated:

> To the extent Plaintiffs wish to rely on the theory that Bristol failed to tell the Wiatts that Starr had used – or intended to use – Bristol's attorney trust account to make unauthorized transfers of Starr's client investment funds, Plaintiffs' Complaint currently fails to contain any <u>facts</u> to support the allegation that Bristol knew this information prior to April 2010.[10]  To the extent Plaintiffs wish, instead, to rely on the theory that had Bristol disclosed the "true nature of Starr's unauthorized transfers and [Winston's] role in facilitating those transfers," presumably during his May 12, 2010 conversation with James Wiatt, then "the Wiatts would have demanded the return of their funds <u>immediately</u>, and recovered those funds, as did Uma Thurman and Neil Simon" (Pl. Opp'n Br. at 47), such theory of causation is not sufficiently pled in Plaintiffs' Complaint.

Thus, at the very least, Plaintiffs have failed to allege, with sufficient factual support: (1) Bristol's knowledge of the January or April transfers, <u>or</u> of Starr's intent to use Bristol's attorney trust account in order to make such transfers, prior the date on which Plaintiffs' loss occurred, or (2) a theory of detrimental reliance that is otherwise plausible on its face. <u>See Gennari</u>, 148 N.J. at 610. Absent such factual content, Plaintiffs' allegations of fraud are insufficient to pass muster under Rule 8(a),

---

[10] Plaintiffs' conclusory allegation that "Bristol knew [that certain funds contained in his attorney trust account] belonged to defrauded clients of Starr" as early as March 17, 2010 (Compl., ¶ 39) is insufficient to meet the Rule 8(a) pleading standard. <u>See generally Iqbal</u>, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiffs have failed to plead sufficient <u>facts</u> in support of this statement that would allow this Court to draw the reasonable inference that Bristol possessed such knowledge. <u>See id.</u>  As discussed more fully below, to the extent Plaintiffs wish to rely on facts scattered throughout their Complaint (or in documents attached to their Complaint) to bolster the viability of this claim, Plaintiffs are hereby directed to amend this claim in such a manner that will provide Defendants (and the Court) with adequate notice as to the specific facts upon which this claim is based.

much less to meet Rule 9(b)'s heightened pleading standard. See generally Iqbal, 129 S.Ct. at 1949; Frederico, 507 F.3d at 200.  Plaintiffs' common law fraud claim is, therefore, dismissed without prejudice.

### 9.    Conspiracy to Defraud

Count IX alleges that "[e]ach of Defendants willfully and knowingly agreed and conspired with other Defendants to commit the above referenced acts of fraud, including wire fraud and money laundering, for an unlawful purpose." (Compl., ¶ 188).

Thus, Plaintiffs' conspiracy to defraud claim is premised on the same allegations underlying their civil conspiracy and common law fraud claims. Having found such claims to be deficient, the Court will likewise dismiss Plaintiffs' conspiracy to defraud claim without prejudice for the reasons set forth above.

### 10.    RICO Claims

Count X of Plaintiffs' Complaint alleges, in pertinent part, that Defendants Bristol and Winston & Strawn "conducted and participated in the conduct of the affairs of the Starr Enterprise and played a role in the management and operation of the enterprise through a pattern of racketeering, which included, but was not limited to, wire fraud [18 U.S.C. § 1343], money laundering [18 U.S.C. § 1956(a)(1)] and investment adviser fraud." (Compl., ¶ 197).  The Complaint further alleges that the "foregoing predicate acts of racketeering activity conducted by Defendants through the Starr Enterprise caused Plaintiffs to lose money and business opportunities [in violation of 18 U.S.C. § 1962(c)]." (Compl., ¶ 199).  The Complaint further alleges that the members of the

Starr Enterprise were "illicitly enriched through the receipt of funds transferred from Plaintiffs' account." (Id.).  Count XI of Plaintiffs' Complaint alleges, in pertinent part, that [t]hrough a series of activities outlined above in Count VIII [fraud claim], Defendants conspired to violate 18 U.S.C. § 1962(d)." (Compl., ¶ 203).  The Court will address each RICO claim, in turn.

### A.  RICO Claim – 18 U.S.C. § 1962(c)

18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  To state a claim for a violation of § 1962(c), Plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Morales v. Superior Living Prods, LLC, 398 Fed. Appx. 812, 814 (2010) (citing Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004)).  In order to properly plead an association-in-fact enterprise, Plaintiffs must "must plead facts plausibly implying the existence of an enterprise with the following structural attributes: "a shared "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." In re Insurance Brokerage Antitrust Litig., 618 F.3d 300, 370 (3d Cir. 2010) (citing Boyle v. United States, 129 S.Ct. 2237, 2244 (2007)).  Moreover, because Plaintiffs present a fraud-based RICO claim, they must plead with particularity the circumstances of the alleged fraud. Lum, 361 F.3d at 224.  Plaintiffs may meet this requirement by pleading the "date, place or time" or by "injecting precision and some measure of substantiation into their allegations." Id.

