**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES A. WIATT and ELIZABETH RIEGER WIATT,<br><br>    Plaintiffs,<br><br>v.<br><br>WINSTON & STRAWN LLP, et al.,<br><br>    Defendants. | Civil Action No.: 10-6608 (JLL)<br><br><br>**OPINION** |

This matter arises out of allegations made by Plaintiffs James A. Wiatt and Elizabeth Rieger Wiatt ("Plaintiffs" or "the Wiatts") that their former financial advisor, Kenneth Starr, and attorney, Jonathon Bristol ("Bristol"), a Capital Partner at Winston & Strawn, LLP, conspired to steal $2 million of Plaintiffs' funds by unlawfully transferring such funds through Bristol's Attorney Trust Account. Defendant Winston & Strawn, LLP ("Defendant" or "Winston & Strawn") has filed a Motion to Dismiss twelve claims in Plaintiffs' Amended Complaint as against it for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [Docket Entry No. 94]. The Court has considered the submissions of the Parties in support of and in opposition to the instant motion, and decides the motion on the papers pursuant to Fed. R. Civ. P. 78. For the reasons stated herein, Defendant's Motion is granted in part and denied in part. Plaintiffs are granted leave to file a Second Amended Complaint, within sixty (60) days, which cures the pleading deficiencies discussed in this Opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff James Wiatt, a California resident, is a former executive of a talent agency and is now a consultant for a leading global web services company. (Am. Compl., ¶¶ 19, 33). Plaintiff Elizabeth Wiatt, also a California resident, is a businesswoman and entrepreneur. (Id., ¶¶ 20, 34). Defendant Winston & Strawn is a multi-national law firm with offices in New Jersey, New York, and around the globe, and is an Illinois limited liability partnership. (Id., ¶ 3). From 2008 to around May 2010, Defendant Bristol, also a named defendant in this matter, was a Capital Partner at Winston & Strawn whose clients included Kenneth Starr and various Starr entities, including Starr & Company, LLC and Starr Investment Advisors, LLC. Defendants Starr, the named Starr entities and Arlene Graff, a Starr & Co. principal (the "Starr Defendants"), are alleged by Plaintiffs to have "knowingly conspired to use, and did use, Bristol's Attorney Trust Account to steal and launder the Wiatts' money." (Id., ¶ 14).

### The Starr Defendants

The Starr Defendants have not joined in Defendant Winston & Strawn's current Motion to Dismiss. However, facts alleged regarding the Starr Defendants' conduct towards Plaintiffs is relevant for the instant motion as Plaintiffs' Amended Complaint turns on a pattern of activity and a conspiracy linking the Starr Defendants' illegal activity with the law firm of Winston & Strawn through its Capital Partner, Jonathon Bristol. Plaintiffs had engaged the services of the Starr Defendants from August 2003 until late May 2010, for the purpose of managing their personal finances and providing financial advice as well as to assist in selecting and utilizing other professionals such as bankers, realtors and lawyers. (Id., ¶¶ 2, 21-25, 35). The Starr Defendants specifically provided the Wiatts with the following services: accounting, business management, investment management, investment advice, financial consulting, financial

planning, and tax advice. (Id., ¶ 35). For these services, Plaintiffs paid the Starr Defendants a substantial professional service fee on a monthly basis. (Id., ¶ 36). Officials of the Starr Entities had signatory authority over the Wiatts' bank and/or investment accounts as well as trusts and corporate entities that the Wiatts controlled. (Id., ¶ 37).

The Winston & Strawn Defendants

Prior to becoming a partner at Winston & Strawn, Defendant Bristol provided legal representation to Starr and his companies since at least 2007, at which time he served as a partner at the law firm of Thelen, LLP. (Id., ¶ 43). In or about November 2008, Bristol accepted an offer to become a Capital Partner at Winston & Strawn, and he brought with him the Starr clients, whom he represented on general corporate matters; in connection with Starr's multimillion dollar dispute with Neil Simon concerning Simon's claim that Starr had improperly invested his money; and in connection with an SEC investigation into Starr's investment practices in July 2009. (Id., ¶¶ 44, 46, 48, 50). For this work representing his Starr clients, Bristol generated over $1 million in legal fees for Winston & Strawn in 2009 alone. (Id., ¶ 51). Bristol also utilized his Attorney Trust Account to make two $100,000 payments to Winston & Strawn for services Bristol purportedly rendered on behalf of Starr. (Id., ¶¶ 111, 115). Plaintiffs' Amended Complaint alleges that Bristol was aware that such funds transferred to Winston & Strawn through his Attorney Trust Account belonged to defrauded clients of Starr. (Id.).

In October 2009, Starr referred Plaintiff Jim Wiatt to Bristol as a good friend and partner at Winston & Strawn after Wiatt requested legal advice in connection with his business and investment activities. (Id., ¶ 52). On October 29, 2009, Plaintiff Jim Wiatt engaged Bristol and Winston & Strawn to provide him with general legal representation in connection with his

"business and investment interests, including specifically his service on the board of directors for public and private companies." (Id., ¶ 54). Wiatt and Bristol confirmed the engagement by phone and e-mail, and Bristol used his Winston & Strawn office and e-mail account for those communications. (Id.). From the time of his engagement by Plaintiffs until May 2010, Bristol provided the Wiatts with the following legal services: (1) legal advice to Jim Wiatt relating to his separation agreement from his former employer, William Morris Agency; (2) monitoring and advising the Wiatts with respect to their investment activities, including his investments with Starr; (3) legal advice to Jim Wiatt relating to an indemnification agreement with OneCast, Inc.; (4) legal advice to Jim Wiatt relating to his responsibilities as a potential board member for public and private companies; and (5) legal advice to Jim Wiatt relating to potential consulting agreements. (Id., ¶ 56). Bristol also served as Jim Wiatt's attorney in his communications and interview with the SEC during the SEC's investigations into Starr and his companies. (Id., ¶¶ 83-92).

Plaintiffs' Amended Complaint alleges specific facts in a month-by-month overview of the services Bristol provided them from November 2009 until May 2010. (Id., ¶¶ 61-93). In November 2009, Bristol actively monitored the Wiatts' business and investment activities and advised them in connection with those activities. (Id., ¶ 61). On November 3, 2009, Bristol reached out to Graff about the Wiatts' investment activities and requested an investment summary, which Graff sent to him. (Id., ¶ 62). Also on that date, at Jim Wiatt's request, Bristol reviewed an offer letter for a consulting agreement, and advised Jim Wiatt on issues relating to the value of his stock option rights and exposure to liability. (Id., ¶ 64). In December 2009, Bristol reviewed documents and provided Plaintiff Jim Wiatt with legal advice in connection with a Google/YouTube Inbound Services Agreement, giving Wiatt additional advice on a

proposed consulting agreement and potential stock warrants that Wiatt would receive under that agreement.  (Id., ¶¶ 65, 66).

In January 2010, Bristol continued to provide legal advice, including: (1) advice and analysis on Wiatt's separation and release agreement; (2) advice relating to a potential consulting agreement with a private company, including the potential for an investment stake in the company, copying Starr on at least one e-mail; and (3) advice on a potential deal with OneCast, Inc., including advice relating to a stock option agreement, shareholder rights, and an indemnification agreement.  (Id., ¶¶ 68-73).  Bristol also prepared at least two legal memoranda for Jim Wiatt on said separation agreement written on Winston & Strawn letterhead, designated as "Attorney-Client Privileged" materials, and saved on Winston & Strawn's network with the firm's DocsOpen software.  (Id., ¶¶ 69-70).

In February 2010, Bristol continued to provide legal advice to the Wiatts in connection with general corporate and investment matters, as well as in connection with the OneCast agreement and other potential consulting agreements.  (Id., ¶ 75).  On February 2, 2010, Bristol proposed filings with the State of California for Wiatt's limited liability company.  (Id., ¶ 76).  Bristol also revised a proposed indemnification agreement between Jim Wiatt and OneCast, saving numerous drafts on Winston & Strawn's network, and sending those revisions to Wiatt and Starr.  (Id., ¶ 77).  The OneCast agreement identified Bristol as a party to be copied on any notice or communication with Jim Wiatt related to the agreement, and listed his contact information at Winston & Strawn, including his office address, e-mail and phone number.  (Id., ¶ 78).

In March 2010, aside from general legal advice to the Wiatts on Jim Wiatt's employment agreements and limited liability filing, Bristol provided the Wiatts with legal advice and services

relating to the Wiatts' investment activities with Starr. (Id., ¶¶ 80-81). Specifically, Jim Wiatt notified Bristol that he was dissatisfied with one of his investments that Starr had arranged, and Bristol told him that he would try to get his money back from Starr, asking specifically which of Wiatt's investments he wished to recover. (Id., ¶ 81).