Thus, as a threshold matter, to state a claim for a violation of § 1962(c), Plaintiffs must allege, with particularity, the specific conduct upon which Defendants' liability is based.  The

36

Supreme Court has held that the "conduct or participate" element requires a defendant to "have some part in directing those affairs." <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 179 (1993); <u>see</u> <u>also</u> <u>In re Insurance Brokerage Antitrust Litig.</u>, 618 F.3d 300, 371 (3d Cir. 2010).  This is because "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." <u>Reves</u>, 507 U.S. at 183.  As best gleaned by the Court, Plaintiffs seek to impose RICO liability on Bristol by virtue of: (1) Bristol's facilitation of the theft of the Wiatts money by virtue of the January and April transfers, (2) Bristol's failure to disclose to the Wiatts the existence of the January and April wire transfers, and (3) Bristol's misrepresentation concerning the true nature of the January and April wire transfers when questioned by James Wiatt.

As previously held in the context of assessing other claims, Plaintiffs' Complaint currently fails to contain any <u>facts</u> to support the allegation that Bristol had any knowledge of Starr's misdeeds or of the true nature of the January and April transfers prior to May 12, 2010.  (Compl., ¶ 74). Plaintiffs' conclusory allegation that "Bristol knew [that certain funds contained in his attorney trust account] belonged to defrauded clients of Starr" as early as March 17, 2010 (Compl., ¶ 39) is insufficient to meet the Rule 8(a) pleading standard; certainly this conclusory allegation does not meet the heightened pleading requirement of Rule 9(b).  Thus, Plaintiffs' Complaint, as currently drafted, fails to set forth a plausible basis on which the Court can infer that Bristol facilitated, participated in, or even had knowledge of, the January and/or April transfers before those transfers took place.  Plaintiffs' second and third theories of RICO liability (Bristol's failure to disclose the January and April wire transfers and/or his misrepresentation concerning the true nature of such transfers)  fail for the same reason – namely, the Complaint, as currently drafted, fails to contain sufficient facts to suggest that Bristol possessed the requisite knowledge and was thus in a position

37

to disclose the true nature of the transfers prior to the date on which the alleged predicate acts (of wire fraud, money laundering and/or investment advisor fraud) occurred.  Because Plaintiffs have failed to allege – with sufficient factual support – that Bristol engaged (or participated) in any conduct in furtherance of the Starr Enterprise prior to the date on which the alleged predicate acts occurred (or was even in a position to do so), Plaintiffs have failed to state claim for violation of 18 U.S.C. § 1962(c) as against Bristol that is plausible on its face. See generally Iqbal, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

To the extent Winston's RICO liability is premised on the acts of Bristol, such claim fails for the same reasons.[11]  To the extent Plaintiffs' § 1962(c) claim as against Winston is, instead, premised upon a payment made by Bristol to Winston in March 2010 for services purportedly rendered by Bristol on behalf of Starr (Compl., ¶¶ 38, 39), the Complaint fails to contain any facts to suggest that Winston, Bristol, or anyone else at Winston had any knowledge that such funds belonged to the Wiatts or to other defrauded Starr clients.  Certainly, the Complaint fails to allege, with the requisite particularity, the circumstances under which Winston – independent of Bristol – engaged in the alleged fraud-based predicate acts (or otherwise participated in the operation or management of the Starr Enterprise). See Lum, 361 F.3d at 224 ("Plaintiffs may meet this requirement by pleading the 'date, place or time' or by 'injecting precision and some measure of

---

[11] In so holding, the Court makes no specific findings at this time as to whether Winston can even be held liable under RICO solely under a theory of vicarious liability. See, e.g., Makowski v. United Broth. of Carpenters and Joiners of Am., 2010 WL 3026510, at * 6 (S.D.N.Y. Aug. 2, 2010) ("There is more than one approach to vicarious liability under RICO, but '[c]ourts within the Second Circuit generally do not impose vicarious liability under RICO unless the corporate [or union] defendant is a "central figure" in the RICO scheme.' ").

substantiation into their allegations.' "").  Thus, Plaintiffs' Complaint, as currently drafted, fails to allege a theory of liability as against Winston under § 1962(c) that is plausible on its face. See Reves, 507 U.S. at 183 ("[O]ne is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself.").