  In May 2010, prior to Starr's arrest on May 27, 2010, Bristol continued to provide legal advice and services to the Wiatts. (Id., ¶ 82). It was at this time that Jim Wiatt was notified through General Counsel for a company he was connected with that the SEC had requested to speak with Wiatt's attorney. (Id., ¶ 83). After Jim Wiatt expressed his concern to Bristol and Starr, Bristol and Starr both notified him that he had nothing to worry about, and that the SEC investigation was routine in light of Madoff scandal. (Id., ¶¶ 84-87). Bristol then advised Wiatt that his law firm, Winston & Strawn, was representing the Starr entities with respect to other matters, and that Wiatt would need to waive any potential conflicts that might exist in order to be represented by Bristol in discussions with the SEC. (Id., ¶ 88). On May 17, 2010, Bristol left his contact details at Winston & Strawn with the SEC, and the SEC responded by e-mail to Bristol at his Winston & Strawn e-mail address asking to arrange a meeting with Wiatts' attorneys. (Id., ¶ 89). Bristol scheduled a phone interview with the SEC for May 28, 2010, between Jim Wiatt, Bristol, and the SEC to discuss Starr and Bristol's unauthorized wire transfers, but after the Federal Government arrested Starr on May 27, 2010, the interview did not occur as scheduled. (Id., ¶¶ 91, 93). However, throughout that same week, Bristol continued to provide Wiatt with legal advice in connection with Wiatt's employment agreements and prepared Wiatt for the SEC interview. (Id., ¶ 92).

## The Alleged Theft of Funds

The Amended Complaint alleges that from July 2009 to May 2010, Bristol "knowingly used his Attorney Trust Account to help Starr steal and launder nearly $20 million, including $2 million from the Wiatts." (Id., ¶ 94). The theft allegedly occurred through two transfers made from Starr through Bristol's Attorney Trust Account when: (1) Graff executed a wire transfer of $1 million from the Wiatts' Management Account to Bristol's Attorney Trust Account on or about January 4, 2010 (hereinafter the "January Transfer"); and (2) Starr executed a wire transfer of $1 million from the Wiatts' Management Account to Bristol's Attorney Trust Account on or about April 26, 2010 (hereinafter the "April Transfer"). (Id., ¶¶ 107, 117). Once received by Bristol, the funds were immediately wired back out of the Attorney Trust Account and into Starr & Co. and/or to clients of Starr, Uma Thurman and Paul Simon. (Id., ¶¶ 107, 109, 121).

The Wiatts first discovered the unauthorized January Transfer on or about March 10, 2010, when they noticed that their financial report described a $1 million wire transfer from their Managed Account as a "check" sent to Jonathan Bristol and as an "investment" in "UBS." (Id., ¶ 140). When Plaintiffs questioned Graff, Starr and Bristol about this transfer, they were informed that such fund had been "bundled" as an investment in UBS. (Id., ¶¶ 139-141). Such representations were allegedly false inasmuch as Plaintiffs claim that none of the Wiatts' funds had been transferred to anyone at UBS in January 2010. (Id., ¶ 142).

On April 26, 2010, Starr executed a second wire transfer of $1,000,000 from the Wiatts' Management Account, and on the same date, Jim Wiatt signed a letter authorizing the transfer of $2 million of his funds to UBS. (Id., ¶¶ 145, 147). Jim Wiatt was informed by UBS that only $1 million of the expected $2 million was received by UBS, and when Wiatt confronted Starr about this, Starr stated that he was spreading out the $2 million wire transfer into two separate

transactions. (Id., ¶ 148). However, the Amended Complaint alleges that Bristol knew that the $1 million he transferred did not go to UBS but to Uma Thurman, and that he further knew that the funds came from the Wiatts because the account statement for his Attorney Trust Account listed a transaction describing "WIRE TRANSFER INCOMING JAMES A OR ELIZABETH RIEGER WIATT," for the amount of $1 million, on April 26, 2010, and a transaction described as "WIRE TRANSFER OUTGOING Uma Thurman," for the amount of $1 million, on that same day. (Id., ¶ 121).

<u>Starr's Arrest and Guilty Plea</u>

On May 27, 2010, the FBI arrested Starr, and on June 10, 2010, the Federal Government unsealed his Indictment which charged him with two types of schemes to defraud his clients: (1) in circumstances where Starr exercised direct control over his clients' finances, Starr made unauthorized transfers of funds to himself, his family, his business and/or business associates without disclosing them to his clients; and (2) Starr defrauded his clients by misleadingly inducing them to invest in risky, illiquid businesses and ventures in which he, his wife, or his business associates often held undisclosed material financial interests. (Id., ¶¶ 95, 130). On September 10, 2010, Starr pled guilty to wire fraud, money laundering and investment advisory fraud, including specifically wire fraud in connection with the unauthorized January Transfer of the Wiatts' money, and money laundering in connection with, <u>inter alia</u>, the unauthorized January and April Transfers of the Wiatts' money. (Id., ¶ 96).

<u>Bristol's Termination, Indictment and Guilty Plea</u>

On December 14, 2010, U.S. Attorney Preet Bharara and the IRS unsealed an Indictment against Bristol charging him with money laundering in connection with Starr's fraud. (Id., ¶ 97). On December 16, 2010, the SEC amended its complaint against Starr to allege claims against

Bristol for aiding and abetting Starr's securities violations. (Id.). The Indictment alleges that Bristol, while working at Winston & Strawn, helped Starr defraud clients and concealed Starr's criminal activities by using his Attorney Trust Account to launder the funds stolen by Starr. (Id., ¶ 97). The Amended Complaint alleges that Bristol agreed to this scheme in part for the purpose of building his business in order to maintain his position as a Capital Partner of Winston & Strawn. (Id.). On or about April 20, 2011, Bristol entered a criminal plea agreement in which he admitted to conspiring to launder funds for Starr using his Attorney Trust Account, including specifically with respect to the unauthorized April Transfer of the Wiatts' money. (Id., ¶ 99).

The Amended Complaint also alleges that Winston & Strawn entered into a Consent Seizure Order on or about June 10, 2010, whereby Winston & Strawn agreed to surrender $200,000 to the United States, based on Winston & Strawn's receipt of said funds traceable to Starr's criminal offenses: (1) "on or about January 20, 2010, $100,000 . . . debited from the Attorney Account for an official check in the same amount payable to the order of Winston & Strawn, LLP"; and (2) "on or about March 17, 2010, $100,000 . . . debited from the Attorney Account for an official check in the same amount payable to the order of Winston & Strawn, LLP." (Id., ¶ 101).

### Plaintiffs' Claims Against Winston & Strawn

In light of the foregoing, Plaintiffs filed their Complaint in this matter on December 20, 2010, alleging thirteen theft- and legal malpractice-based claims against Defendant Winston & Strawn. On March 4 and 7, 2011, Defendants Bristol and Winston & Strawn filed respective motions to dismiss Plaintiffs' claims as against them [Docket Entry Nos. 29, 30], and on June 27, 2011, this Court issued its Opinion granting said motions in part and denying them in part [Docket Entry No. 68]. Specifically, the Court denied Defendants' motions to dismiss Plaintiffs'

9

breach of fiduciary duty and accounting claims, but granted without prejudice Defendants' motions to dismiss Plaintiffs claims alleging: negligent misrepresentation; negligent supervision; legal malpractice; unjust enrichment; conversion; civil conspiracy; fraud; conspiracy to defraud; RICO; and tortious interference with contractual relations and prospective business advantage. Plaintiffs filed an Amended Complaint on August 22, 2011, removing their unjust enrichment and tortious interference claims, but adding a claim for aiding and abetting a breach of fiduciary duty against Bristol and Winston & Strawn. [Docket Entry No. 82]. On September 28, 2011, Defendant Winston & Strawn filed the instant motion, requesting the Court to dismiss all of Plaintiffs' claims as against them except for the breach of fiduciary duty claim. [Docket Entry No. 94].

## II.  LEGAL STANDARD

In reviewing motions to dismiss, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1995, 1965 (2007).  "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  A complaint survives a Rule 12(b)(6) motion to dismiss if it states a claim to relief that is "plausible on its face" regarding plaintiff's entitlement to the relief sought. Twombly, 127 S.Ct. at 1965-66.  A complaint may be dismissed for failure to state a claim upon which relief can be granted if the court finds "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

The burden of proof for showing that no claim has been stated is on the moving party. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)(citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  During a Court's threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002).  In general, the Federal Rules of Civil Procedure should be construed liberally so as to encourage ruling on the merits instead of technicalities: "This liberality is expressed throughout the Federal Rules of Civil Procedure and is enshrined in a long and distinguished history . . . . An inadvertent mistake in pleading will not be held against the pleader if another party has not been misled by the mistake or otherwise prejudiced." Lundy v. Adamar of New Jersey, 34 F.3d 1173, 1186 (3d Cir. 1994).  Further, courts will not dismiss for failure to state a claim merely because the complaint miscategorizes legal theories or does not point to an appropriate statute or law to raise a claim for relief. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 909 n.10 (1990); Common Cause v. Pennsylvania, 558 F.3d 249 (3d Cir. 2009).  With this framework in mind, the Court turns now to Defendant's Motion.

## III.  DISCUSSION

While the Court upheld Plaintiffs' Breach of Fiduciary Duty and Accounting Claims in its Original Complaint as sufficiently pled, Defendant nevertheless seeks to dismiss all claims except Plaintiffs' breach of fiduciary duty claim as against it in the instant Motion, including the Accounting claim held sufficient in this Court's June 26, 2011 Opinion in accordance with Fed. R. Civ. P. 8(a).  The Court will accordingly address each of Plaintiffs' claim in turn to assess the sufficiency of the facts alleged regarding each.