Defendants' motions to dismiss this claim are granted.  Plaintiffs' § 1962(c) claims, as against Bristol and/or Winston & Strawn, are hereby dismissed without prejudice.

### B.     RICO Conspiracy Claim – 18 U.S.C. § 1962(d)

18 U.S.C. § 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Having found that Plaintiffs have failed to state a claim under § 1962(c), Plaintiffs cannot maintain a claim under § 1962(d).  See, e.g., Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").  Defendants' motions to dismiss this claim are granted.  Plaintiffs' § 1962(d) claims, as against Bristol and/or Winston, are hereby dismissed without prejudice.

### 11.    Tortious Interference Claims

Plaintiffs' Complaint alleges two counts of tortious interference: (1) a claim of tortious interference with contractual relations (as against all Defendants), and (2) a claim of tortious interference with prospective business advantage (as against all Defendants).  Plaintiffs allege, generally, that (1) they had an agreement and/or a prospective business relationship with an investment advisor at UBS for an investment of $2,000,000, (2) Defendants knew that Plaintiffs

intended to make this particular investment, (3) Defendants intentionally interfered by failing to make the payment on behalf of Plaintiffs and instead wiring $1,000,000 to Bristol's attorney trust account, and (4) Plaintiffs have been damaged by the loss of this contract and/or business relationship and its future revenue.  (Compl., ¶ 207-220).

Defendant Winston urges the Court to apply New York law to these claims because, among other things, it believes that a conflict of law exists between New York and New Jersey law. See generally Camp Jaycee, 962 A.2d at 455.

### A.     Choice of Law

To prevail on a claim for tortious interference with contractual (or prospective business) relations under New Jersey law, a plaintiff must establish: "(1) the existence of the contract (or the prospective economic relationship); (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages." Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 49 (App. Div. 1997).  "[T]he difference between tortious interference with prospective contractual relations and tortious interference with performance of a contract is simply the existence of a contract, as opposed to plaintiff's reasonable expectation of an agreement." Coast Cities Truck Sales Inc. v. Navistar Intern. Transp. Co., 912 F.Supp. 747, 772 (D.N.J. 1995).

To prevail on a claim for tortious interference with contractual relations under New York law, a plaintiff must establish: "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages." Foster v. Churchill, 87 N.Y.2d 744, 750 (1996).  To state a claim for tortious interference with a prospective business advantage under New York law, a plaintiff must allege: "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant,

knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 108-109 (2d Cir. 1997).

As a preliminary matter, the Court notes that: (1) Defendant Bristol does not expressly argue that a conflict of law exists, (2) Plaintiffs maintain that no such conflict exists, and (3) several courts within this district have held that "New Jersey and New York law on tortious interference with an existing contract are in accord." Marks v. Struble, 347 F. Supp. 2d 136, 142 (D.N.J. 2004); Rainbow Apparel, Inc. v. KCC Trading, Inc., No. 09-5319, 2010 WL 2179146, at *8 (D.N.J. May 26, 2010). Winston does not expressly dispute that the basic elements of tortious interference claims are the same under both states' laws. Winston nevertheless urges the Court to find that an actual conflict of law exists based upon the claim that: (1) New York law requires tortious interference that caused the third party, not the plaintiff, to commit breach, and (2) New York law requires tortious interference with prospective business relations to have been directed at the third party, not the plaintiff. Having carefully considered Winston's argument in this regard – which has been relegated to a mere two sentences in a footnote – the Court finds that Winston has failed to meet its burden, at this juncture, of showing that the foregoing two factors are required under New York law, thereby demonstrating that a true conflict of law exists.

Because the Court finds that Plaintiffs' tortious interference claims are deficient, as currently pled, under either states' laws, the Court need not determine conclusively whether New Jersey or New York law will apply to Plaintiffs' tortious interference claims. To the extent Defendants believe that New York law should apply based upon the existence of a true conflict of law, Defendants are

hereby directed to more thoroughly argue this point in any future motion practice.

   **B.     Analysis**

   Defendant Bristol moves to dismiss the contract-based claim on the basis that Plaintiffs fail to allege the existence of a contract between themselves and UBS.  Recognizing that the Complaint does allege  that Plaintiffs "had an agreement with an investment advisor at UBS for an investment of $2,000,000" (Compl., ¶ 208), Bristol nevertheless maintains that the Complaint fails to contain any facts to support the existence of any such enforceable contract.  Secondly, Bristol maintains that even if there was a valid agreement between Plaintiffs and UBS, the Complaint fails to allege any facts showing that Bristol had knowledge of such contract or that he intentionally induced a breach thereof through wrongful means.