1.    **Breach of Fiduciary Duty (Count I)**

This Court declined to dismiss Plaintiffs' claims alleging a breach of fiduciary duty by Bristol and Winston & Strawn in its prior June 27, 2011 Opinion. (June 27, 2011 Op., at 16-19). Defendant's instant Motion does not seek to dismiss Plaintiffs' breach of fiduciary duty claim as pled in their Amended Complaint following said Opinion, so the Court will allow said claim to move forward.

2.    **Aiding and Abetting Breach of Fiduciary Duty (Count III)**

Plaintiffs' Amended Complaint alleges that "Bristol and Winston & Strawn knowingly and willfully provided substantial assistance and encouragement to the Starr Defendants in connection with their breaches of fiduciary duties, thus aiding and abetting the Starr Defendants' breaches of their fiduciary duties." (Am. Compl., ¶ 196). The Amended Complaint bases Defendant Winston & Strawn's aiding and abetting liability in its vicarious liability "for Bristol's tortious actions because, at all relevant times, when Bristol was aiding and abetting Starr's activities, he was acting within the scope of his employment as a Capital Partner at Winston & Strawn." (Id., ¶ 200). Defendant moves to dismiss this claim on the basis that Plaintiffs' Amended Complaint fails to allege sufficient facts showing: (1) Winston & Strawn's knowledge that Starr breached his fiduciary duty to the Wiatts; or (2) that the firm provided "substantial assistance" to Starr in accomplishing the tortious result. (Def. Br., at 31).

A.    **Analysis**

To establish a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege: (1) a breach of fiduciary duty; (2) the defendant's knowledge of and substantial assistance in that breach; and (3) damages resulting from the breach. See McCormac v. Qwest Communications Intern., Inc., 387 N.J. Super. 469, 481-83 (N.J. App. Div. 2006); Judson v.

People's Bank & Trust Co., 25 N.J. 17, 28-30 (1957); White v. Kolinsky, 2011 U.S. Dist. LEXIS 54746, at * 30 (D.N.J. May 18, 2011); Sharp Int'l Corp. v. State St. Bank & Trust Co., 403 F.3d 43, 49 (2d Cir. 2005). A plaintiff must establish a strong inference that the alleged aider and abettor had "actual knowledge" of the breach under New York law, and because both New York and New Jersey law require that a defendant "knowingly" aid and abet a breach of fiduciary duty, the Court does not find a true conflict between the two state law requirements. See Brasseur v. Speranza, 21 A.D.3d 297, 299 (N.Y. App. Div. 2005); Lautenberg Found. v. Madoff, 2009 U.S. Dist. LEXIS 82084, *47-50 (D.N.J. Sept. 9, 2009); see also McCormac, 387 N.J. Super. at 482. Having closely reviewed the allegations set forth in Plaintiffs' Amended Complaint, the Court finds that Plaintiffs have failed to allege any specific facts indicating Winston & Strawn's knowledge of the Starr Defendants' breach of fiduciary duty to the Wiatts nor of the firm's substantial assistance in that breach.[1]

Plaintiffs' Amended Complaint alleges the following facts purporting to show Winston & Strawn's knowledge of the Starr Defendants' breach of fiduciary duty to the Wiatts: (1) Starr was one of Bristol's biggest clients, and it was in part based on the Starr-Bristol attorney-client

---

[1] The elements required for a finding of vicarious liability for a breach of fiduciary duty under a respondeat superior theory are distinct from those elements required for an aiding and abetting claim for an alleged breach. To the extent that the Court finds that Plaintiffs have sufficiently pled a breach of fiduciary duty claim as against Winston & Strawn premised on vicarious liability, it has limited that finding to the following: "Plaintiffs have sufficiently alleged, at this juncture, that Bristol was acting within the scope of his employment as partner at the law firm of Winston & Strawn when advising the Wiatts as to legal matters involving employment-related issues, corporate issues and . . . certain financial matters." (June 27, 2011 Op., at 16-17). Since an aiding and abetting claim is already premised on secondary, or derivative, liability to the commission of the substantive violation, a defendant cannot be vicariously liable for an aiding and abetting offense. Plaintiffs confuse these issues when they state that Winston & Strawn can be held liable for aiding and abetting Starr's breach of fiduciary duty "whether via primary liability or secondary liability (under a theory of vicarious liability) . . ." (Pls. Opp'n Br., at 15-16). To find a defendant secondarily liable as aiding and abetting an unlawful breach of fiduciary duty, the defendant aider and abettor *himself* must know that the primary wrongdoer's conduct constitutes a breach of duty and give substantial assistance or encouragement to that wrongdoer to so act. The defendant can, in the alternative or additionally, be found secondarily liable—through a vicarious liability theory—for a breach of fiduciary duty committed by a primary wrongdoer. Thus, even if the Amended Complaint shifts the focus from Bristol as the primary wrongdoer to Starr as the primary wrongdoer in alleging aiding and abetting liability, for Bristol and Winston & Strawn to be found liable for aiding and abetting any alleged wrongdoing by Starr, each defendant must separately meet the requisite elements of an aiding and abetting claim regarding said wrongdoing.

relationship that Winston & Strawn hired Bristol (Am. Compl., ¶¶ 43, 46); (2) Bristol represented Starr on general corporate matters as well as in connection to a dispute with Neil Simon over improperly invested monies (Id., ¶ 48); (3) Bristol represented Starr during the SEC's investigations of him and his firm, generating over $1 million in legal fees for Winston & Strawn, while concealing his alleged fraud against the Wiatts (Id., ¶¶ 50-51); (4) Bristol knowingly helped and encouraged Starr to commit the January and April Transfers of $2 million of the Wiatts' money through his Attorney Trust Account, and he later pled guilty to charges in which he admitted that he diverted client funds for the benefit of himself, Starr, and Winston & Strawn (Id., ¶¶ 94-125, 193); and (5) Defendant Winston & Strawn knew about Bristol's Attorney Trust Account because Bristol made two $100,000 payments to Winston & Strawn from said Trust Account at TD Bank, on January 20, 2010 and on March 17, 2010, respectively (Id., ¶¶ 111-115).

Upon review, Plaintiffs' bases for asserting Winston & Strawn's knowledge of any breach of fiduciary duty by the Starr Defendants consists in two sets of facts: the fact that a Winston & Strawn partner, Bristol, had the Wiatts and the Starr Defendants as clients, and the fact that the firm received two payments in January and March from Bristol's Attorney Trust Account. These facts alone are insufficient to establish a plausible basis on which the Court can infer that Winston & Strawn had actual knowledge that the Starr Defendants were breaching their fiduciary duty to the Wiatts or that Winston & Strawn substantially assisted in that breach. Even if the Court were to infer that Winston & Strawn knew that Bristol was serving as an escrow agent for Starr through his Attorney Trust Account based on the Bristol's check payments to the firm—an inference which may not be warranted based on the facts as pled, stating only "the check came from the TD Bank account for "JONATHAN BRISTOL ESQ" (Id.,

¶ 112)—it would take a substantial leap for the Court to infer that Winston & Strawn was therefore aware of the Starr Defendants' elaborate scheme to transfer their clients funds to pay off other clients laundered through Bristol's Attorney Trust Account.  Further, even if such knowledge could be inferred, which this Court finds it cannot based on the facts alleged, Plaintiffs have stated no facts indicating how Defendant Winston & Strawn provided substantial assistance to the Starr Defendants' alleged breach of their fiduciary duty to the Wiatts.  Absent such factual content, Plaintiffs have failed to allege a plausible aiding and abetting claim as against Winston & Strawn for a breach of fiduciary duty.  Accordingly, Winston & Strawn's Motion to Dismiss this claim is granted, and Plaintiffs' aiding and abetting claim is dismissed without prejudice.

### 3.    Legal Malpractice (Count IV)

Plaintiffs' Amended Complaint alleges that Winston & Strawn agreed to represent Plaintiff Jim Wiatt, had an attorney-client relationship with him, and breached their duty to exercise reasonable care in the context of such representation by: (1) representing clients (namely, Plaintiffs and the Starr Defendants) with conflicting interests; (2) failing to disclose any known or potential conflicts of interests; (3) failing to disclose all information within their knowledge concerning the Wiatts' business and investment interests; (4) failing to act in the Wiatts' best interests with respect to their business and investment activities; and (5) failing to protect any of the Wiatts' funds that came into their possession and control.  (Am. Compl., ¶ 204).

To establish a claim for legal malpractice, Plaintiffs must establish sufficient facts showing: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation.  <u>Conklin v. Hannoch</u>

Weisman, 145 N.J. 395, 416 (1996)(quoting Lovett v. Estate of Lovett, 250 N.J. Super. 79, 87 (Ch. Div. 1991)).