   Bristol moves to dismiss the prospective relations claim on the basis that Plaintiffs fail to allege that Bristol had any knowledge of Plaintiffs' relationship with UBS or that he knowingly interfered with said relationship.  Winston moves to dismiss both claims on the same basis.  Having carefully reviewed the allegations set forth in Plaintiffs' Complaint, the Court agrees that Plaintiffs have failed to allege a claim of tortious interference that is plausible on its face.  For instance, although Plaintiffs allege that "Defendants knew that Plaintiffs intended to make this particular investment with UBS and had in fact provided Plaintiffs a letter to sign dated April 26, 2010 that authorized the payment" (Compl., ¶ 209), Plaintiffs go on to allege that Defendants Bristol and/or Winston intentionally interfered with such agreement and/or prospective business relationship by "failing to make the payment and instead wiring $1,000,000 to Bristol's attorney trust account." (Compl., ¶¶ 211, 217).  Plaintiffs also concede that the $1,000,000 transferred from their account on April 26, 2010 was, in fact, sent by Defendants to UBS.  (Compl., ¶¶ 82-84).  Thus, although not

42

clearly specified in the language of the actual claims, Plaintiffs' tortious interference claims appear to be based upon the monies transferred from their account in January 2010.  Plaintiffs' Complaint fails to allege any facts suggesting that Defendants Winston and/or Bristol knew of any contract or prospective business relationship between Plaintiffs and UBS prior to the January 2010 transfer. To the contrary, as best gleaned by the Court, the first factual allegation which could arguably be construed as suggesting that Defendants Bristol and/or Winston had any knowledge of Plaintiffs' UBS investment occurred in or around March 2010 – two months _after_ the alleged "interference" had taken place. (Compl., ¶¶ 69, 70).  Because Plaintiffs' Complaint fails to allege any facts suggesting that Defendants even knew of Plaintiffs' UBS investment prior to the date on which the alleged interference took place, Plaintiffs have likewise failed to allege that Defendants acted with the requisite intent to interfere.  See generally Velop, 301 N.J. Super. at  49; Foster, 87 N.Y.2d at 750; Goldhirsh, 107 F.3d at 108-109. Thus, Plaintiffs have failed to allege a claim for tortious interference (with a contractual or prospective business relationship) that is plausible on its face. See generally Iqbal, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Plaintiffs' tortious interference claims are therefore dismissed without prejudice.

**12.     Accounting**

Count XIV of Plaintiffs' Complaint seeks an accounting of Defendants' personal accounts, business accounts, and trust accounts so that Plaintiffs may "discover the whereabouts of Plaintiffs' funds." (Compl., ¶ 224).  "An accounting in equity cannot be demanded as a matter of right or of

course. The exercise of the equitable jurisdiction to compel an account rests upon three grounds –

first, the existence of a fiduciary of trust relation; second, the complicated nature of character of the

account; and third, the need of discovery." Borough of Kenilworth v. Graceland Memorial Park

Ass'n, 124 N.J. Eq. 35, 37 (N.J. Ch. Ct.1938).  This claim for relief is therefore premised upon the

existence of a fiduciary relationship between Plaintiffs and Defendants. (Compl., ¶ 222).

  Defendants Bristol and Winston & Strawn both move to dismiss this claim on the basis that

no such fiduciary relationship  – encompassing the Wiatts' personal finances – existed during the

relevant time period.   The Court has already found, however, in the context of assessing Plaintiffs'

breach of fiduciary duty claim, that Plaintiffs have sufficiently alleged: (1) the existence of a

fiduciary relationship between Bristol and the Wiatts (which extended to matters concerning

management of their Starr investments), and (2) that Winston may be found vicariously liable for

any breach of fiduciary duty by Bristol (who was allegedly acting within the scope of his

employment as partner at the law firm of Winston & Strawn when advising the Wiatts as to legal

matters involving employment-related issues, corporate issues and certain financial matters).  In light

of the foregoing, the Court declines to dismiss Plaintiffs' claim for accounting on the basis that

Plaintiffs have failed to allege a fiduciary relationship with Defendants encompassing their personal

finances.  Defendants' motions to dismiss this claim are therefore denied.

## <u>CONCLUSION</u>

Based on the reasons set forth above, Defendants' motions to dismiss Plaintiffs' Complaint are granted in part and denied in part.  Plaintiffs are granted leave to file an amended complaint which cures the pleading deficiencies discussed above **on or before August 22, 2011.**  Plaintiffs' failure to do so may result in dismissal of the claims at issue <u>with</u> prejudice.

An appropriate Order accompanies this Opinion.


                                             /s/ Jose L. Linares_____
Date:   June 24, 2011                    JOSE L. LINARES,
                                             UNITED STATES DISTRICT JUDGE

45