Defendant Winston & Strawn moves to dismiss this claim on two grounds: (1) Winston & Strawn cannot be held vicariously liable for any alleged malpractice that may have occurred in Bristol and the Wiatts' attorney-client relationship; and (2) Plaintiffs' legal malpractice claim fails because Plaintiffs did not properly allege the requisite element of proximate cause.  (Def. Br., at 28-29).  Since this Court has already found that "Plaintiffs have alleged sufficient facts – at the pleading stage – to suggest that Plaintiffs had an attorney-client relationship with the firm of Winston & Strawn" on the basis of the legal services provided by Bristol through Winston & Strawn and the fact that all communications occurred through his Winston & Strawn e-mail account, on Winston & Strawn letterhead and/or by telephone at his Winston & Strawn office, the Court need not consider again whether this element of Plaintiffs' legal malpractice claim has been properly pled.  (June 27, 2011 Op., at 23).  The Court notes, however, that Plaintiffs have supplemented their Original Complaint with additional facts regarding Winston & Strawn's attorney-client relationship with the Wiatts, including: a month-by-month description of all legal services provided by Bristol from November 2009 to May 2010 regarding complex business matters; the continued and consistent use of Winston & Strawn's letterhead, e-mail and telephone services for  client communications; the use of Winston & Strawn's network and DocsOpen software to save documents prepared for the Wiatts designated as "Attorney-Client Privileged" materials; and representations to third parties, including OneCast and the SEC, that Bristol represented the Wiatts, listing his contact information at Winston & Strawn.  (Am. Compl., at ¶¶ 59-92).

**A.      Causation**

Plaintiffs allege that Winston & Strawn committed legal malpractice by, <u>inter alia</u>, failing to disclose any known or potential conflicts of interest in their simultaneous representation of the Starr Defendants and the Wiatts; failing to disclose all information within their knowledge concerning the Wiatts' business and investment interests; failing to act in the Wiatts' best interests with respect to their business and investment activities; and failing to protect any of the Wiatts' funds that came into their possession or control. (<u>Id.</u>, ¶¶ 204-206, 209, 215). Plaintiffs further allege that, as a direct and proximate result of such actions, the Wiatts were caused to be injured due to $2 million of their funds being diverted through Bristol's Attorney Trust Account. (<u>Id.</u>, ¶ 208).

To properly allege causation in a legal malpractice claim, Plaintiffs must allege negligent conduct by Defendant Winston & Strawn which was a "substantial factor" contributing to their financial loss. <u>Conklin</u>, 145 N.J. at 419-420. New Jersey's "substantial factor" test

> accounts for the fact that there can be any number of intervening causes between the initial wrongful act and the final injurious consequence and does not require an unsevered connecting link between the negligent conduct and the ultimate harm. The test is thus suited for legal malpractice cases in which inadequate or inaccurate legal advice is alleged to be a concurrent cause to harm. To relate the concepts to the facts, a court might instruct the jury to consider whether a reasonably competent transactional lawyer would have advised the clients of the economic risks that they took and whether the lack of the benefit of that advice was a substantial fact in causing them harm.

<u>Id.</u>, at 420. In its June 27, 2011 Order, this Court required that, "[t]o the extent Plaintiffs wish to rely on a theory of causation which is comprised of facts scattered throughout Plaintiffs' Complaint, Plaintiffs must re-plead this claim in a manner which allows the Court, more readily, to draw the reasonable inference that [defendant's] alleged acts of malpractice proximately caused their financial loss." (June 27, 2011 Op., at 25). After closely reviewing the allegations as detailed in Plaintiffs' Amended Complaint, the Court finds that Plaintiffs have sufficiently alleged facts linking the wrongful acts alleged with Plaintiffs' ultimate injury.

Specifically, while the Original Complaint failed to sufficiently allege causation in that it set the dates of injury as the dates of the January and April Transfers, alleging wrongful acts to substantiate a legal malpractice claim which occurred only *after* said Transfers, the Amended Complaint sets the ultimate date of injury as Defendant Starr's arrest on May 27, 2010, a date before which, had Winston & Strawn fulfilled its obligatory duty of due care to Plaintiffs, Plaintiffs could have: (1) stopped the unauthorized transfers; (2) demanded and recovered their $2 million from Bristol and Starr just as Uma Thurman and Neil Simon had from the Starr Defendants through their own legal counsel; or (3) taken action to freeze Bristol's and the Starr Defendants' bank accounts. (Am. Compl., ¶¶ 208, 221). Since the Amended Complaint alleges that Defendant Bristol still had a balance of over $2 million in his Attorney Trust Account as late as May 4, 2010, such recovery would have been possible under a proper exercise of Defendant's duty. (Id., ¶ 221). In other words, Plaintiffs' theory of causation as presented in their Amended Complaint is that the consistent failure on the part of Winston & Strawn to, inter alia, disclose known or potential conflicts of interest, disclose information within their knowledge regarding the Wiatts' business and investment interests, act in the Wiatts' best interests with respect to their business and investment activities, and protect any of the Wiatts' funds that came into their possession and control were a substantial factor in their $2 million financial loss, a loss other Starr investors did not suffer due to their counsel fulfilling their legal duties and recovering stolen funds prior to Starr's arrest.

Plaintiffs provide the following factual support to establish the requisite element of causation. Bristol and Winston & Strawn agreed to represent both the Starr Defendants and Plaintiff Jim Wiatt, with a period of overlap starting in October 2009 and lasting through May 2010. (Id., ¶¶ 43-46, 203). Bristol diverted, through his Attorney Trust Account, $1 million of

the Wiatts' funds in the January Transfer to pay off another of Starr's clients, Neil Simon, and later diverted another $1 million of their funds to Starr to pay off Uma Thurman in the April Transfer. (Id., ¶ 208). In or about March 2010, the Wiatts discovered the unauthorized January Transfer to Bristol's Attorney Trust Account, and upon questioning Bristol and Starr, were told that the funds were to be invested in UBS. (Id., ¶¶ 109-110, 117-120, 208). Bristol provided legal services to Plaintiff Jim Wiatt and the Starr Defendants with the apparent authority of Winston & Strawn by: utilizing his Winston & Strawn's e-mail account to e-mail Neil Simon's attorney regarding a $4 million transfer of funds to settle Simon's dispute with Starr, $1 million of which belonging to the Plaintiffs; presenting himself as a Partner of Winston & Strawn in representing both Plaintiff Jim Wiatt and the Starr Defendants in ongoing legal matters and in connection with their investment interests prior to and during the time of the alleged Transfers; after he reported to Winston & Strawn's senior management that Starr would be paying said funds for the $750,000 he owed the firm for legal services, making two $100,000 payments from his Attorney Trust Account which he was also utilizing to conduct firm business for Starr; representing both Plaintiff Wiatt and the Starr Defendants in SEC investigations, utilizing his title, phone and e-mail at Winston & Strawn (Id., ¶¶ 58, 84-91, 109-110, 112, 114); utilizing Winston & Strawn letterhead, his Winston & Strawn e-mail address, and Winston & Strawn servers in communications on behalf of Plaintiff Jim Wiatt and in the preparation of confidential legal documents for Wiatt's representation (Id., ¶¶ 58, 69, 77). The Amended Complaint also states facts regarding Plaintiff Jim Wiatt's own belief that Winston & Strawn represented him:

> Wiatt openly and publicly referred to Bristol and Winston & Strawn as his lawyers. For example, on February 10, 2010, Wiatt responded to an e-mail from the Founder and CEO of Logicwireless and copied Bristol (at his Winston & Strawn e-mail address), as well as Starr, stating, "I am copying my business manager and lawyer, for their opinions." Bristol, for his part, represented to the SEC that, in his capacity as a partner of Winston & Strawn, he had "represented Jim Wiatt in connection with various matters."

(Id., ¶ 59).

Plaintiffs' Amended Complaint presents facts supporting a consistent failure on the part of Winston & Strawn to notify the Wiatts of potential concerns raised by the Starr Defendants, also Winston & Strawn clients, when: (1) Winston & Strawn had notice of a potential conflict of interest when Bristol represented Starr, during his partnership with Winston & Strawn, against one client of Starr's, Neil Simon, regarding a $4 million dispute that Starr improperly invested his money (Id., ¶ 16, 48, 109-110, 136); (2) the SEC notified Plaintiff Jim Wiatt of an SEC investigation on May 14, 2010, and representations were made to Plaintiff Wiatt by Bristol that the investigation was routine, requesting him to waive any conflicts resulting from his joint representation of Wiatt and the Starr Defendants, and Bristol represented to the SEC that he was a Partner at Winston & Strawn, Bristol already knowing that Starr was being investigated by the SEC through having represented him in that investigation and during the SEC's interview of Starr on March 10, 2010 (a week prior to Bristol's second $100,000 payment to Winston & Strawn and weeks before the April Transfer) (Id., ¶¶150-156). The Court additionally takes judicial notice of prior publicly filed malpractice actions against Bristol prior to his hire by Winston & Strawn, filings concerning which it is plausible to infer Defendant Winston & Strawn's knowledge. See Murakush Caliphate of Amexem Inc. v. New Jersey, 790 F. Supp. 2d 241, 251 (D.N.J. 2011)("the court may take judicial notice of public records[,] . . . pleadings and other documents . . . filed by a party in other judicial proceedings")(citing Jackson v. Broad. Music, Inc., 2006 U.S. Dist. LEXIS 3960, at * 18 (S.D.N.Y. Jan. 31, 2006). Specifically, Bristol had been implicated in prior accusations of legal malpractice stemming from the transfer of funds from one party to another party, an acquaintance of Bristol's, who used not for the first party's business investment, but rather to pay off his own debt on which he had defaulted. (Pls.

Opp'n Br., at 36-37; Cert. of Jeffrey A. Shooman ("Shooman Cert."), Exs. A-F); see EYA Davidson Trading Establishment v. Dreyer and Traub, No. 96-3941 (S.D.N.Y. filed May 24, 1996); First Asian Nominees Limited v. Dreyer v. Traub, et al., No. 96-5917 (S.D.N.Y. filed Nov. 12, 1996); Thurman v. Reynolds, et al., No. 95-4622 (S.D.N.Y. Sec. Am. Compl. filed Oct. 20, 1997).  Given the substantial number of red flags alleged in Plaintiffs' Amended Complaint alerting Winston & Strawn that one of their clients may have conflicting interests with another of their clients, and their concomitant failure to disclose the conflict or more closely monitor or manage the assets and financial losses of the Wiatts, it is plausible to infer that they did not fulfill the legal duties of attorneys with ordinary and reasonable skill and knowledge commonly possessed by members of the legal profession, and, further, that said failures were a substantial factor in the Wiatts not being able to recover the financial losses they incurred while they were clients of Winston & Strawn prior to Starr's arrest.

Since the Court finds that Plaintiffs have sufficiently alleged at this stage of the pleadings the requisite elements of the breach of an existing attorney-client relationship by Winston & Strawn as well as proximate causation, Defendant's Motion to Dismiss Plaintiffs' legal malpractice claim is denied.

**4.    Negligent Misrepresentation (Count V)**

In our June 27, 2011 Opinion, this Court found Plaintiffs' negligent misrepresentation claim deficient as pled without making a final determination as to which state's laws—New Jersey or New York—would ultimately govern such claim.  (June 27, 2011 Op., at 14).  To state a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege that "defendant negligently provided false information and that plaintiff incurred damages proximately caused by its reliance on that information." Highlands Ins. Co. v. Hobbs Group,

LLC, 373 F.3d 347, 351 (3d Cir. 2004)(citing Karu v. Feldman, 119 N.J. 135 (1990)).  To state a claim for negligent misrepresentation under New York law, a plaintiff must allege: "(1) carelessness in imparting words; (2) upon which others were expected to rely; (3) and upon which they did act or failed to act; (4) to their damage." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003)(citing White v. Guarente, 43 N.Y.2d 356 (1977)).  Further, "the action requires that . . . the declarant must express the words directly, with knowledge or notice that they will be acted upon, to one to whom the declarant is bound by some relation or duty of care." Id.  Thus, New York law is distinct from New Jersey law in requiring the element of a "special relationship" to establish a negligent misrepresentation claim.

**A.    Analysis**

   i.    Vicarious Liability

Plaintiffs have attempted to assert a claim for negligent misrepresentation as against Defendant Winston & Strawn premised on the common law doctrines of vicarious liability and respondeat superior.  See Am. Compl., ¶ 30 ("At all relevant times, Bristol was a 'Capital Partner' at Winston & Strawn who generated business and performed services for clients in his capacity as a Capital Partner of Winston & Strawn in both New Jersey and New York.  The work performed by Winston & Strawn attorneys on behalf of Plaintiffs was performed in New Jersey and New York.").  Defendant moves to dismiss this claim on the basis that Plaintiffs have failed to allege sufficient facts that Defendant either authorized any alleged negligent misrepresentation on the part of Bristol or that the firm knew about any alleged negligent misrepresentations.  (Def. Br., at 21).

As discussed above, the Court finds that Plaintiffs have alleged sufficient facts regarding Defendant Winston & Strawn's secondary liability to Bristol's actions as a Capital Partner under

a respondeat superior theory of vicarious liability.  According to the Third Restatement's definition of "Vicarious Liability,"

> A law firm is subject to civil liability for injury legally caused to a person by any wrongful act or omission of any principal or employee of the firm who was acting in the ordinary course of the firm's business or with actual or apparent authority.

Restat 3d of the Law Governing Lawyers, § 58 (2000).  Comment d of the Restatement defines the first element, acting in "ordinary course of business," as follows:

> Even when liability results from the act of a firm's principal or employee that was not within actual or apparent authority, the firm (and, to the extent stated in Subsections (2) and (3), its principals) is liable if the act was in the ordinary course of the firm's business. . . . When an actor has apparent authority to act for the firm and an injured person has relied on that authority, the firm is subject to liability for certain of the actor's torts, for example negligence and fraud, and on contracts the actor entered into. . . . The ordinary course of business of a law firm includes the practice of law and various activities normally related to it.

Id., Cmt d.  The second element, requiring a showing of apparent authority, is defined under the Third Restatement of Agency as follows: "[a] principal is subject to vicarious liability for a tort committed by an agent in dealing or communicating with a third party on or purportedly on behalf of the principal when actions taken by the agent with apparent authority constitute the tort or enable the agent to conceal its commission. . . . An agent acts with apparent authority with regard to a third party when the third party reasonably believes that the agent or other actor has authority to act on behalf of the principal and that belief is traceable to manifestations made by the principal."  Restat 3d of Agency, § 7.08 and Cmt. b.

First, the Court has already found that Plaintiffs have presented sufficient facts demonstrating that Bristol acted within the scope of his fiduciary relationship when he represented Plaintiff Jim Wiatt in connection with discrete employment-related matters, and that Bristol extended the scope of his professional relationship with the Wiatts by providing advice concerning their financial investments with Starr.  (June 27, 2011 Op., at 17-18).  The Court also

found that Winston & Strawn could be found vicariously liable since Plaintiffs had alleged sufficient facts that "Bristol was acting within the scope of his employment as partner at the law firm when advising the Wiatts as to legal matters involving employment-related issues, corporate issues and . . . certain financial matters." (Id., at 16-17). The Court thus restates its finding that Plaintiffs' have sufficiently pled facts supporting their claim that Bristol acted in the course of ordinary business during his representation of Jim Wiatt on said issues.

Second, as detailed infra, Plaintiffs' Amended Complaint states a series of facts regarding Bristol's apparent authority as represented by him to third parties, including the Wiatts, the SEC, and counsel for parties with whom the Wiatts were negotiating and signing agreements: in communications with these parties, Bristol expressly confirmed that he would represent the Wiatts in his capacity as a partner of Winston & Strawn (Am. Compl., ¶ 57); Bristol utilized Winston & Strawn letterhead and his Winston & Strawn e-mail account and telephone in communicating with the Wiatts and other third parties on the Wiatts' behalf (Id., ¶¶ 58-59); and Bristol filed documents with counsel listing his Winston & Strawn contact information beneath his name (Id., 78). (See infra, at 18-19). The Amended Complaint also states facts demonstrating the Wiatts' belief, traceable to Bristol's manifestations, that Bristol was representing him as a partner at Winston & Strawn. (Am. Compl., ¶ 59). Thus, Plaintiffs have sufficiently established Winston & Strawn's vicarious liability for Bristol's actions and omissions as they relate to a claim for negligent misrepresentation.

ii.    Causation

This Court's prior Opinion found Plaintiffs' negligent misrepresentation insufficiently pled since Plaintiffs failed to allege proximate cause linking any claimed misrepresentation or omission to Plaintiffs' financial loss. (June 27, 2011 Op., at 14)("Plaintiffs have failed to allege

any specific misrepresentation or omission made by Bristol prior to the January/April 2010 transfers which proximately caused Plaintiffs' financial loss. The earliest alleged misrepresentation and/or omission made by Bristol took place in or around May 12, 2010. . . . inasmuch as both transfers had taken place by that point . . . Plaintiffs' alleged reliance on such communication could not have proximately caused their financial loss."). Regarding negligent misrepresentation based in omissions or failures to disclose, the Court found that the Complaint "fails to contain any <u>facts</u> to support the allegation that Bristol knew this information [that Starr had used – or intended to use – Bristol's Attorney Trust Account to make unauthorized transfers of Starr's client investment funds] prior to April 2010." (<u>Id.</u>, ¶¶ 14-15). Finally, the Court found that a theory of causation based on the Wiatts' ability to demand the return of their funds at any point prior to Starr's arrests had Starr's transfers been disclosed to them was "not sufficiently pled in Plaintiffs' Complaint," but was only stated in Plaintiffs' Brief in Opposition to defendants Bristol and Winston & Strawn's motion to dismiss. (<u>Id.</u>, at 15).

Plaintiffs' Amended Complaint more fully states a theory of causation, with factual support, from which the Court may plausibly infer causation based on the specific ways in which Defendant Bristol's omissions and misrepresentations prevented Plaintiffs' from a potential timely recovery of the assets allegedly converted by Starr and Bristol. First, as stated above, Plaintiffs have reframed their Complaint to allege their ultimate injury—the loss of $2 million— as occurring upon the date of Starr's May 27, 2010 arrest, prior to which Defendants Bristol and Winston & Strawn could have recovered the funds allegedly converted. (<u>Id.</u>, ¶¶ 231, 248). Second, by so reconstructing their Complaint, Plaintiffs have reframed the facts surrounding Plaintiffs' alleged reliance on Defendants' communications in relation to their having proximately caused their financial loss. Specifically, Plaintiffs point to multiple instances where

Bristol provided false information or omitted facts on which Plaintiffs relied which prevented them from recovering their allegedly stolen funds prior to Starr's arrest: (1) Bristol failed to disclose the January and April Transfers to the Wiatts on or before Starr was arrested (Id., ¶¶ 233-236); (2) Bristol knew, as stated in his guilty plea, that he was using his Attorney Trust Account to steal and launder Starr's clients funds (Id., ¶¶ 14, 94-125, 274); (3) Bristol affirmatively told Plaintiff Jim Wiatt that his funds were being bundled for a UBS investment when he knew that was not the case (Id., ¶¶ 12, 139-156, 287, 289); and (4) Bristol is alleged to have misled the Wiatts about his relationship with Starr during his legal representation of both clients during the SEC investigations, and affirmatively informed Plaintiff Jim Wiatt that he had nothing to worry about (Id., ¶¶ 83-93).

Having provided factual content to their allegations that Defendant Bristol negligently provided false information and that they incurred damages proximately caused by their reliance on that information, Plaintiffs have sufficiently pled a negligent misrepresentation claim against Defendant Winston & Strawn, as vicariously liable for the actions of Bristol committed in the course of his employment with that firm. Defendant's Motion to Dismiss Plaintiffs' negligent misrepresentation claim is therefore denied.

**5.    Fraud (Count VII)**

Plaintiffs' Amended Complaint alleges that, "in his capacity as a Capital Partner of Winston & Strawn, Bristol willfully and intentionally defrauded Plaintiffs and made or caused to be made false, fraudulent and material misrepresentations and omissions to Plaintiffs concerning wire transfers and investments. When Bristol was taking these actions in the performance of legal services for the Wiatts in myriad matters, he was acting within the scope of his employment at Winston & Strawn." (Id., ¶¶ 275-276). Specifically, the Amended Complaint alleges that,

when Bristol received the January and April Transfers into his Attorney Trust Account, he knew that this money belonged to the Wiatts, and that it was an unauthorized transfer, but although he "had an obligation to disclose" the Transfers "to the Wiatts and despite ample opportunity[,] he did not make such a disclosure, as alleged in specific detail in paragraphs 126 through 156." (Id., ¶¶ 280, 282).

To establish a claim for fraudulent misrepresentation or omission under New Jersey law, a plaintiff must meet five requirements: "(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichart Co. Realtors, 148 N.J. 582, 610 (1997).

Fraud claims must meet a heightened pleading standard under Fed. R. Civ. P. 9(b), which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). The plaintiff must also allege "who made the purported misrepresentations and what specific misrepresentations were made." Id.

Winston & Strawn moves to dismiss this claim on the basis that Plaintiffs have failed to allege: (1) a theory of detrimental reliance in advance of either the January or April 2010 transfers; and (2) that Winston & Strawn was aware of Bristol's Attorney Trust Account, or that Bristol's actions with regard to the Account were within his scope of employment. (Def. Br., at 20-21). Since this Court has found infra that the Plaintiffs' Amended Complaint sufficiently pleads facts regarding Plaintiffs' detrimental reliance and reframed theory of causation, the Court

27

will only now address whether Plaintiffs' have met the heightened pleading standard with respect to Defendant Winston & Strawn's vicarious liability for Bristol's knowledge or belief in the material misrepresentations or omissions he made to the Wiatts on which they detrimentally relied.

As detailed in Section III.4 of this Opinion, Bristol made a series of misrepresentations and omissions to Plaintiff Jim Wiatt regarding investment decisions and legal rights with respect to the Starr Defendants' alleged conversion of the Wiatts' funds. Since claims for negligent misrepresentation and fraud are only distinct under New Jersey law in their respective elements regarding state of mind, and since Plaintiffs have sufficiently pled a claim for negligent misrepresentation against Winston & Strawn, they need only allege facts supporting the requisite scienter, with particularity, to sufficiently plead a fraud claim. Plaintiffs' Amended Complaint details Defendants Starr and Bristol's guilty plea admissions in which Bristol admits the following: he conspired with Starr to use his Attorney Trust Account to steal and launder Starr's client funds (Am. Compl., ¶¶ 14, 94-125, 274); in receiving into his Attorney Trust Account and transferring the funds at issue in the January and April Transfers, Bristol knew that these were unauthorized transfers of funds belonging to the Wiatts (Id., ¶¶ 103-116, 120-122, 280); he failed to disclose the January Transfer or the fact that Starr was using his Attorney Trust Account to make similar transfers when Plaintiff Jim Wiatt questioned him about the transfer in March 2010 (Id., ¶¶ 9, 136, 143, 280); and he knew he was misleading the Wiatts by omission when he failed to disclose the January and April Transfers to the Wiatts and the truth surrounding the circumstances of the SEC investigation (Id., ¶¶ 14, 103-122, 126-156, 281-282). With respect to each of these admissions, the Plaintiffs provide the exact dates and circumstances surrounding the alleged misrepresentations and omissions. Based on the factual content stated to support

Bristol's knowledge of the falsity of his representations and omissions, and the alleged intent on his part that the Wiatts rely on said misrepresentations and omissions for the purpose of further serving himself and his other client, Defendant Starr, the Court finds that Plaintiffs' allegations of fraud are sufficient to meet Rule 9(b)'s heightened pleading standard.  See generally, Iqbal, 129 S. Ct. at 1949; Frederico, 507 F.3d at 200.  Defendant's Motion to Dismiss Plaintiffs' common law fraud claim is therefore denied.

## 6.   Civil Conspiracy (Count IX)

Plaintiffs' Amended Complaint alleges that, "in committing the wrongful acts admitted by Starr and Bristol in their criminal guilty pleas, the Starr Defendants, Bristol and Winston & Strawn have pursued a common course of conduct, acted in concert with, and have conspired and agreed with one another in furtherance of their common plan, scheme and design to injure the Wiatts and other clients of Starr for the benefit of all of the Defendants."  (Am. Compl., ¶ 326).

Under New Jersey law, civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."  Morgan v. Union County Bd. Of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993); see also Banco Popular N.A. v. Gandi, 184 N.J. 161, 177 (2005).  Civil conspiracy is a dependent claim which must be alleged along with a substantive claim: "the gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'"  Morgan, 268 N.J. Super. at 364 (citation omitted).  In stating a conspiracy claim, a plaintiff must allege facts regarding defendants' joint action rather than making conclusory allegations of concerted action.  See Abbot v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998).

Winston & Strawn move to dismiss Plaintiffs' civil conspiracy claim on the basis that (1) dismissal of all underlying tort claims requires dismissal of Plaintiffs' civil conspiracy claim; (2) Winston & Strawn cannot be vicariously liable for the underlying tort claims since Bristol's alleged participation in a conspiracy was not within the scope of his firm employment; and (3) Plaintiffs fail to allege sufficient facts to support the assertion that there was an agreement to commit unlawful acts against the Wiatts between Winston & Strawn, Bristol and the Starr Defendants. The Court has addressed the first two arguments <u>infra</u>, but since it finds that that Plaintiffs have failed to state sufficient facts to support either an agreement to conspire with Bristol and the Starr Defendants or an overt act on the part of Winston & Strawn that resulted in damage to the Wiatts, Plaintiffs' civil conspiracy claim is deficient.

In order to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a civil conspiracy claim must allege "at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn." <u>Durham v. City and County of Erie</u>, 171 Fed. Appx. 412, 415 (3d Cir. 2006). Plaintiffs can meet this requirement when their complaint "sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible." <u>Lynn v. Christner</u>, 184 Fed. Appx. 180, 185 (3d Cir. 2006).

Plaintiffs' Amended Complaint, like their Original Complaint, contains only a recitation of the elements of their conspiracy-related claims without reference to any supporting facts which would allow the Court to draw the reasonable inference that Defendant Winston & Strawn *specifically* engaged in the underlying unlawful acts by virtue of an agreement. While the Court finds that Plaintiffs have sufficiently pled facts supporting a theory of vicarious liability on the part of Winston & Strawn for Bristol's conduct in their underlying tort claims, alleging facts supporting conduct in the course of business activity and apparent authority is vastly different

than alleging facts supporting an agreement and the commission of an overt act by a principal. Under the relevant Count for Civil Conspiracy, Plaintiffs' Amended Complaint refers to Winston & Strawn only in passing, and those references are limited to the following statements: "When Bristol was engaged in his scheme, in the performance of legal services for the Wiatts in myriad matters, he was acting within the scope of his employment at Winston & Strawn" (Am. Compl., ¶ 325); "While Bristol was working as a Capital Partner at Winston & Strawn, Bristol conspired with and helped Starr to defraud his clients and conceal his criminal conduct by using his Attorney Trust Account to make the unauthorized January and April Transfers of the Wiatts' money" (Id., ¶ 327); and "Defendants acted in concert to transfer Starr's clients' funds to the Attorney Trust Account, and then transferred the funds to the Starr Defendants to pay the Starr companies' operating expenses, pay a settlement in a dispute being handled by Bristol and Winston & Strawn, pay Starr's overdue legal fees to Winston & Strawn, purchase a luxury apartment for Starr, and repay other clients of Starr" (Id., ¶ 328). Most of the referenced facts refer exclusively to Bristol, implying that Winston & Strawn should be held vicariously liable for *Bristol's* conspiracy against the Wiatts. However, to establish a civil conspiracy claim against Defendant Winston & Strawn, the firm itself must be alleged to have agreed and committed an overt act in furtherance of the conspiracy. The closest the Amended Complaint comes to alleging such facts is its statement that Winston & Strawn paid a settlement dispute on behalf of one of its clients from Bristol's Attorney Trust Account and that Starr paid legal fees to Winston & Strawn through said Account. These facts are insufficient to show that Winston & Strawn was in active agreement with Defendants Starr and Bristol to commit a wrongful act against the Wiatts, and its passive receipt of attorney's fees from a paying client does not constitute an overt act in furtherance of the conspiracy absent such agreement. Plaintiffs' civil conspiracy claim is

therefore dismissed without prejudice, and Plaintiffs are directed to amend this claim in such a manner that will provide Defendant Winston & Strawn with notice as to the specific facts upon which this claim is based.

### 7.   Conspiracy to Defraud (Count X)

Plaintiffs' Conspiracy to Defraud claim alleges that "[e]ach of [the] Defendants willfully and knowingly agreed and conspired with other Defendants to commit the above referenced acts of fraud, including wire fraud and money laundering, for an unlawful purpose." (Id., ¶ 333). Plaintiffs' Conspiracy to Eefraud claim is premised on the same allegations underlying their Civil Conspiracy claim with respect to knowing agreement.  For the same reasons this Court found that claim deficient, the Court finds Plaintiffs' Conspiracy to Defraud insufficiently pled with respect to Winston & Strawn's agreement relating to any alleged fraud committed by Bristol.  The Court thus dismisses Plaintiffs' Conspiracy to Defraud claim without prejudice for the reasons set forth above.

### 8.   RICO Claims (Counts XI and XII)

Count XI of Plaintiffs' Amended Complaint alleges, in pertinent part, that Defendant Winston & Strawn "conducted and participated in the conduct of the affairs of the Starr Enterprise and played a central role in the management and/or operation of the enterprise through a pattern of racketeering activities, which included, but was not limited to, wire fraud [18 U.S.C. § 1343] and money laundering [18 U.S.C. § 1956(a)(1)].  Winston & Strawn was central to the Starr Enterprise because its Capital Partner Bristol was central to the enterprise, and Bristol participated in the enterprise in order to increase his billable business for Winston & Strawn, settle legal matters being handled by Winston & Strawn, and pay the legal fees of Winston & Strawn." (Id., ¶ 345).  The Amended Complaint further alleges that the "foregoing predicate acts

of racketeering activity conducted by Defendants through the Starr Enterprise caused Plaintiffs to lose money and business opportunities [in violation of 18 U.S.C. § 1962(c)]," and that the "members of the Starr Enterprise were illicitly enriched through the receipt of funds transferred from Plaintiffs' account." (Id., ¶ 349). Count XII of Plaintiffs' Amended Complaint alleges, in pertinent part, that "[t]hrough a series of activities outlined above in Count XI, Defendants conspired to violate 18 U.S.C. § 1962(d)." (Id., ¶ 353). The Court will address each RICO claim in turn.

### A.    RICO Claim – 18 U.S.C. § 1962(c)

18 U.S.C. § 1962(c) makes it unlawful

> For any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To state a claim for a § 1962(c) violation, Plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Morales v. Superior Living Prods., LLC, 398 Fed. Appx. 812, 814 (3d Cir. 2010)(citing Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004)). To properly plead an "association-in-fact" enterprise, Plaintiffs must plead facts plausibly implying the existence of an enterprise with the following structural attributes: "a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" In re Insurance Brokerage Antitrust Litig., 618 F.3d 300, 370 (3d Cir. 2010)(citing Boyle v. United States, 129 S. Ct. 2237, 2244 (2007)). Since Plaintiffs bring a fraud-based RICO claim, they must plead with particularity the circumstances of the alleged fraud by pleading the "date, place or time" or by "injecting precision and some measure of substantiation to their allegations." Lum, 361 F.3d at 224.

As a threshold matter, then, Plaintiffs must allege with particularity the specific conduct upon which Winston & Strawn's liability is based, and alleging the "conduct or participate" element with respect to them requires a showing that Winston & Strawn "have some part in directing those affairs." See Reves v. Ernst & Young, 507 U.S. 170, 179 (1993). The Supreme Court has explicitly stated that "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." Id., at 183. Plaintiffs seek to impose RICO liability on Winston & Strawn based on: (1) Bristol's centrality to the Starr Enterprise as a partner in Winston & Strawn; (2) Winston & Strawn's receipt of payment by Bristol in March 2010 for services purportedly rendered by Bristol on behalf of Starr; and (3) its handling of settlements on the part of the Starr Defendants through Bristol. (Am. Compl., ¶ 345). However, the Amended Complaint again fails to state any facts to suggest that Winston & Strawn, Bristol, or any other member of Winston & Strawn's staff had any knowledge that such funds belonged to the Wiatts or to other defrauded Starr clients. The Amended Complaint also fails to allege with particularity the circumstances under which Winston & Strawn, independently of Bristol, engaged in the alleged fraud-based predicate acts of wire fraud and money laundering, or otherwise participated in the operation or management of the Starr Enterprise. Therefore, Plaintiffs' Amended Complaint as drafted fails to allege a theory of liability as against Winston & Strawn under § 1962(c) that is plausible on its face. Defendant's Motion to Dismiss this claim is thus granted, and Plaintiffs' § 1962(c) claim as against Winston & Strawn are dismissed without prejudice.

## B.   RICO Claim – 18 U.S.C. § 1962(d)

18 U.S.C. § 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Having found that Plaintiffs have failed

to state a claim under § 1962(c), Plaintiffs cannot maintain a claim under § 1962(d) based on the facts as alleged in their Amended Complaint.  See, e.g. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993)("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").  Defendant's Motion to Dismiss this claim are therefore granted, and Plaintiffs' § 1962(d) claim as against Winston & Strawn is hereby dismissed without prejudice.

## 9.    Conversion (Count XIII)

Plaintiffs allege that, by virtue of the transfer of $2 million of the Wiatts' funds by the Starr Defendants into Bristol's Attorney Trust Account, Winston & Strawn exercised an act of unauthorized dominion over Plaintiffs' monies in a manner which denied Plaintiffs' unequivocal right to such monies.  (Am. Compl., ¶¶ 362-366).  Specifically, they allege that "Bristol exercised control and dominion over his Attorney Trust Account in his capacity as a Capital Partner of Winston & Strawn, with the knowledge of Winston & Strawn.  Bristol operated the Attorney Trust Account for the benefit of Starr, at the time one of Winston & Strawn's important clients, responsible for over $1 million of billable business in 2009 alone." (Id., ¶ 362).  Plaintiffs' conversion claim asserts facts against Winston & Strawn purporting to establish Winston & Strawn's primary and secondary liability: "Bristol acted with the knowledge and apparent authority of Winston & Strawn." (Id., ¶ 363).

Under New Jersey law, "the tort of conversion is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." Advanced Enter. Recycling, Inc. v. Bercaw, 376 N.J. Super. 153 (App. Div. 2005).  Generally, "[t]he elements of good faith, intent or negligence do not play apart in an action for damages in conversion." McGlynn v. Schultz, 90 N.J. Super. 505, 526 (Ch. Dvi. 1966)("It does not matter

that the conversion was for the benefit of the corporation and that the individual defendants did not personally benefit.").

Winston & Strawn moves to dismiss the claim on the basis that it cannot be held vicariously liable for Bristol's alleged conversion because the Amended Complaint fails to allege any factual allegations suggesting that Winston & Strawn authorized any transfer of funds into Bristol's Attorney Trust Account, and in fact asserts that, based on Bristol's guilty plea, Bristol admits to having intentionally taken steps to mask the source of funds "to disguise the nature, location, source, ownership and control of funds that had been entrusted to [Starr] by his client and investors and stolen by him." (Def. Br., at 18; Am Compl., Ex. I, at 17:17-19).

In this Court's June 27, 2011 Opinion, we found that "Plaintiffs' factual allegations concerning the January and April transfers suffice to state a claim of conversion under New Jersey law [against Defendant Bristol]." (June 27, 2011 Op., at 29). However, the Court found that "Plaintiffs' Complaint contains no facts in support of the notion that the attorney trust account maintained by Bristol (in Chatham, New Jersey) was associated in any way with the law firm of Winston & Strawn," and that "Plaintiffs have failed to state a claim of conversion as against Winston & Strawn under the doctrine of respondeat superior." (Id., at 30). While this Court has found that Plaintiffs have cured deficiencies in their Original Complaint regarding Winston & Strawn's vicarious liability for Plaintiffs' legal malpractice, negligent misrepresentation, and fraud claims, that liability was grounded in a finding that Plaintiffs sufficiently pled facts that statements and omissions made by Bristol, with the apparent authority of Winston & Strawn, were a substantial factor in the Wiatts' inability to recover their financial losses prior to Starr's arrest. Unlike those claims, Plaintiffs' Conversion claim attempts to extend the scope of Bristol's provision of legal services in the ordinary course of business

specifically and exclusively to the transfer of the Wiatts' funds through Bristol's Attorney Trust Account for the benefit of Starr's other clients. To support this claim, Plaintiffs allege facts which this Court has found insufficient to establish Winston & Strawn's knowledge of the unlawful activity, namely two $100,000 checks made by Bristol to Winston & Strawn from his Attorney Trust Account, an Account which he also allegedly use to convert and launder the Wiatts' funds. Therefore, without more, the Plaintiffs have failed to state sufficient facts to support their Conversion claim as against Winston & Strawn, and that claim is dismissed without prejudice. Defendant's Motion to Dismiss this claim is thus granted.

## 10.    Negligent Supervision (Count XIV)

Plaintiffs' Amended Complaint alleges that: (1) Plaintiffs entered an attorney-client relationship with Bristol, a Capital Partner at Winston & Strawn; (2) Winston & Strawn had a duty to supervise and control its attorneys in the context of their representation of their clients; and (3) Winston & Strawn negligently and carelessly failed to maintain such control. (Id., ¶¶ 370-377). In particular, Plaintiffs allege that Winston & Strawn

> was on notice of and had an obligation to investigate Bristol's activities, and, if it had conducted even a reasonably diligent investigation, or indeed any monitoring of its Capital Partner['s] activities, Winston & Strawn would have discovered that Bristol was, in fact, engaged in improper and injurious conduct toward third parties by laundering money through his Attorney Trust Account. Winston & Strawn would have [have] discovered at least that (i) Bristol was simultaneously and improperly representing the Starr Defendants and the Wiatts for approximately eight months, and (ii) during that time, Bristol used his Attorney Trust account to help Starr steal from the Wiatts and then transfer their funds to settle Starr's dispute with a former client (in a matter being handled by Winston & Strawn.

(Id., ¶ 375).

Defendant Winston & Strawn moves to dismiss this claim on the basis that it fails to provide a plausible basis on which to find that Winston & Strawn could reasonably have foreseen that Bristol was unfit, incompetent or dangerous. (Def. Br., at 34). Plaintiffs, on the

other hand, maintain that, at this stage of the proceedings, they have sufficiently pled that Winston & Strawn should have known based on a series of red flags regarding Bristol and Bristol's client, Starr, which placed them on notice that one of its equity partners had criminal propensities. (Pls. Opp'n Br. at 35-36). Specifically, they point to the following facts pled in their Amended Complaint:

- During the 10 months in which Bristol was conspiring with Starr to defraud Starr's investors out of $20 million using his Attorney Trust Account to launder money, Winston & Strawn, and any law firm who controls partners with an ownership stake in the firm, should have been on notice that an equity partner of the firm was using firm resources and spending an abundance of firm time committing such a fraud (Am. Compl., ¶ 372);

- Winston & Strawn did not have in place basic, reasonable protections to ensure that one of its attorneys—an equity partner—could not be in a position to help one client steal from another, and after the January Transfer of the Wiatts' monies, Winston & Strawn should have discovered the fraud and put a stop to it (Id., ¶ 373).

- By March 2010, Winston & Strawn knew that: (1) Starr was under investigation by the SEC for misappropriating client funds; (2) Starr had been accused of improper investment activities by one of his former clients, Neil Simon; (3) Starr was having difficulty paying his legal fees to Winston & Strawn; (4) Bristol maintained funds for Starr in an Attorney Trust Account; and (5) Bristol used his Attorney Trust Account to pay Starr's overdue legal fees, including two separate $100,000 checks payable from that account (Id., ¶ 374);

- By April 2010, attorneys from another law firm learned of Bristol's role in stealing $1 million from Uma Thurman and they contacted Bristol at his office demanding the return of her monies (Id., ¶ 376);

- Publicly filed legal malpractice actions against Bristol implicated him in arranging for one party to loan another party, an acquaintance of Bristol's, $1 million, purportedly for a business investment, but the acquaintance of Bristol's never intended to use it to make a business investment and never intended to pay back the original party, but rather used it to pay off another debt he had defaulted on (Pls. Opp'n Br., at 35-36).

In order to state a common law negligent supervision claim as against Winston & Strawn, Plaintiffs must allege that Bristol, as the firm's employee, committed an intentional tort, whether in or outside the scope of his employment, against one of Winston & Strawn's clients (or a member of the public) and that Winston & Strawn knew or should have known that Bristol

"might engage in injurious conduct toward third persons." Di Cosala v. Kay, 91 N.J. 159, 173 (1982). Having reviewed the allegations set forth in Plaintiffs' Amended Complaint, the Court again finds that Plaintiffs have failed to sufficiently alleged a plausible basis on which the Court can infer that Winston & Strawn should have known of Bristol's "unfitness, incompetence or dangerous attributes" and "could reasonably have foreseen that such qualities created a risk of harm to other persons." Id., 91 N.J. at 173. While Plaintiffs' Amended Complaint sufficiently states that Winston & Strawn was on notice of Starr's unlawful conduct, absent specific facts indicating to Winston & Strawn that Bristol could be dangerous to third parties, it is consistent with those facts that Bristol's continued representation of Starr was in accordance with his ethical duties to that client. Starr's legal troubles and tardy legal payments alone do not suggest that Bristol himself was incompetent, and the maintenance of an Attorney Trust Account for clients with legal troubles is a matter of course for attorneys. Without some factual support indicating behavior or conduct visible or more clearly apprehensible to the law firm regarding Bristol's danger to third parties, Plaintiffs have failed to allege a plausible claim of negligent supervision as against Winston & Strawn. Winston's Motion to Dismiss this claim is therefore granted and Plaintiffs' Negligent Supervision claim is dismissed without prejudice.

## 11.    Accounting (Count XV)

Plaintiffs' Amended Complaint alleges that a fiduciary relationship existed between Plaintiffs and Winston & Strawn, that Winston & Strawn had access to Plaintiffs' accounts from which Defendants took $2 million, and that Winston & Strawn should thus be compelled to provide an accounting of their personal accounts, business accounts, and trust accounts to discover the whereabouts of Plaintiffs' funds. (Am. Compl., ¶¶ 379-381). "An accounting in equity cannot be demanded as a matter of right or of course. The exercise of the equitable

jurisdiction to compel an account rests upon three grounds – first, the existence of a fiduciary of trust relation; second, the complicated nature or character of the account; and third, the need of discovery." <u>Borough of Kenilworth v. Graceland Memorial Park Ass'n</u>, 124 N.J. Eq. 35, 37 (N.J. Ch. Ct. 1938). This claim for relief is therefore premised upon the existence of a fiduciary relationship between Plaintiffs and Winston & Strawn.

Defendant Winston & Strawn move to dismiss this claim on the basis that the parties have engaged in discovery, and the documents that the Wiatts used as the basis for new factual allegations in their Amended Complaint amounted to an accounting. (Def. Br., at 33). Specifically, Defendant contends that the "Wiatts know exactly where to find their $2 million dollars: the first $1 million was transferred to Neil Simon, and the second $1 million was transferred to Uma Thurman. . . . In short, the documents the Wiatts have received in discovery constitute an account." (<u>Id.</u>)(see <u>Transmodal Corp. v. EMH Assocs., Inc.</u>, 2010 WL 3937042, at *6 (D.N.J. Oct. 1, 2010)(dismissing an accounting claim in part because "[t]he parties have conducted discovery in this matter."). Plaintiffs argue that, "[t]o the contrary, the parties are still in the early stages of discovery and Winston & Strawn's motion is more akin to a motion for summary judgment. Thus, Winston & Strawn's motion to dismiss the Wiatts' accounting claim must be denied." (Pls. Opp'n Br., at 39).

Having reviewed the specific language of Plaintiffs' Accounting claim in their Amended Complaint, the Court agrees with Defendant that the purposes for which they sought the Accounting claim have been fulfilled by discovery, namely, "to provide an accounting of their personal accounts, business accounts, and trust accounts **to discover the whereabouts of Plaintiffs' funds**." (Am. Compl., ¶ 381)(emphasis added). Accordingly, the Court dismisses this claim without prejudice. Plaintiffs may amend their Complaint should alternative purposes

for an Accounting claim present themselves. However, given the stated and fulfilled purpose of the accounting in the Amended Complaint as to determining the whereabouts of Plaintiffs' funds, and the ability to gather information in the ordinary course of discovery, the Court finds that the equities favor denial of Plaintiffs Accounting claim at this time.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiffs' Complaint is granted in part and denied in part. Plaintiffs are granted leave to file an amended complaint which cures the pleading deficiencies in those claims which have been dismissed by the Court within sixty (60) days of the issuance of this Opinion and accompanying Order.

DATED: January 17, 2012

Jose L. Linares
United States District Judge

41